UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IN RE:
HERMAN SEGAL,  Case # 13-45519   nhl
Debtor
----------------------------------------------------------X

## NOTICE OF
## DEBTOR'S MOTION TO VOLUNTARILY WITHDRAW AND VACATE
## PETITION AND TO DISMISS THE CASE

PLEASE TAKE NOTICE that on February 25, 2014, at 12:00 PM, or as soon thereafter as counsel can be heard, a hearing will be held before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, Courtroom Room # 3577, upon the motion of the debtor, Herman Segal, for an Order, in accordance with the provisions of Section 707 of the Bankruptcy Code (11 U.S.C. 707 dismissing this voluntary Chapter 7 case upon such terms and conditions as the court deems equitable and for such other and further relief as the court may deem just and proper.

An Affirmation supporting this motion is attached hereto:

PLEASE TAKE FURTHER NOTICE that any objections or responses to the Motion must be in writing and shall be filed electronically and served upon the debtor Herman Segal at 4115 Quentin Road, Brooklyn, NY 11234, and by sending a courtesy copy to chambers so as to be received no later than seven days prior to the hearing date of the motion,

DATED: Brooklyn, New York
January 30, 2014

                                      Respectfully submitted,

                                      /s/ Herman Segal
                                      Herman Segal, Pro Se
                                      4115 Quentin Road
                                      Brooklyn, NY 11234
                                      Tel. 917 750 8120

Copies sent via US mail on January 29, 2014 to:

Richard E. O'Connell, Esq.
Chapter 7 Trustee
Fred Stevens, Esq.
Maeghan J. McLoughlin, Esq.
Maxim Maximov, Esq.
And to creditors listed on the schedules
At their addresses of record as listed on the previous papers filed in this cause.

/s/ Herman Segal
Herman Segal

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE:
HERMAN SEGAL,                                                          Case # 13-45519   nhl
Debtor
-----------------------------------------------------------X

### DEBTOR'S AFFIRMATION IN SUPPORT OF MOTION TO WITHDRAW AND VACATE PETITION AND DISMISS THE CASE

Herman Segal does hereby affirm under the pains and penalties of perjury as follows:

1. I am the debtor in this case and as such I have personal knowledge of the facts herein set forth.

2. I am making this affirmation in support of my motion to withdraw and vacate the petition and dismiss the case.

3. I, Herman Segal, in making this affirmation preserve my rights to assert my religious principles and my rights to freedom of association, and my First and Fifth Amendment rights against self incrimination and do not waive any such rights that are guaranteed to me by the Constitution of the United States and the laws of the State of New York and other applicable provisions of law.

4. This case was filed on September 10, 2013 under Chapter 7 of the Bankruptcy Code.

5. The reason for the filing was to prevent a foreclosure sale of my real estate on Pine Tree Drive in Miami Beach, Florida for approximately $20,000.00 in co-operative charges. The property has a value of between $135,000 to $150,000.00 and has no mortgage on it.

6. Notwithstanding the fact that the petition was filed the day before the sale and the co-op and its attorney had notice of the filing, the co-operative held the sale anyway and the highest bidder "won" the auction for $91,000.00.

7. The judgment which the co-operative obtained was by default and there are serious questions of proper notice and duplicate charges. Furthermore, there are questions about the commercial reasonableness of the sale insofar there is only one bid per party, and there is no provision of raising one's bid if outbid by another bidder.

8. Prior to the filing of the petition in this case I contacted an attorney to see what could be done to obtain time to refinance the property, or to set aside the judgment. His advice to me was that the simplest thing for me to do is file a bankruptcy petition which would stop the foreclosure. I now realize that that was bad advice and I should not have used the Bankruptcy Court for this purpose.

9. At the time of the filing of the petition and at the present time no creditors are or were pressuring me and demanding they be paid except for the condominium association and other than for their foreclosure there was no reason for me to have filed the petition.

