**KLESTADT & WINTERS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Maeghan J. McLoughlin

**Original Hearing Date: February 25, 2014**

**Adjourned Hearing Date: April 1, 2014**
**Adjourned Hearing Time: 11:00 a.m.**

*Special Counsel to Richard E. O'Connell,*
    *Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                         :
                                                              :                    Chapter 7
HERMAN SEGAL,                                                 :
                                                              :                    Case No. 13-45519 (NHL)
                                        Debtor.               :
------------------------------------------------------------x

**TRUSTEE'S OMNIBUS OBJECTION TO (I) DEBTOR'S MOTION FOR
AN ORDER DISMISSING HIS CHAPTER 7 CASE FOR CAUSE; AND (II)
THE CLERK'S MOTION TO DISMISS THIS CASE FOR DEBTOR'S
<u>FAILURE TO PAY THE FILING FEE</u>**

**TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:**

   Richard E. O'Connell, the Chapter 7 Trustee (the "<u>Trustee</u>") for the estate of Herman

Segal (the "<u>Debtor</u>"), by and through his special litigation counsel, Klestadt & Winters, LLP, as

and for his omnibus objection (the "<u>Objection</u>") to (I) the Debtor's motion to dismiss his chapter

7 case (the "Motion") [Docket No. 54]; and (II) the Clerk's motion to dismiss this chapter 7 case

for Debtor's failure to pay the filing fee [Docket No. 49]; respectfully represents:

<u>**PRELIMINARY STATEMENT**</u>

   1.  The Debtor is now seeking the dismissal of his voluntary case after intentionally

frustrating every single thing that the Trustee has attempted to do for the last six months.  In the

Motion, the Debtor makes a number of self-serving claims, including that he (i) intentionally

filed the bankruptcy petition to frustrate a creditor's efforts to foreclose on his property; (ii) received bad legal advice with respect to the filing; (iii) was not even in the country at the time his petition was filed; (iv) does not believe that there is any valid petition containing his signature on file with the court, which makes the filing itself a nullity; and (v) "neither need[s], nor want[s] the 'protection' of the Bankruptcy Court and neither do any of [his] creditors, if any." Motion, ¶15.  The Debtor goes on to dramatically claim that this process is "consuming all of [his] time, decimating [his] finances, destroying [his] marriage, and threaten[ing] [his] freedom, and is of no benefit to [himself] or [his] [c]reditors." Id.

2.      The Debtor also makes a number of negative accusations regarding the Trustee's motives and character.  In the Motion, the Debtor asserts as follows:

- That he "had foolishly thought a Bankruptcy Trustee was supposed to protect the bankrupt and his creditors and not work against them as my Trustee [Mr. O'Connell] is doing." Motion, ¶10.

- "Mr. O'Connell is on a witch hunt and a fishing expedition to try to get me to violate my constitutional rights by causing me to incriminate myself to violate my religious principles and to violate my rights to freedom of association." Motion, ¶13.

- "He [Mr. O'Connell] is also interfering with my relationship with my wife by dragging her into this case with a 2004 examination." Motion, ¶13.

- "All these motions and depositions are being used to run up legal bills that Mr. O'Connell believes will be paid for by my [the Debtor's] dwindling assets." Motion, ¶13.

- "The only possible motive that Mr. O'Connell can have is that he believes that I have a great deal of property and he wants to utilize his position as Trustee to earn a large commission and leave me [the Debtor] destitute."  Motion, ¶14.

- "All of [Mr. O'Connell's] allegations concerning [the Debtor] are not based upon facts but, rather, upon [Mr. O'Connell's] dreams of discovering millions of dollars worth of property and liquidating it so he can earn huge fees." Motion, ¶14.

3.      The Debtor goes to great lengths to admonish the Trustee for doing his job, but does not explain how dismissing this case will not prejudice creditors.  In fact, the Debtor still

refuses to disclose even who his creditors are.[1]

4.      The dismissal of a chapter 7 case is within this Court's sound discretion. However, in a case such as this, the Court should not dismiss the case for, among other reasons:

- The Debtor waited six (6) months to make the Motion and only made it after the Trustee had done significant work in the case;

- The Debtor refuses to provide the Court with any information from which this Court can determine if dismissal is in the best interests of creditors including, most significantly, the identity of the Debtor's creditors;

- The Trustee is ready, willing and able to continue the performance of his statutory duties and is actively and aggressively trying to locate the Debtor's property and reduce it to money, investigate the financial affairs of the Debtor, and oppose the Debtor's discharge as mandated by 11 U.S.C. § 704(a)(1), (4) and (6); and

- The Debtor is proceeding in bad faith by refusing to turn over any books and records to the Trustee in contempt of the Debtor's statutory duties and this Court's express order.

5.      Dismissing this case at the Debtor's late request would reward the Debtor for his contemptuous behavior and likely ensure that none of the Debtor's creditors are discovered and paid.  Based upon the foregoing and for those reasons set forth below, the Trustee respectfully requests that the Motion be denied.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Insurance Motion and 2004 Application pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

---

[1]  By virtue of the Debtor's failure to identify his creditors, he cannot even provide proper notice of the Motion to all necessary parties as required by Fed. R. Bankr. P. 2002(a)(4).

7.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8.      Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is Bankruptcy Rule 2004.

