**KLESTADT & WINTERS, LLP**

570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

**Presentment Date: July 31, 2014**
**Presentment Time: 12:00 p.m. (EST)**

**Objection Deadline: July 29, 2014**

*Special Litigation Counsel to Richard E.*
  *O'Connell, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re                                                           :
                                                                :          Chapter 7
HERMAN SEGAL,                                    :
                                                                :          Case No. 13-45519 (NHL)
                               Debtor.          :
----------------------------------------------------------x

**TRUSTEE'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R.
BANKR. P. 2004, AUTHORIZING THE TRUSTEE TO EXAMINE AND
OBTAIN DOCUMENTS FROM CERTAIN INDIVIDUALS AND ENTITIES
RELATED TO THE DEBTOR'S OR HIS ENTITY'S ACQUISITION AND
POST-PETITION SALE OF THE REAL PROPERTY LOCATED AT 432
WEST 162ND STREET, NEW YORK, NEW YORK**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") for the estate of Herman

Segal (the "Debtor"), by and through his special litigation counsel, Klestadt & Winters, LLP, as

and for his application (the "Application") for entry of an order, pursuant to Fed. R. Bankr. P.

2004, authorizing the Trustee to examine and obtain documents from those individuals and

entities identified on Exhibit A hereto (each an "Examinee," collectively, the "Examinees"), in

connection with the Debtor's or his entity's acquisition and post-petition sale of the real property

located at 432 West 162nd Street, New York, New York (the "Property"), respectfully represents:

## PRELIMINARY STATEMENT

1.       After voluntarily availing himself of the bankruptcy process, the Debtor has done everything possible to frustrate the Trustee's investigation and administration of the Debtor's estate.  Among other things, the Debtor refuses to disclose any of his assets, provide details of his financial affairs, or turn over any books and records.  The Debtor claims that making such disclosures would violate his First and Fifth Amendment Rights.  The Trustee has numerous applications and motions pending before the Court, all of which have been held in abeyance in order to afford the Debtor an opportunity to fully litigate his January 30, 2014 motion to dismiss his chapter 7 case (the "Dismissal Motion") [Docket No. 54].  The evidentiary hearing on the Dismissal Motion was scheduled for July 16, 2014, at 2:00 p.m., but has been adjourned by the Court to September 4, 2014, at 2:00 p.m.

2.       On July 10, 2014, Trustee's counsel discovered that the Debtor's wholly-owned limited liability company, 432 West 162 Street Acquisition, LLC (the "Debtor LLC"), sold the Property on January 21, 2014, four (4) months after the Debtor commenced his bankruptcy case, for $1,075,000 (the "Property Sale").

3.       The only way the Trustee even found out about the Property Sale was because the Debtor signed a brokerage agreement with NRT New York LLC, d/b/a The Corcoran Group ("Corcoran") in his individual capacity and then failed to pay at least half the agreed upon commission.  On January 30, 2014, Corcoran sued the Debtor in New York State Supreme Court (Index No. 650322/2014) for $32,250, the remaining commissions due it in connection with the Property Sale.  During a routine litigation search on the Debtor, the Trustee's counsel discovered the litigation and the post-petition Property Sale.

4.       The Trustee needs to immediately discover the terms of the Property Sale and

most importantly, where the proceeds went.   Any delay in the Trustee's discovery of these matters could result in an irreparable impairment of his ability to recover the proceeds.

## NEED FOR IMMEDIATE RELIEF

5.     The Trustee cannot afford to delay discovery on these matters.   The Debtor intentionally concealed the existence of the Debtor LLC and Property from the Trustee, and sold the Property without disclosure or authority from this Court or the Trustee.   The Debtor's actions are shocking to say the least.   The Trustee submits contemporaneously herewith the affidavit of Fred Stevens (the "Stevens Affidavit"), a partner of Klestadt & Winters, LLP, the Trustee's special litigation counsel, in support of the motion and annexing relevant documents that are a matter of public record.

6.     For all these reasons and for those set forth below and in the Stevens Affidavit, the Trustee respectfully requests that the Court enter an order in substantially the same form as that annexed hereto as Exhibit B (the "Proposed Order"), authorizing him to issue subpoenas upon each Examinee in substantially the same form as that annexed hereto as Exhibit C (each a "Subpoena," collectively, the "Subpoenas").