10. The petition was filed at the last minute and when it was filed I was not even in the country. I really had no idea what I was getting into when this petition was filed. Up until that time I had foolishly thought that a Bankruptcy Trustee was supposed to protect the bankrupt and his creditors and not work against them as my Trustee is doing. The filing of the petition was a huge mistake, I am asking that I be allowed to withdraw the Bankruptcy filing and have the Court dismiss the case.

11. Further, I do not believe that there is any valid petition containing my signature on file with the court and therefore, the filing itself is a nullity.

12. The Trustee in this case, Richard O'Connell, Esq. is attempting to reward the co-operative for violating the automatic stay and holding the sale despite knowing that the sale was stayed, by moving to confirm the sale. He did not look into the validity of the judgment or the validity of the sale, nor if there were alternatives (like me borrowing money to pay off the Co-op Charges, even assuming that the charges were valid). He was just interested in getting the money and does not care about whether I am losing considerable equity. Mr. O'Connell showed his disdain for me on numerous occasions, such as when he was told at 4:00 PM that I had a buyer willing to pay $115,000.00 for the Miami property, Mr. O'Connell at first demanded that my buyer or I deliver the $115,000 that day. Finally, begrudgingly he said he would give my buyer less than 1 day (until 2:00 PM the following day) for the buyer to enter into a contract with a 20% non-refundable hard deposit. Additionally, Mr. O'Connell demanded that the purchaser post a Bank Bond, also by 2:00 o'clock, for the remaining balance of the purchase price. No one could get such a bond and even if one could, it would take more than a few hours. That is not the way real estate transactions are handled in real life; there is the presumption that a buyer who puts down a 20% non- refundable deposit will close. Mr. O'Connell would not hear of such a thing.

13. Furthermore, Mr. O'Connell is on a witch hunt and a fishing expedition to try to get me to violate my constitutional rights by causing me to incriminate myself and to violate my religious principles and to violate my rights to freedom of association. He

is also interfering with my relationship with my wife by dragging her into this case with a 2004 examination. Mr. O'Connell knows that my wife cannot testify against me or disclose any of our private conversations, yet he demanded and was granted the ability to examine her, even though he knew that she would assert, among other rights and privileges, her Fifth Amendment rights as well as her marital privilege. All these motions and depositions are being used to run up legal bills that Mr. O'Connell believes will be paid for by my dwindling assets.

14. The only possible motive that Mr. O'Connell can have is that he believes that I have a great deal of property and he wants to utilize his position as Trustee to earn a large commission and leave me destitute. He cannot have the protection of the creditors in mind because he has no idea how many creditors I might have or who the creditors are or how much, if anything, I owe. All of his allegations concerning me are not based upon facts but, rather, upon his dreams of discovering millions of dollars worth of property and liquidating it so he can earn huge fees.

15. I neither need, nor want the "protection" of the Bankruptcy Court and neither do any of my creditors, if any. It seems almost Kafkasque to find myself in the midst of a process that is consuming all of my time, decimating my finances, destroying my marriage, and threatens my freedom, and is of no benefit to the Debtor (myself) or the Creditors; which ostensibly was the reason for the creation of the Bankruptcy Laws. It seems that the only one benefitting from this is the Trustee and his Legal "Teams"

16. . I am certainly not the first person who filed a bankruptcy to stop the sale of a property; and while very foolish of me should not warrant this punishment.

17. I realize that Mr. O'Connell is entitled to be paid for his "services" and agree that as a condition of the dismissal I will pay his reasonable fees and expenses as determined by the court.

18. I also realize that the court may deny me the right to file another voluntary petition under the bankruptcy code for six years and I agree to such a condition if the court deems the same appropriate.

WHEREFORE, debtor respectfully requests and prays that G-d and this court protect us from our protectors and grant the motion to withdraw and vacate the petition and dismiss this case with or without prejudice and upon such terms and conditions as are just and equitable.

DATED: Brooklyn, New York
           January 29, 2014

_____
Herman Segal

Subscribed and affirmed by Herman Segal under the pains and penalties of perjury this 29th day of January, 2014 before me,

_____
Notary Public