## INTRODUCTION

9.      On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate and he is currently serving in that capacity.

10.     On September 20, 2013, the Trustee filed an application for authority to retain Yost & O'Connell as his general counsel.  Yost & O'Connell has already begun significant work towards the investigation of the Debtor and sale of the Debtor's interest in the Miami Coop.

11.     During the course of his initial investigation, the Trustee discovered a number of potential issues that may very likely require significant litigation service.  Accordingly, on October 2, 2013, the Trustee employed Klestadt & Winters, LLP, to serve as his special litigation counsel in the Debtor's case, and such retention was approved by Order of this Court dated January 25, 2014 [Docket No. 51].

## BACKGROUND

12.     At 1:55 p.m. on the Petition Date, the Debtor completed the required credit counseling through proposed Examinee Abacus, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of his shares in a cooperative apartment located at Unit #15, 4720 Pinetree Drive, Miami, Florida 33140 (the cooperative shares and related lease are collectively referred to herein as the "Miami Coop").

13.    Maxim Maximov signed the Petition as counsel to the Debtor certifying that he "has no knowledge after an inquiry that the information in the schedules is incorrect."

14.    On the Petition, the Debtor estimated that he had assets worth between $50,001 and $100,000, and liabilities between $0 and $50,000.

15.    The Debtor failed to file the following documents or make the following disclosures with his Petition:

     a)  Statement pursuant to Local Bankruptcy Rule 1073-2(b);

     b)  Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);

     c)  Summary of Schedules;

     d)  Statistical Summary of Certain Liabilities;

     e)  Schedule A (Real Property);

     f)  Schedule B (Personal Property);

     g)  Schedule C (Property Claimed as Exempt);

     h)  Schedule D (Creditors Holding Secured Claims);

     i)  Schedule E (Creditors Holding Priority Unsecured Claims);

     j)  Schedule F (Creditors Holding Unsecured Nonpriority Claims);

     k)  Schedule G (Executory Contracts and Unexpired Leases);

     l)  Schedule H (Co-Debtors);

     m) Schedule I (Income);

     n)  Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");

     o)  Declaration Concerning Schedules;

     p)  Statement of Financial Affairs (the "SoFA");

q)  Copies of Pay Statements;

r)  Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and

s)  Statement of Intention.

(collectively with any outstanding required disclosures, the "<u>Required Disclosures</u>").

16.    On September 12, 2013, the Clerk of this Court (the "<u>Clerk</u>") issued a notice of the Debtor's failure to file the Required Disclosures [Docket No. 4] (the "<u>First Deficiency Notice</u>").  The First Deficiency Notice was mailed by the Clerk to the Debtor and his counsel.

17.    On September 14, 2013, the Clerk issued a notice of the Debtor's meeting of creditors (the "<u>341 Meeting</u>") scheduled for October 15, 2013 [Docket No. 7] (the "<u>341 Meeting Notice</u>").  The 341 Meeting Notice was mailed by the Clerk to the Debtor and his counsel.

18.    Shortly after the Petition Date, counsel to the foreclosing creditor contacted the Trustee and since then, the Trustee, by and through his general counsel, has been trying to make arrangements for the consensual sale of the Miami Coop.

19.    On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property located at 4115 Quentin Road, Brooklyn, New York (the "<u>Brooklyn Property</u>").  In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

20.    On September 18, 2013, the Debtor's counsel replied to the Trustee's September 17th letter and stated that the Debtor "is partially AWOL," and promised to fulfill the Trustee's requests "if [the Debtor] cooperates."

21.    On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking

an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "Motion to Compel").

22.     On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

23.     On October 15, 2013, the Debtor failed to appear at the 341 Meeting.  At the time of filing this Complaint, the Debtor has not appeared at any 341 Meeting.

24.     On October 24, 2013, the Trustee filed a motion (the "Sale Motion") for an order authorizing him to sell the Miami Coop for $90,200.00 to The Esquire House of M.B., Inc. ("Esquire").

25.     On November 6, 2013, this Court issued an order to show cause why the Debtor's case should not be dismissed for the Debtor's failure to fulfill his requirements under section 521 of the Bankruptcy Code (the "OSC").

26.     On November 19, 2013, the Trustee filed a statement with respect to the OSC arguing that the case should not be dismissed because he had identified and was trying to liquidate assets of the estate.

27.     On November 19, 2013, the Debtor filed an objection to the Sale Motion (the "Sale Objection").  In the Sale Objection, the Debtor stated that the Miami Coop was worth a minimum of $150,000 and should not be sold pursuant to the Sale Motion.

28.     On November 21, 2013, a hearing was held before this Court on the First OSC. Neither the Debtor nor his counsel appeared at the hearing.  Accordingly, on November 21, 2013, this Court entered an order directing Debtor's counsel, Maxim Maximov, to appear and show cause why he has failed to prosecute this case on December 4, 2013.

29.     On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Order").

30.     On December 4, 2013, this Court held a hearing (the "December 4 Hearing") on the OSC and the Sale Motion.  Maxim Maximov and Warren Graham, of-counsel to Maxim Maximov, appeared for the Debtor (collectively, "Debtor's Counsel").  At the hearing, the Court authorized the Trustee to complete the transaction contemplated by the Sale Motion and did not dismiss the case pursuant to the OSC in light of the Trustee's pending investigation and efforts to locate and liquidate assets for the benefit of creditors.