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

8.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

9.     Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§

1408 and 1409.

10.    The statutory predicate for the relief requested herein is Bankruptcy Rules 2004(a) and 9016, and Federal Rule 45.

## INTRODUCTION

11.    On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

12.    On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate.  On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

13.    On September 20, 2013, the Trustee filed an application for authority to retain Yost & O'Connell as his general counsel, which was granted by Order of this Court dated October 18, 2013 [Docket No. 17].

14.    On October 2, 2013, the Trustee employed Klestadt & Winters, LLP, to serve as his special litigation counsel in the Debtor's case, and such retention was approved by Order of this Court dated January 25, 2014 [Docket No. 51].

## BACKGROUND

### I.    Procedural History and Debtor's General Refusal to Cooperate

15.    At 1:55 p.m. on the Petition Date, the Debtor completed the required credit counseling, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of his shares in a cooperative apartment located at Unit #15, 4720 Pinetree Drive, Miami, Florida 33140 (the cooperative shares and related lease are collectively referred to herein as the "Miami Coop").

16.     The Debtor failed to file the following documents or make the following disclosures with his Petition:

    a)  Statement pursuant to Local Bankruptcy Rule 1073-2(b);
    b)  Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);
    c)  Summary of Schedules;
    d)  Statistical Summary of Certain Liabilities;
    e)  Schedule A (Real Property);
    f)  Schedule B (Personal Property);
    g)  Schedule C (Property Claimed as Exempt);
    h)  Schedule D (Creditors Holding Secured Claims);
    i)  Schedule E (Creditors Holding Priority Unsecured Claims);
    j)  Schedule F (Creditors Holding Unsecured Nonpriority Claims);
    k)  Schedule G (Executory Contracts and Unexpired Leases);
    l)  Schedule H (Co-Debtors);
    m) Schedule I (Income);
    n)  Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");
    o)  Declaration Concerning Schedules;
    p)  Statement of Financial Affairs (the "SoFA");
    q)  Copies of Pay Statements;
    r)  Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and
    s)  Statement of Intention.

(collectively with any outstanding required disclosures, the "Required Disclosures").

17.     On September 14, 2013, the Clerk issued a notice of the Debtor's meeting of creditors (the "341 Meeting") scheduled for October 15, 2013 [Docket No. 7] (the "341 Meeting Notice").  The 341 Meeting Notice was mailed by the Clerk to the Debtor and his counsel.

18.     On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property located at 4115 Quentin Road, Brooklyn, New York (the "Brooklyn Property").  In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

19.     On September 18, 2013, the Debtor's counsel replied to the Trustee's September

17th letter and stated that the Debtor "is partially AWOL," and promised to fulfill the Trustee's requests "if [the Debtor] cooperates."

20.    On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "Motion to Compel").

21.    On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

22.    On October 15, 2013, the Debtor failed to appear at the 341 Meeting.  At the time of filing this Motion, the Debtor has not appeared at any 341 Meeting.

23.    On October 24, 2013, the Trustee filed a motion (the "Sale Motion") for an order authorizing him to sell the Miami Coop for $90,200.00 to The Esquire House of M.B., Inc. ("Esquire").

24.    On November 19, 2013, the Debtor filed an objection to the Sale Motion (the "Sale Objection").  In the Sale Objection, the Debtor stated that the Miami Coop was worth a minimum of $150,000 and should not be sold pursuant to the Sale Motion.

25.    On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Order").

26.    On December 4, 2013, this Court held a hearing (the "December 4 Hearing") on, among other things, the Sale Motion.  Maxim Maximov and Warren Graham, of-counsel to Maximov, appeared for the Debtor (collectively, "Debtor's Counsel").  At the hearing, the Court authorized the Trustee to complete the transaction contemplated by the Sale Motion and did not

dismiss the case pursuant to the First OSC in light of the Trustee's pending investigation and efforts to locate and liquidate assets for the benefit of creditors.

27.    At the December 4 Hearing, Debtor's Counsel represented that the Debtor had approximately $150,000 in tax indebtedness, and that the Debtor had a buyer willing to purchase the Miami Coop for $115,000, approximately $25,000 more than the current bid from Esquire.