31.     At the December 4 Hearing, Debtor's Counsel represented that the Debtor had approximately $150,000 in tax indebtedness, and that the Debtor had a buyer willing to purchase the Miami Coop for $115,000, approximately $25,000 more than the current bid from Esquire.

32.     At the December 4 Hearing, the Court adjourned the matter so that the parties could discuss the increased offer to purchase the Miami Coop presented by the Debtor. However, when the Trustee and his counsel left the courtroom, the Debtor and Debtor's Counsel had already left.  Despite numerous attempts to contact Debtor's Counsel to discuss the Debtor's proposed buyer for the Miami Coop, the Debtor and Debtor's Counsel have not provided any information to the Trustee regarding the offer.

33.     The Trustee's counsel has requested that Debtor's Counsel be authorized to accept service of a subpoena to the Debtor and/or Yocheved Segal issued pursuant to the Rule 2004 Order.  Debtor's Counsel has refused to accept service of either subpoena.

34.     On December 5, 2013, this Court entered the Compel Order requiring that by no later than December 23, 2013, the Debtor must:

a. File a list of creditors, a schedule of assets and liabilities, and a schedule of current income and current expenditures [11 U.S.C. § 521(a)(1)(A), (B)(i) and (ii)];

b. File a statement of financial affairs [11 U.S.C. § 521(a)(1)(B)(iii)];

c. Surrender to the Trustee all property of the estate and any recorded information, including books, documents records, and papers, relating to property of the estate (collectively, "Books and Records") [11 U.S.C. § 521(a)(4)];

d. Inform the Trustee immediately in writing as to the location of real property in which the Debtor has an interest and the name and address of every person holding money or property subject to the Debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Bankruptcy Rule 1007 [Bankruptcy Rule 4002(a)(3)]; and

e. Provide certain documents to the Trustee, including evidence of current income, statements for each of the Debtor's depository and investment accounts, including checking savings and money market accounts, mutual funds and brokerage accountants, documentation of monthly expenses claimed by the Debtor, and a current income tax returns [Bankruptcy Rule 4002(b)(2) and (3)].

35.    The Compel Order further directed the Debtor to do the following through the pendency of the case:

a. Cooperate with the Trustee as necessary to enable the Trustee to perform the Trustee's duties under the Bankruptcy Code [11 U.S.C. § 521(a)(3)] and cooperate with the Trustee in the administration of the estate [Bankruptcy Rule 4002(a)(4)]; and

b. Attend and submit to an examination at the next schedule meeting of creditors [Bankruptcy Rule 4002(a)(1)].

36.    On December 16, 2013, the Trustee commenced a formal adversary proceeding against the Debtor seeking the denial of the Debtor's discharge on numerous grounds. See O'Connell v. Segal (In re Herman Segal), Adv. Pro. No. 13-1545 (NHL) (Bankr. E.D.N.Y. Dec. 16, 2013). The Debtor answered the Complaint.

37.    On the December 23, 2013 deadline established by the Compel Order, the Debtor filed Schedules and a SoFA with this Court. The following is a summary of the disclosures made by the Debtor in those documents:

a. Schedule A (Real Property) – The Debtor admitted to owning the Miami Coop wherein a pen was used to strike through a typewritten $95,000 value ascribed to the asset and

9

amend that value upwards to \$135,000.  A handwritten note was added to Schedule A stating that the Debtor refused to provide any additional property information pursuant to his Fifth Amendment rights.

b.  <u>Schedule B (Personal Property)</u> – The Debtor admitted <u>only</u> to owning "3 kittens" (Category No. 31) and to having no property described in Categories 32 to 34.  The Debtor invoked his Fifth Amendment rights and refused to answer whether he had any property included in Categories 1 through 9, 13 through 16, 18 through 30, and 35.

c.  <u>Schedule C (Exemptions)</u> – The Debtor claimed no exemptions.

d.  <u>Schedule D (Secured Creditors)</u> – The Debtor admits to owing the obligation to Esquire in connection with the Miami Coop, but refused to provide any additional creditor information pursuant to his Fifth Amendment rights.

e.  <u>Schedule E (Priority Creditors)</u>-  The Debtor claims to have no creditors entitled to priority.  (Note that the Debtor's counsel represented at the December 4 Hearing that approximately \$150,000 was owed to taxing authorities[2]).

f.  <u>Schedule F (Unsecured, Non-priority creditors)</u> – The Debtor admits to having two liabilities: \$349.00 to Capital One, and \$300.00 to Independent Recovery.  The Debtor refused to provide any additional debt information pursuant to his Fifth Amendment rights.

g.  <u>Schedule G (Unexpired Leases and Executory Contracts)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no unexpired leases or executory contracts.

h.  <u>Schedule H (Co-Debtors)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no co-debtors.

i.  <u>Schedule I (Income)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he was married and has no dependents or income.

j.  <u>Schedule J (Expenses)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he has no expenses.

k.  <u>SoFA</u> – The Debtor claimed that he had no information relevant to Questions 4 through 6, 9, 15 through 17, or 20 through 25 on the SoFA.  The Debtor invoked his Fifth Amendment rights and refused to answer Questions 1 through 3, 7 and 8, 10 through 14, or 18 and 19, on the SoFA.