28.    At the December 4 Hearing, the Court adjourned the matter so that the parties could discuss the increased offer to purchase the Miami Coop presented by the Debtor. However, when the Trustee and his counsel left the courtroom, the Debtor and Debtor's Counsel had already left.  Despite numerous attempts to contact Debtor's Counsel to discuss the Debtor's proposed buyer for the Miami Coop, the Debtor and Debtor's Counsel have not provided any information to the Trustee regarding the offer.

## II.    The Compel Order, Books & Records and Schedules

29.    On December 5, 2013, this Court entered an order granting the Motion to Compel (the "Compel Order") requiring that by no later than December 23, 2013, the Debtor must:

a.  File Schedules [11 U.S.C. § 521(a)(1)(A), (B)(i) and (ii)];

b.  File a SoFA [11 U.S.C. § 521(a)(1)(B)(iii)];

c.  Surrender to the Trustee all property of the estate and any recorded information, including books, documents records, and papers, relating to property of the estate (collectively, "Books and Records") [11 U.S.C. § 521(a)(4)];

d.  Inform the Trustee immediately in writing as to the location of real property in which the Debtor has an interest and the name and address of every person holding money or property subject to the Debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Bankruptcy Rule 1007 [Bankruptcy Rule 4002(a)(3)]; and

e.  Provide certain documents to the Trustee, including evidence of current income, statements for each of the Debtor's depository and investment accounts, including checking savings and money market accounts, mutual funds and brokerage accountants, documentation of monthly expenses claimed by the Debtor, and a current income tax returns [Bankruptcy Rule 4002(b)(2) and (3)].

30.     The Compel Order further directed the Debtor to do the following through the

pendency of the case:

   a.  Cooperate with the Trustee as necessary to enable the Trustee to perform the Trustee's
       duties under the Bankruptcy Code [11 U.S.C. § 521(a)(3)] and cooperate with the Trustee
       in the administration of the estate [Bankruptcy Rule 4002(a)(4)]; and

   b.  Attend and submit to an examination at the next scheduled meeting of creditors
       [Bankruptcy Rule 4002(a)(1)].

31.     On December 16, 2013, the Trustee commenced a formal adversary proceeding

against the Debtor seeking the denial of the Debtor's discharge on numerous grounds.  See

O'Connell v. Segal (In re Herman Segal), Adv. Pro. No. 13-1545 (NHL) (Bankr. E.D.N.Y. Dec.

16, 2013).

32.     On the December 23, 2013 deadline established by the Compel Order, the Debtor

filed Schedules and a SoFA with this Court.  The following is a summary of the disclosures

made by the Debtor in those documents:

   a.  Schedule A (Real Property) – The Debtor admitted to owning the Miami Coop wherein a
       pen was used to strike through a typewritten $95,000 value ascribed to the asset and
       amend that value upwards to $135,000.  A handwritten note was added to Schedule A
       stating that the Debtor refused to provide any additional property information pursuant to
       his Fifth Amendment rights.

   b.  Schedule B (Personal Property) – The Debtor admitted only to owning "3 kittens"
       (Category No. 31) and to having no property described in Categories 32 to 34.  The
       Debtor invoked his Fifth Amendment rights and refused to answer whether he had any
       property included in Categories 1 through 9, 13 through 16, 18 through 30, and 35.

   c.  Schedule C (Exemptions) – The Debtor claimed no exemptions.

   d.  Schedule D (Secured Creditors) – The Debtor admits to owing the obligation to Esquire
       in connection with the Miami Coop, but refused to provide any additional creditor
       information pursuant to his Fifth Amendment rights.

   e.  Schedule E (Priority Creditors)- The Debtor claims to have no creditors entitled to
       priority.  (Note that the Debtor's counsel represented at the December 4 Hearing that
       approximately $150,000 was owed to taxing authorities[1]).