38.    The Debtor gave no indication in any prior filings or otherwise that he had

---

[2]            MR. [WARREN] GRAHAM: Number two, the debtor advises that there are substantial claims in favor of the taxing authorities, which would render the ability of the trustee to pay unsecured creditors a meaningful distribution or in fact any distribution, and those - - those total about \$150,000.  Again, that's what I'm informed by the debtor.

December 4 Hearing, Transcript, p.39, LL.13-18.

10

concerns over a criminal prosecution or would refuse to answer the very basic questions posed

on the Schedules and SoFA.  In fact, his counsel indicated the opposite at the December 4

Hearing, representing as follows:

> Your Honor, Warren Graham.
>
> I'm actually sorry that we've spent a lot of this hearing on a motion to sell talking about the debtor's deficiencies and conducting himself in this case, and they're real.  The debtor should have filed schedules.
>
> As I said, I've been in the case 24 hours.  Now that the Court has made its determination that the case is to be administered **the debtor will file schedules and they'll be accurate.**
>
> I don't know why the trustee has spent so much of his motion to sell the property on trying to talk about the debtor as being a bad guy.

December 4 Hearing, Transcript, p.29, LL.12-24 (emphasis added).

39.    The Trustee sent an email to Debtor's Counsel on December 24, 2013, stating that

regardless of any issues with the sufficiency of the information provided in the Schedules and

SoFA or the propriety of the Debtor's invocation of his Fifth Amendment rights, the Debtor was

in contempt of the Court's Compel Order because he failed to turnover Books and Records.  In

response, the Trustee received an email from Debtor's counsel on December 29, 2013, stating as

follows:

> Mr. Stevens,
>
> Mr. Segal had requested me to inform you as follows:
>
> All the schedules have been completed and submitted. Subparagraphs c, d, & e have also been completed and Mr. Segal is of the opinion that the 5th Amendment privilege applies to documents and any other materials that he reasonably believes may incriminate him.  As for the "whether he intends to remain in contempt" of the court's order, Mr.Segal believes that as he is currently not in contempt, he cannot remain in contempt.
>
> I will call you tomorrow.
>
> Best Regards,
>
> Maxim Maximov, LLP

1701 Avenue P
Brooklyn, New York 11229
Phone: 718-395-3459
Fax: 718-408-9570

40.     Mr. Maximov never called as promised in his December 29th email and to date has not returned a number of calls from the Trustee's counsel.

41.     At or around 3:15 p.m. on December 24, 2013, the Debtor and his wife were served at their home with subpoenas *duces tecum* (collectively, the "Subpoenas") authorized by this Court's Rule 2004 Order by affixing a copy of the Subpoenas to the door and by mail. The Subpoenas had to be personally served because the Debtor refused to authorize his counsel to accept service. Further, the Subpoenas had to be served by the "nail and mail" method because the Debtor and his spouse were either not home or not answering the door when the Trustee attempted to have the Subpoenas served on three separate occasions.

42.     The Debtor and Yocheved Segal have not produced a single document in response to the Subpoenas. Nor have they provided any written response to the Subpoenas identifying responsive documents and setting forth their basis for withholding any documents. Rather, the Debtor and his wife simply state that producing any document or admitting to the existence of any document would violate their Constitutional rights. Neither the Debtor nor his wife offers any authority for their asserted privileges and protections.

43.     Since the Trustee was unable to get any information from the Debtor regarding his assets and liabilities, the Trustee filed an application for authority to subpoena documents from third parties including the taxing authorities and credit reporting agencies (the "2004 Application") on January 10, 2014, so that he can obtain that information.

44.     Contemporaneously with the 2004 Application, the Trustee filed a motion for an order compelling the debtor to identify his property and any policies of insurance covering such

property, insure his property and name the Trustee as an additional insured on any insurance policy (the "Insurance Motion") in an attempt to limit his and the estate's liability if such property is lost, destroyed, or causes damage to another person or property, since the Trustee is unable to identify and insure property of the Debtor.

45.    On January 23, 2014, the Debtor and Yocheved Segal appeared in the offices of the undersigned counsel to have their depositions taken in accordance with the Subpoenas. Ms. Segal refused to answer nearly every question, even ones as innocuous as "do you have any children?" The Debtor refused to answer most questions, but would freely decide without any justification which questions he would answer and which were subject to his asserted privileges. There was no consistent pattern of questions the Debtor believed to be off-limits and which he did not. He simply appeared to be answering whatever he felt like and refused to answer whatever he did not. By way of example, the Debtor refused to admit whether he owned the Brooklyn Property in his Schedules, but then admitted that he owned it at his deposition.

46.    On January 29, 2014, the Debtor filed opposition to the 2004 Application and Insurance Motion stating simply that granting the relief sought therein would result in the violation of his rights granted under the First and Fifth Amendments of the United States Constitution.

**OBJECTION**

### I.    Standards for Motion to Dismiss

47.    Section 707(a) of the Bankruptcy Code provides that a chapter 7 case may be dismissed "for cause." Although the Bankruptcy Code does not define "cause," some examples are listed in section 707(a), such as "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3)

failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521." The list set forth in section 707(a) is illustrative and not exclusive. Schwartz v. Geltzer (In re Smith), 507 F.3d 64, 72 (2d Cir. 2007).