---

[1]          MR. [WARREN] GRAHAM: Number two, the debtor advises that there are substantial

    f.   <u>Schedule F (Unsecured, Non-priority creditors)</u> – The Debtor admits to having two liabilities: $349.00 to Capital One, and $300.00 to Independent Recovery.  The Debtor refused to provide any additional debt information pursuant to his Fifth Amendment rights.

    g.   <u>Schedule G (Unexpired Leases and Executory Contracts)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no unexpired leases or executory contracts.

    h.   <u>Schedule H (Co-Debtors)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no co-debtors.

    i.   <u>Schedule I (Income)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he was married and has no dependents or income.

    j.   <u>Schedule J (Expenses)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he has no expenses.

    k.   <u>SoFA</u> – The Debtor claimed that he had no information relevant to Questions 4 through 6, 9, 15 through 17, or 20 through 25 on the SoFA.  The Debtor invoked his Fifth Amendment rights and refused to answer Questions 1 through 3, 7 and 8, 10 through 14, or 18 and 19, on the SoFA.

    33.    The Debtor gave no indication in any prior filings or otherwise that he had concerns over a criminal prosecution or would refuse to answer the very basic questions posed on the Schedules and SoFA.  In fact, his counsel indicated the opposite at the December 4 Hearing, representing as follows:

> Your Honor, Warren Graham.
>
> I'm actually sorry that we've spent a lot of this hearing on a motion to sell talking about the debtor's deficiencies and conducting himself in this case, and they're real.  The debtor should have filed schedules.
>
> As I said, I've been in the case 24 hours.  Now that the Court has made its determination that the case is to be administered **the debtor will file schedules and they'll be accurate.**
>
> I don't know why the trustee has spent so much of his motion to sell the property on trying to talk about the debtor as being a bad guy.

---

claims in favor of the taxing authorities, which would render the ability of the trustee to pay unsecured creditors a meaningful distribution or in fact any distribution, and those - - those total about $150,000.  Again, that's what I'm informed by the debtor.

December 4 Hearing, Transcript, p.39, LL.13-18.

December 4 Hearing, Transcript, p.29, LL.12-24 (emphasis added).

34.    The Trustee's counsel sent an email to Debtor's Counsel on December 24, 2013, stating that regardless of any issues with the sufficiency of the information provided in the Schedules and SoFA or the propriety of the Debtor's invocation of his Fifth Amendment rights, the Debtor was in contempt of the Court's Compel Order because he failed to turnover Books and Records.

35.    The Debtor's counsel forwarded the Trustee's counsel's email to his client and on December 26, 2014, the Debtor responded to his counsel as follows:

Maxim,

Please inform the esteemed Fred Stevens the following:

All the schedules have been completed and submitted.  Subparagraphs c, d, & e have also been completed and Mr. Stevens should brush up on his Constitutional Law if he fails to understand that the 5th Amendment privilege applies to documents and any other materials that I reasonably believe may incriminate me.

As for the "whether he intends to remain in contempt"; that's like asking whether Mr. Stevens wishes to "remain an imbecile", that would assume that Mr. Stevens is currently an imbecile.  As I am not in contempt now, I cannot remain in contempt.

Herman

36.    In response, the Debtor's counsel edited his client's December 26th email and responded to the Trustee's counsel on December 29, 2013, stating as follows:

Mr. Stevens,

Mr. Segal had requested me to inform you as follows:

All the schedules have been completed and submitted. Subparagraphs c, d, & e have also been completed and Mr. Segal is of the opinion that the 5th Amendment privilege applies to documents and any other materials that he reasonably believes may incriminate him.  As for the "whether he intends to remain in contempt" of the court's order, Mr.Segal believes that as he is currently not in contempt, he cannot remain in contempt.

I will call you tomorrow.

Best Regards,

Maxim Maximov, LLP
1701 Avenue P
Brooklyn, New York 11229
Phone: 718-395-3459
Fax: 718-408-9570

## III.      The Debtor's Failure to Comply With the Subpoenas

37.      Pursuant to the Rule 2004 Order, at or around 3:15 p.m. on December 24, 2013, the Debtor and his wife were served at their home with subpoenas, by affixing a copy of the subpoenas to the door and by mail.