48.    In In re Bruckman, 413 B.R. 46, 50 (Bankr. E.D.N.Y. 2009), Chief Judge Craig summarized the standards and considerations for a debtor's own requested dismissal of his case as follows:

> It is well settled that a debtor does not have the absolute right to dismiss a chapter 7 case. [Smith, 507 F.3d] at 72; Turpen v. Eide (in re Turpen), 244 B.R. 431, 434 (8th Cir. BAP 2000). When the debtor seeks dismissal of a chapter 7 case, a court must determine whether dismissal is in the best interest of all parties in interest, including the debtor. Smith, 507 F.3d at 72; Dinova v. Harris (In re Dinova), 212 B.R. 437, 442 (2d Cir. BAP 1997). A debtor's interest "lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts." In re Schwartz, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986). With respect to the creditors' best interests, the Court considers whether the dismissal will prejudice them. In re Stephenson, 262 B.R. 871, 874 (Bankr. W.D. Okla. 2001); Schwartz, 58 B.R. at 925. Granting a debtor's motion to dismiss a voluntary case when there is a prejudicial delay creates the appearance that such an abusive practice is implicitly condoned by the Bankruptcy Code. In re Klein, 39 B.R. 530, 533 (Bankr. E.D.N.Y. 1984). The debtor bears the burden of proving that the dismissal will not prejudice his creditors. In re Stairs, 307 B.R. 698, 703 (Bankr. D.Colo. 2004); Stephenson, 262 B.R. at 874.

Id.

## II.    The Debtor Does Not Meet His Burden

49.    To begin, the Debtor has the burden of proving cause for the dismissal of his chapter 7 case. Id.; Sicherman v. Cohara (In re Cohara), 324 B.R. 24, 28 (6th Cir. BAP 2005); In re Jabarin, 395 B.R. 330, 337 (Bankr. E.D.Pa. 2008). Here, the Debtor argues that the following constitute "cause" for the dismissal:

- He received bad legal advice from his counsel with respect to filing for bankruptcy. Motion, ¶8.

- He "really had no idea what [he] was getting into when this petition was filed." Motion, ¶10.

- He "does not believe that there is any valid petition containing [his] signature on file with the court and therefore, the filing itself is a nullity." Motion, ¶11.

- The Trustee is not conducting himself appropriately and "the only one benefitting from this is the Trustee and his Legal 'Teams'". Motion, ¶¶ 10, 13-15.

- He "neither need[s], nor want[s] the 'protection' of the Bankruptcy Court and neither do any of [his] creditors, if any." Motion, ¶15.

50.    The Debtor does not provide any authority for his argument that any of the foregoing factors, even assuming they are all true, constitute cause for the dismissal of his case. As is typical of this Debtor, he makes self-serving arguments and fails to support them. He did the same thing in opposition to the Subpoenas, this Court's Compel Order, the 2004 Application and Insurance Motion where he simply stated that compliance with the requests or mandates in those documents would violate his rights under the First and Fifth Amendments of the U.S. Constitution, without explaining how. For starters, the Debtor has to provide authority to support his argument that his case should be dismissed. See. E.D.N.Y. LBR 9013-1(a) (requiring a movant to specify the rules and statutory provisions upon which the motion is based and supporting legal authorities); In re Asia Global Crossing, Ltd., 333 B.R. 199, 205 (Bankr. S.D.N.Y. 2005) (courts should not be required to perform a party's legal research).

51.    Moreover, while the Debtor appears to be acting *pro-se*, he is not a typical *pro-se* litigant. The Debtor is a disbarred attorney who, upon information and belief, holds a juris doctorate degree from Columbia University School of Law. See Attorney Registration No. 1815356, N.Y.S. Unified Court System; Herman Segal LinkedIn Profile at herman-segal/3/42a/356 (Education – Columbia University School of Law 1978-1981). The Debtor is

15

more than capable of making an intelligent and supported legal argument.

52.    Thus, the Motion can and should be denied solely on the Debtor's failure to provide any authority for the requested dismissal.  However, even if the Court were inclined to take a closer look at the Debtor's arguments, it is clear that the case should not be dismissed.

### A.  Bad Legal Advice and Ignorance of the Process Are No Excuse

53.    The Debtor argues that his decision to file his voluntary petition was made out of ignorance of the process and based upon bad legal advice.   These are not valid excuses warranting dismissal of the case.   Courts are not impressed with complaints of attorney negligence, lack of representation, or errors in judgment by debtors when considering motions for voluntary dismissal.  See In re Klein, 39 B.R. 530 (Bankr. E.D.N.Y. 1984) (denying motion to dismiss even though debtor asserted he was not fully advised of the implications of commencing a bankruptcy case); In re Martin, 30 B.R. 24 (Bankr. E.D.N.C. 1983) (denying motion to dismiss because the debtor was represented by counsel despite her assertion that counsel failed to explain the effects of filing a bankruptcy petition).

54.    Furthermore, the Debtor's claimed ignorance is suspect based upon the facts.  The Debtor is a trained lawyer who is believed to hold a law degree from one of the most prestigious law schools in the world[3].  He is more than capable of doing his own legal research.  The Debtor is well-aware of his legal rights and has asserted complex Constitutional privileges with respect to the requirements of orders of this Court and the duly issued Subpoenas.  The Debtor is no layman and should not be excused from his voluntary conduct because of a claimed ignorance of the legal system.