38.      The subpoenas required the Debtor and his spouse to produce documents by January 10, 2014 and January 17, 2014, respectively, and to appear at the undersigned's offices for examinations at 10:00 a.m. on January 16, 2014, and January 23, 2014, respectively.  The subpoenas had to be personally served because the Debtor refused to authorize his counsel to accept service.  Further, the Subpoenas had to be served by the "nail and mail" method because the Debtor and his spouse were either not home or not answering the door when the Trustee attempted to have the Subpoenas served on three separate occasions.

39.      The Debtor and Yocheved Segal have not produced a single document in response to the subpoenas or the Compel Order.  Nor have they provided any written response to the subpoenas identifying responsive documents and setting forth their basis for withholding those documents.  Rather, the Debtor and his wife simply state that producing any document or admitting to the existence of any document would violate their Constitutional rights.  Neither the Debtor nor his wife offers any authority for their asserted privileges and protections.

40.      On January 23, 2014, the Debtor and Yocheved Segal appeared in the offices of the undersigned counsel to have their depositions taken in accordance with the subpoenas.  Ms. Segal refused to answer nearly every question, even ones as innocuous as "do you have any

children?"  The Debtor refused to answer most questions, but would freely decide without any justification which questions he would answer and which were subject to his asserted privileges. There was no consistent pattern of questions the Debtor believed to be off-limits and which he did not.  He simply appeared to answer whatever he felt like and refused to answer whatever he did not.  By way of example, the Debtor refused to admit whether he owned the Brooklyn Property in his Schedules, but then admitted that he owned it at his deposition.

### IV.    The Debtor's Litigation of the Dismissal Motion and Delays

41.    On January 30, 2014, the Debtor filed the Dismissal Motion.  The Trustee filed a timely opposition to the Dismissal Motion on February 19, 2014, and the hearing on the Dismissal Motion was originally scheduled for February 25, 2014.  It was then adjourned by the Court to April 1, 2014.

42.    At the hearing on April 1, 2014, the Debtor appeared through new counsel, the Law Offices of Rachel Blumenfeld, who requested an extension of time to brief new issues related to the Dismissal Motion.  The Court granted the request and gave the Debtor until April 28, 2014 to submit additional briefing related to the Dismissal Motion.

43.    On April 30, 2014, the Debtor submitted an additional memorandum of law in support of the Dismissal Motion [Docket No. 81], and on May 5, 2014, the Trustee filed his response, which he later amended to include a table of authorities on May 6, 2014 [Docket Nos. 82 and 83].

44.    During the course of preparing his May 5, 2014 memorandum of law, the Trustee discovered the existence of two lawsuits which directly undermined the Debtor's routine representation that he had no creditors.  See Principal Life Insurance Co. v. Herman Segal, et al., Case No. 14-cv-00198-SRC-CLW (D.N.J. Jan. 10, 2014) (dismissed without prejudice on March

12

24, 2014) (the "Principal Life Action");  Arnold Young v. Herman Segal, Case No. 14-cv-01997-SRC-CLW (D.N.J. March 31, 2014) (the "Young Action").

45.    On March 31, 2014, Arnold Young commenced the Young Action against the Debtor alleging, among other things, that:

> Defendant H. Segal induced an innocent party, Mr. Young, to participate in the transactions in which H. Segal and parties he was working with would procure and finance several policies of life insurance on Mr. Young's life for the purpose of later selling those policies in one or more life settlement transactions.  In addition, H. Segal sought to ensure Mr. Young's continued participation in such transaction by knowingly withholding from Mr. Young to cease his participation in the transaction.

> Contrary to H. Segal's prior representations, Mr. Young has incurred liability as a result of such [Stranger-Originated Life Insurance] STOLI transactions. In particular, Mr. Young was forced to incur extensive costs and expenses to defend, and eventually bring about settlement of, a lawsuit that was brought against Mr. Young solely as a result of the STOLI transactions originated by H. Segal and a letter of guaranty that was forged in the name of Mr. Young. Additionally, Mr. Young was forced to incur further legal costs and expenses in connection with a second lawsuit that was, again, brought against him solely as a result of the STOLI transactions originated by H. Segal and the letter guaranty that was forged in the name of Mr. Young.

See Young Action Complaint, ¶¶ 2-3.  The existence of this litigation was not learned of by the Trustee until May 5, 2014.