---

[3]    This believe is based upon the Debtor's Linked-in profile and from public court records.  The Debtor invoked his Fifth Amendment privilege and refused to answer any questions regarding his legal training when asked under oath.

**B.  Absence of a Signed Petition Does Not Warrant Dismissal**

55.      The Debtor conveniently argues that he was out of the country when his voluntary

petition was filed and that he "does not believe that there is any valid petition containing [his]

signature on file with the court and therefore, the filing itself is a nullity."  Motion, ¶¶10-11.

This argument has no merit for at least the following reasons:

- Even if he did not sign the original voluntary petition, he did sign the amended voluntary petition, dated December 23, 2013 [Docket No. 43], and freely admitted that it was his signature at his Deposition;

- He waited six (6) months to claim that he did not sign the petition and at no time before did he raise this argument or signal any intent to contest the validity of his voluntary filing; and

- In the Sale Objection and at the December 4 Hearing, the Debtor never raised the issue of not commencing this case voluntarily and in fact, stated his intention to convert this case to one under chapters 11 or 13.

56.      In Bruckman, this Court dispensed of a debtor's argument that his case should be

dismissed because he never signed his voluntary petition finding that the debtor's testimony that

he did not sign the petition was not credible in light of his testimony that he in fact authorized the

filing.  Bruckman, 413 B.R. at 51.  Unlike Bruckman, here the Debtor does not even state that he

did not sign the voluntary petition or the amended voluntary petition, he just states that he does

not believe that this Court has his signature on file.  The Debtor provides no legal argument for

why this would warrant the dismissal of his case because indeed, there is no authority supporting

that argument.

**C. The Debtor's Claim that He and His Creditors Do Not Need the "Protection" of the Bankruptcy Court Does Not Warrant Dismissal**

57.      The Debtor conveniently argues that he "neither need[s], nor want[s] the

'protection' of the Bankruptcy Court and neither do any of [his] creditors, if any."  Motion, ¶15.

However, the Debtor's testimony with respect to his creditors' wishes is hearsay at best.  In

17

reality, it is clear that the Debtor never asked any of his creditors anything. In fact, he will not even admit that he has creditors.

58.     While the Debtor likes to pretend now that he has no creditors except for the association fees on the Miami Coop, he cannot verify that fact because he refuses to answer any questions related to his liabilities. Indeed, when it was helpful to the Debtor's arguments that he have creditors, his counsel made quite different representations to this Court. Warren Graham, Debtor's counsel, represented the following to the Court in the presence of the Debtor:

> Number two, the debtor advises that there are substantial claims in favor of the taxing authorities, which would render the ability of the trustee to pay unsecured creditors a meaningful distribution or in fact any distribution, and those - - those total about $150,000. Again, that's what I'm informed by the debtor.
>
> And third, the debtor proposed to convert the case to a Chapter 11, the Court will of course rule on whether or not the absolute right granted in 706(a) is not available to him in this case, but that is the debtor's intention.

December 4 Hearing Transcript, Dec. 4, 2013, p. 39, LL. 13-22.

59.     The Debtor has the burden of demonstrating why the case should be dismissed and self-serving statements regarding the alleged wishes of undisclosed creditors must be discarded especially where, as here, they directly contradict prior representations made by the Debtor to this Court.

### D.  The Dismissal Would Prejudice Creditors

60.     The dismissal of the Debtor's case would admittedly not prejudice the only creditor that the Debtor admits that he has which is the cooperative association with the Miami Coop. There is certainly more than enough equity in the property to satisfy the association's claims. However, the dismissal would undoubtedly prejudice those creditors that the Debtor has not disclosed.

61.     At this stage, we know very little about the Debtor's creditors, except that

Debtor's counsel represented to this Court that the Debtor had tax indebtedness of approximately $150,000 in the Debtor's presence.  The Trustee filed the 2004 Application for the purpose of, among other things, learning the identity of the Debtor's creditors and the amounts of their claims.  In the meantime, the undersigned counsel to the Trustee has discussed the Debtor's case with counsel to the Internal Revenue Service (the "IRS") and has confirmed the fact that the Debtor has outstanding tax obligations and has not yet filed certain tax returns.  The Trustee's counsel is informed that the IRS is in the process of investigating the matter and will file a claim shortly.

62.    A dismissal of the Debtor's case would result in the Debtor receiving and likely dissipating the excess proceeds from the Miami Coop.  Further, the Debtor has placed a number of nonstandard mortgages held by foreign individuals on the Brooklyn Property.  To the extent the proceeds of the Brooklyn Property are necessary to satisfy the Debtor's creditors, the Trustee is in a much better position to review and challenge those suspect mortgages and ensure an orderly and proper distribution of the Debtor's assets.

63.    "Absent court oversight of payment [of creditors by the debtor], creditors are prejudiced.  They bear the risk of not being paid, a very unlikely risk in a chapter 7 case.  The method for insuring payment of creditors out of any on-exempt portion of the estate's assets is through administration under the trustee system."  In re Fulton, 339 B.R. 698, 701 (Bankr. N.D. Iowa 2006); see also In re Hopper, 404 B.R. 302, 310 (Bankr. N.D. Ill. 2009) (rejecting debtor's argument that he should be permitted to voluntarily dismiss his case because creditors would not be prejudiced).