46.    On May 22, 2014, the Court held a hearing on the Dismissal Motion.  The Trustee submitted that he would stipulate to all facts asserted by the Debtor in connection with the Dismissal Motion solely for purposes of resolving the Dismissal Motion.  The Debtor refused and demanded an evidentiary hearing.  The evidentiary hearing was scheduled for July 16, 2014. Leading up to the evidentiary hearing, the parties participated and were prepared to litigate the Dismissal Motion on July 16 until the hearing was adjourned by the Court on its own motion to September 4, 2014.

47.    This case has been virtually suspended for six (6) months while the Debtor has

changed counsel and litigated his Dismissal Motion. In addition to the Trustee's investigation generally, the following important matters have been held in abeyance pending resolution of the Dismissal Motion:

- Trustee's Motion for an Order, Pursuant to Fed. R. Bankr. P. 2004: (I) Authorizing the Trustee to Examine (A) Credit Reporting Agencies Trans Union LLC, Equifax Inc., and Experian, (B) Abacus Credit Counseling, (C) the Taxing Authorities the Internal Revenue Service and the State of New York, and (D) Any Financial Institutions Where the Debtor or his Spouse, Yocheved Segal, have Maintained Financial Accounts; (II) Authorizing the Examinees to Turn Over Confidential Information Concerning the Debtor to the Trustee; and (III) Establishing Expedited Procedures for the Trustee to Obtain Further Authorization to Conduct Examinations [Docket No. 44] (Filed January 10, 2014)

    o Debtor's Objection [Docket No. 52] (Filed January 29, 2014)

    o Trustee's Reply to the Debtor's Objection [Docket No. 56] (Filed February 7, 2014)

- Trustee's Motion for Entry of an Order, Pursuant to Section 105(a) of the Bankruptcy Code: (I) Compelling the Debtor to (A) Provide to the Trustee all Documents Related to the Debtor's Property, or any Liability Emanating from such Property; (B) add the Trustee as an Additional Insured with Respect to any such Insurance Policy, and (C) Maintain Adequate General Liability and Property Loss Coverage with Respect to any Such Property; and (II) Excusing the Trustee from any Responsibility to Insure any Property [Docket No. 45] (Filed January 10, 2014)

    o Debtor's Objection [Docket No. 53] (Filed January 29, 2014)

    o Trustee's Reply to the Debtor's Objection [Docket No. 56] (Filed February 7, 2014)

- Trustee's Motion for Entry of Orders, Pursuant to 11 U.S.C. §§ 105(a), 521(a)(4) and 542(e), Fed. R. Bankr. P. 2004(c) and 9016, and Fed. R. Civ. P. 45(d)(2) and (e): (I) Compelling the Debtor and Yocheved Segal to Produce Documents Pursuant to this Court's December 5, 2013 Order and the Trustee's Subpoenas Issued Pursuant to this Court's November 21, 2013 Order, (II) Holding the Debtor in Contempt of this Court's December 5, 2013 Order, and the Debtor and Yocheved Segal in Contempt of the Subpoenas, and (III) Imposing Appropriate Sanctions Against the Debtor and Yocheved Segal to Discourage Their Contemptuous Behavior and Obtain Compliance with this Court's Orders [Docket No. 66] (Filed March 6, 2014)

- O'Connell v. Herman Segal, Adv. Pro. No. 13-1545 (NHL) – Adversary Proceeding Objecting to Debtor's Discharge – Pretrial Conference

o    Debtor's Answer to Complaint [13-1545 Docket No. 6] (Filed December 27, 2013)

48.    In addition to the discovery of the Young Action and Principal Life Action, the Trustee recently discovered a case commenced by Annette Kleinfeld against the Debtor (see Kleinfeld v. Segal, Index No. 500930/2014 (N.Y. Sup. Ct.)).  In connection with that action, Ms. Kleinfeld submitted an affidavit, dated January 14, 2014, wherein she testified, among other things, that:

> I was advised that [Debtor] was an expert in trading in the stock markets.  [Debtor] promised me a ten-percent return on my investment and assured me that I would receive one-percent of my investment as a dividend every month to pay for my bills and medications.
>
> *****
>
> [Debtor] provided no detailed information with respect to the type of loan I was making or where my money would be invested, nor did I receive anything in writing.  However, I trusted [Debtor] completely because he was so highly regarded by his then-business partner, who assured me that Defendant handled his and his family's money for years, resulting in great profits.
>
> ******
>
> For a few months, [Debtor] paid me some dividends on the Loan [of $400,000].  However, in the Spring of 2010, his then-business partner succumbed to bone marrow cancer and died, and subsequently, [Debtor] ceased making payments to me altogether.