64.    Moreover, "[d]ismissal of a bankruptcy petition that was filed principally to forestall creditors should not be permitted after the delay sought has been achieved."  Bruckman,

413 B.R. at 50-51, quoting Schwartz, 58 B.R. at 925.  "Similarly, dismissal of a case after it has appeared that the debtor failed to account honestly for his assets is not to be sanctioned, for such a failure indicates the likelihood of further questionable practices to the detriment of creditors. Id.

65.    The Debtor's creditors, which remain largely unknown to the Court at this time because of the Debtor's refusal to disclose them, will undoubtedly be prejudiced by the dismissal of this case.  The Trustee is statutorily duty bound to liquidate and distribute the Debtor's assets under the sound supervision of this Court.  Creditors will not be afforded that process outside of this Court but rather, will be relegated to having to personally deal with the Debtor's constant legal maneuverings.

### E. The Debtor's Invocation of First and Fifth Amendment Privileges Further Supports Denial of the Dismissal Motion

66.    The Debtor has refused to testify on most topics raised in the Schedules and SoFA, and to produce any documents as required by this Court's Compel Order the the Subpoenas.  The Debtor wants this Court to accept his testimony in support of the Dismissal Motion, while respecting his right not to testify regarding every other aspect of his case.  There are at least two major issues with the Debtor's assertion of his Fifth Amendment privilege – first, he has not established a right to assert the privilege, and second, if he has properly asserted the privilege, the natural implication is that he refuses to testify honestly because he is or was involved in criminal activity.  Either way, the Debtor's case should not be dismissed at his request.

### (i)  The Debtor has not Established a Right to Assert the Privilege

67.    The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against

himself." <u>U.S. Const. Amend. V.</u>  The Fifth Amendment applies when the witness "is compelled to make a Testimonial Communication that is incriminating." <u>Fisher v. United States</u>, 425 U.S. 391, 408, 96 S. Ct. 1569, 1579, 48 L.Ed.2d 39 (1976); <u>accord</u> <u>Two Grand Jury Contemnors v. United States (In re Grand Jury Subpoena)</u>, 826 F.2d 1166, 1168 (2d Cir. 1987), <u>cert</u>. <u>denied</u>, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988); <u>United States v. Fox</u>, 721 F.2d 32, 36 (2d Cir. 1983).  Further, the privilege may apply to civil proceedings and in the bankruptcy context if compelled testimony might lead to incrimination in future criminal proceedings.  <u>See</u> <u>Kastigar v. United States</u>, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); <u>Martin Trigona v. Belford (In re Martin Trigona)</u>, 732 F.2d, 175 (2d Cir. 1984).

68.    Before the Debtor is entitled to remain silent or refuse to produce lawfully requested documents, there must be a valid assertion of the Fifth Amendment.  <u>In re Morganroth</u>, 718 F.2d 161, 167 (6th Cir. 1983).

69.    First, the Debtor has to demonstrate that he has a possibility of prosecution that is more than mere speculation.  <u>In re Folding Carton Antitrust Litigation</u>, 609 F.2d 867, 871 (7th Cir. 1979).    This court must be satisfied that the Debtor can avoid all his statutory duties of disclosure and production due to some demonstrated real and appreciable danger of incrimination.  <u>See</u> <u>Marchetti v. United States</u>, 390 U.S. 39, 48-49, 88 S.Ct. 697, 702-03. 19 L.Ed.2d 889 (1968); <u>United States v. Goodwin</u>, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

70.    Here, despite numerous requests, the Debtor has refused to provide any basis whatsoever for his refusal to answer any questions as follows:

Q.    Have you ever been convicted of a crime?
A.    I plead the fifth.

Q.    Are you currently under indictment or have you otherwise been charged

> with the commission or a crime?
>
> A.     I plead the fifth.
>
> Q.     To your knowledge, are you currently being investigated by any governmental agency in connection with a criminal investigation?
>
> A.     I plead the fifth.
>
> Q.     Why do you believe that any answer you may give in connection with this proceeding may incriminate you in the commission of a crime?
>
> A.     I plead the fifth.
>
> Q.     What analysis did you do in determining whether to refuse to testify or to answer any question?
>
> A.     I plead the fifth.

Transcript of January 23, 2014 Deposition of Herman Segal (the "<u>Debtor Deposition</u>"), pp. 4-5.

> Q.     But do you have any basis for asserting your fifth amendment rights?
>
> A.     I'm pleading the fifth as the answer to that question.
>
> Q.     Is there any information that you will provide in support of the contention that you have a reasonable concern of criminal prosecution?
>
> A.     No, I will not.  The mere production of proof would cause me to possibly incriminate myself which is why I'm exercising my fifth amendment right.

Debtor Deposition, p.62.

71.     Indeed, given his behavior in this case, it could be easily inferred that the Debtor is merely asserting his Fifth Amendment privilege in furtherance of his strategy to frustrate and delay the Trustee, and not because he fears implicating himself in a crime.

72.     With the information the Debtor has provided, there is no way for this Court to determine that the Debtor's danger of incrimination is appreciable.  The law is quite clear.  The debtor's "say-so does not itself establish the hazard of incrimination." <u>Hoffman v. United States</u>, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951).  The Seventh Circuit has set forth a test for establishing the right to invoke the Fifth Amendment as follows:

> "[A] witness need not establish that an answer to a question or an explanation why an answer cannot be given will in fact incriminate.  He must however, tender some credible reason why a response would pose a

real danger of incrimination, not a remote and speculative possibility. The ultimate question of whether the privilege is properly invoked is one for the judge."