Kleinfeld Affidavit.

## V.    Discovery of the Debtor's Concealment of the Property and Unauthorized Property Sale

49.    On July 10, 2014, in the course of preparing for the evidentiary hearing on the Dismissal Motion, the Trustee discovered that the Debtor is the sole-member, and appears to be the sole-owner, of the Debtor LLC.  See NYS DOS record for Debtor LLC annexed to the Stevens Affidavit as Exhibit A listing "Herman Segal, Esq." as the agent for service of process.

50.    On January 21, 2014, four (4) months after filing for bankruptcy, the Debtor LLC transferred the Property to Canberra Raiders LLC for stated consideration of $1,075,000.  See

January 21, 2014 deed annexed to the Stevens Affidavit as <u>Exhibit B</u> with the Debtor's signature as "sole member" of the LLC.

51.     The Property was purportedly encumbered by a certain mortgage of 1410 Equities LLC in the principal amount of $650,000.  <u>See</u> May 29, 2013 mortgage annexed to the Stevens Affidavit as <u>Exhibit C</u>.

52.     The only reason that the Trustee found out about the Property Sale was because the Debtor signed the brokerage agreement with Corcoran in his individual name and then failed to pay at least half the agreed upon commission.  On January 30, 2014, Corcoran sued the Debtor in New York State Supreme Court (Index No. 650322/2014) for $32,250, the remaining commissions due it in connection with the sale of the Property.  A copy of Corcoran's verified complaint is annexed to the Stevens Affidavit as <u>Exhibit D</u>.  When doing a litigation search in the Debtor's name, Trustee's counsel discovered the Corcoran litigation and facts related to the Property Sale including the foregoing.

53.     In an effort to obtain information regarding the sale of the Property, Trustee's counsel sent a demand upon David Fleischmann, Debtor LLC's counsel of record, demanding a turnover of any sale proceeds and all documents related to the sale and the dissipation of the proceeds.  Mr. Fleischmann has indicated an intention to cooperate with the Trustee but claims that the Debtor is refusing to consent to the turnover of documents and information related to the Property under a claim of privilege.  Copies of the correspondence between counsel is annexed to the Stevens Affidavit as <u>Exhibit E</u>.

54.     The Debtor never disclosed his ownership of the Property or Debtor LLC to the Trustee, never informed the Trustee of the Property Sale, and is now impeding the Trustee's ability to obtain information on these matters.  It is incumbent upon the Trustee to investigate the

facts and circumstances surrounding the unauthorized sale of the Property post-petition and the dissipation of the net proceeds which appear to be not less than $425,000. Any delay in the Trustee's discovery of information related to, and pursuit of, the proceeds could cause irreparable damage to the estate and its creditors. In order continue his investigation the Trustee must obtain information from the third party Examinees.

## RELIEF REQUESTED

55.     Pursuant to section 704(a) of the Bankruptcy Code, the Trustee is obligated to, among other things: "(4) investigate the financial affairs of the debtor; . . ." 11 U.S.C. § 704(a)(4).

56.     Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the Debtor's estate, as well as the conduct, liabilities or property of the Debtor.

57.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

58.     The Rule 2004 examination of the Examinees is necessary in order to investigate

the Property Sale and what happened to the proceeds.  After concealing these matters from the Trustee and the Court, the Debtor is now intentionally standing in the way of the Trustee's discovery of these matters.  The discovery sought by the Trustee is important and necessary.

59.    For all the foregoing reasons, the Trustee respectfully submits that he has demonstrated ample cause and a right to conduct the examinations contemplated herein.