Martin-Trigona v. Gouletas, 634 F.2d 354, 360 (7th Cir.) cert. denied, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980), citing Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 1118 (1972).

73.    Unless the Debtor provides something more, his so called "fear" of incrimination is only imaginary, remote and speculative, and accordingly, should be rejected. See Uechert v. C.I.R., 721 F.2d 248 (8th Cir. 1983); McCoy v. C.I.R., 696 F.2d 1234 (9th Cir. 1983).

74.    Based upon the foregoing, the Debtor has failed to assert any valid Fifth Amendment privilege.

### (ii) Even if the Debtor Established a Real Fear of Incrimination and Invocation of his Fifth Amendment Privilege, that Fact Militates Against Dismissing the Case

75.    If the Debtor does establish a reasonable fear of incrimination by testifying in this proceeding, then his case should certainly not be dismissed. The proper assertion of the Fifth Amendment privilege in a civil proceeding does not come without a price. If a party exercises their Fifth Amendment privilege, a negative inference may be drawn. See Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them….."); see also LiButti v. United States, 107 F.3d 110 (2d Cir. 1997) (allowed adverse inferences to be drawn against non-party witness who refused to answer questions under protection of the Fifth Amendment).

76.    "Although one might wish it was not so, a person asserting her Fifth Amendment rights subjects herself to suspicion from prosecutors and casual observers alike. Only within the

23

criminal justice system, if there, can it be said that invoking the right against self-incrimination is without pejorative effect." In re DG Acquisition Corp., 208 B.R. 323, 328 (Bankr. S.D.N.Y. 1997).

77.    The Debtor's assertion of the Fifth Amendment privilege is either an inappropriate attempt to avoid providing this Court with necessary and required disclosures and information, or an admission that the Debtor has been involved in some sort of criminal activity. Either way, it is all the more reason that the Debtor should not be able to escape the processes of this Court where the identification and liquidation of his assets can be supervised and structured, and the fair and proper distribution to his creditors can be ensured.

### III.    The Clerk's Request for Dismissal Should be Declined

78.    The Clerk has requested the dismissal of the Debtor's case because the Debtor has failed to pay the necessary filing fee.  This too should be denied at this time.  Among other reasons, the best chance the Clerk has to collect its filing fee is through the estate when it is administered by the Trustee.

79.    Dismissing the case because the Debtor failed to pay the filing fee would be rewarding the Debtor for his own bad conduct.  Courts have declined to enforce similar "automatic dismissal" triggers under section 521(i)(1) when such dismissal would condone an abuse of the process.  The Ninth Circuit held that:

> Allowing bankruptcy courts discretion to waive the §521(i)(1) filing requirement after the filing deadline has passed will discourage bankruptcy abuse because a court may decline to dismiss the debtor's case if it determines the debtor is abusing and manipulating the system. [Otherwise,] an abusive and manipulative debtor could guarantee his case would be dismissed simply by declining to comply with the §521(i)(1) filing requirement.

In re Warren, 68 F. 3d 1113, 1116-1119 (9th Cir. 2009) (dismissal motion denied "to prevent automatic dismissal from furthering. . . . debtor's abusive conduct").

80. The Court should decline dismissing the Debtor's case at this time for failure to pay the filing fee.

**IV.    Conclusion**

81. The Court has discretion to do what is in the best interests of all parties. Here, it is in the best interests of the creditors to not dismiss the Debtor's case. The Debtor's conduct in this case is deplorable. He simply does whatever suits him without regard for the impact of his actions on his creditors, the Trustee or this Court. Most recently in the Dismissal Motion, the Debtor launched into an unwarranted and unsupported tirade about the conduct of the Trustee and his counsel.

82. Despite significant resistance from the Debtor, the Trustee has already made substantial progress in discovering and liquidating the Debtor's assets and administrating the Debtor's estate. The Trustee has had to engage in significant motion practice and discovery all because of the Debtor's failure to play by the rules. The Debtor should not be allowed to escape from the process that he himself initiated. The Trustee and his professionals are merely trying to clean up the mess that the Debtor made and continues to make.

83. Based upon the foregoing, the Trustee respectfully submits that the Dismissal Motion should be denied

<u>**RESERVATION OF RIGHTS**</u>

84. The Trustee respectfully preserves his right to amend this pleading or file supplement papers in the event that the Debtor modifies his testimony and attempts to provide support for the Dismissal Motion.

**WHEREFORE,** the Trustee respectfully submits that the Dismissal Motion should be denied, the Clerk's requested dismissal should be denied, and that he should be granted such further and other relief as is just and proper.

Dated:   New York, New York
         February 19, 2014

**KLESTADT & WINTERS, LLP**

By:   _/s/ Fred Stevens_
      Fred Stevens
      Maeghan J. McLoughlin
      570 Seventh Ave., 17th Floor
      New York, New York 10018
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
             mmcloughlin@klestadt.com

      *Special Counsel to Richard E. O'Connell, the*
      *Chapter 7 Trustee of the Estate of Herman*
      *Segal*