## PROPOSED PROCEDURE

60.    The Trustee proposes that any examination be held at either (i) the offices of Trustee's counsel, Klestadt & Winters, LLP, 570 Seventh Avenue, 17th Floor, New York, New York, 10018; (ii) any other location as agreed to by the Trustee and his counsel; or (iii) if this Court does not have subpoena power to compel the personal testimony of any Examinee, at such other location as may be appropriate and permissible under Bankruptcy Rules 2004, 2005, 9001(5) and 9016.

61.    The Trustee proposes to serve all subpoenas *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files, or the date of an intended deposition.

## NOTICE

62.    The Trustee's preference was to file the Application *ex-parte* given the significance of the matters at issue.  Applications for relief under Rule 2004(a) are usually granted *ex-parte*.  9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; In re Sutera, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Silverman, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984).  Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a)

without having to file any application at all.  See e.g., D.N.J. L.B.R. 2004-1(b).

63.    Despite the support for seeking the relief sought in the Application *ex-parte*, the Trustee is providing each Examinee with fourteen (14) days' notice of the presentment of the Application and opportunity to object and request a hearing.

64.    Based upon the foregoing, the Trustee submits that such notice of the instant Application and relief sought herein is appropriate under the circumstances and that no further or additional notice need be given.

### NO PRIOR RELIEF

65.    Except as otherwise stated herein, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit B, and for such other and further relief as the Court determines to be just and proper.

Dated:   New York, New York
          July 16, 2014

                                 **KLESTADT & WINTERS, LLP**


                         By:   */s/ Fred Stevens*
                               Fred Stevens
                               570 Seventh Ave., 17th Floor
                               New York, New York 10018
                               Tel: (212) 972-3000
                               Fax: (212) 972-2245
                               Email: fstevens@klestadt.com

                               *Special Counsel to Richard E. O'Connell, the*
                                 *Chapter 7 Trustee of the Estate of Herman*
                                 *Segal*

**Exhibit A**

| Proposed Examinee | Address | Reason for Examination |
|---|---|---|
| David Fleischmann | 3910 14th Avenue<br>Brooklyn, New York 11218<br>Tel: (718) 702-6111<br>Cell: (347) 460-1583<br>Email:<br>David@DFleischmann.com<br><br>-and-<br><br>866 Coney Island Avenue<br>Brooklyn, NY 11219 | Counsel to Debtor LLC. Holds certain sale proceeds and knowledge and information regarding sale and dissipation of proceeds. |
| 1410 Equities LLC | 1069 E. 24th Street<br>Brooklyn, New York 11210<br><br>-and-<br><br>William Elbogen, Esq.<br>1069 East 24th Street<br>Brooklyn, NY 11210 | Holder of mortgage on the subject property.  Holds knowledge and information regarding extension of loan, terms, negotiation with Debtor and Debtor LLC, funding of loan and payoff of loan. |
| Canberra Raiders, LLC | Stephen M. Raphael<br>Raphael and Marks<br>276 Park Avenue<br>New York, NY 10010<br>Tel: (212) 505-2880<br>Fax: (212) 505-2881<br>Email:<br>Stephen@raphaelmarks.com | Purchaser of property.  Holds knowledge and information regarding Debtor's role, sale terms and dissipation of proceeds. |
| NRT New York LLC., d/b/a The Corcoran Group | Attn: David Daniels, VP<br>888 Seventh Ave., 39th Floor<br>New York, NY 10106<br>Tel: (212) 678-7223<br>Fax: (212) 326-3092<br>Email: dsd@corcoran.com<br><br>-and-<br><br>Errol F. Margolin<br>Margolin & Pierce, LLP<br>140 West 57th Street-Suite 7C<br>New York, NY 10019<br>Tel: (212) 247-4844 | Broker on the sale.  Knowledge and information regarding signed agreement with the Debtor, negotiation and sale of the subject property. |

| Dixon Advisory USA Inc. | Attn: Matthew Lusky<br>1000 Plaza Two, Floor 10<br>Harborside Financial Center<br>Jersey City, NJ 07311<br>Tel: (201) 942-6222<br>Email: info@dixonusa.com | Buyer's broker or consultant.<br>Holds knowledge and<br>information regarding<br>negotiation of sale. |

**Exhibit B**

**Proposed Order**

**Exhibit C**

**Proposed Subpoena**

Exhibit C-1