**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

*Special Litigation Counsel to Richard E.*
*  O'Connell, Chapter 7 Trustee*

**Hearing Date: March 12, 2015**
**Hearing Time: 3:00 p.m. (EST)**

**Objection Deadline: March 5, 2015**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                            :

                                  :           Chapter 7

HERMAN SEGAL,           :

                                  :           Case No. 13-45519 (NHL)

                   Debtor.     :
------------------------------------------------------------x

**TRUSTEE'S MOTION FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a),**
**AND 542(e), FED. R. BANKR. P. 2004(c) AND 9016, AND FED. R. CIV. P.**
**45(d)(2) AND (e): (I) AUTHORIZING THE TRUSTEE TO EXAMINE AND**
**OBTAIN DOCUMENTS FROM ABRAHAM HOSCHANDER, (II)**
**DIRECTING MR. HOSCHANDER TO COMPLY WITH THE TRUSTEE'S**
**SUBPOENA AND TURN OVER ALL RECORDED INFORMATION**
**RELATED TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS;**
**(III) DETERMINING THAT ANY DOCUMENTS HELD BY MR.**
**HOSCHANDER RESPONSIVE TO THE PROPOSED SUBPOENA CANNOT**
**BE WITHHELD FROM THE TRUSTEE FOR ANY VALID LEGAL REASON**
**AND PROVIDING MR. HOSCHANDER, THE DEBTOR AND/OR OTHER**
**PARTIES WITH A LIMITED OPPORTUNITY TO DEMONSTRATE**
**OTHERWISE; (IV) DIRECTING THE DEBTOR NOT TO INTERFERE**
**WITH MR. HOSCHANDER'S COMPLIANCE WITH THE SUBPOENA; AND**
**(V) SCHEDULING A HEARING TO CONSIDER ANY TIMELY FILED**
**MOTION TO QUASH ANY SUBPOENA ISSUED TO HOSCHANDER, OR**
**FOR A PROTECTIVE ORDER FROM SUCH SUBPOENA, OR THE**
**TRUSTEE'S MOTION TO ENFORCE THE TERMS OF THE SUBPOENA**
**AND COURT'S ORDER**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

       Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") for the estate of Herman

Segal (the "Debtor"), by and through his special litigation counsel, Klestadt Winters Jureller

Southard & Stevens, LLP, as and for his motion (the "Motion") for an order, pursuant to sections 105(a) and 542(e) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2004(c) and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 45(d)(2) and (e) of the Federal Rules of Civil Procedure (the "Federal Rules"), (I) authorizing the Trustee to examine and obtain documents from Abraham Hoschander ("Hoschander"), by the service of a subpoena *duces tecum* (the "Subpoena"), (II) directing Hoschander to comply with the Subpoena and to turn over all recorded information and documents related to the Debtor's property or financial affairs, (III) determining that any documents held by Hoschander that are responsive to the Subpoena (collectively, the "Documents") cannot be withheld from the Trustee for any valid legal reason absent an adequate showing of proper protection and scheduling a hearing and briefing deadlines with respect to same, (IV) directing the Debtor not to interfere with Hoschander's compliance with the Subpoena and production of the Documents and providing testimony at an examination (the "Examination"), and (V) scheduling a hearing to consider any timely filed motion to quash any Subpoena, or for a protective order, or the Trustee's motion to enforce the terms of the Subpoena and any order granting this Motion in whole or in part (an "Order"); respectfully represents:

## PRELIMINARY STATEMENT

1.      The Trustee is conducting an extensive investigation into the Debtor's complex and secretive financial affairs.  As this Court is well aware, the Debtor is uncooperative and has refused for over seventeen (17) months to produce a single document to the Trustee or provide any useful testimony under an improper assertion of his Fifth Amendment Right not to incriminate himself.  Accordingly, the Trustee has been forced to conduct his investigation through third parties and professionals with connections to the Debtor.

2.      In addition to his longstanding refusal to cooperate, the Debtor is now actively

interfering with the Trustee's Court-authorized subpoenas issued to third parties. The Trustee already had to make a motion to compel compliance with a subpoena issued to attorney David Fleischmann before he could get documents because the Debtor had threatened Mr. Fleischmann with disciplinary action if he complied with the subpoena issued to him.[1] More recently, the Trustee served a subpoena on a Charles (a/k/a Chaim) Mandelbaum and was informed the he had received similar interference.[2] Mr. Mandelbaum informed the Trustee on December 10, 2014, that he is "not able to release any documents due to [his] receiving an email from Mr. Segal directing [him] not do so [*sic*]," and that "forwarding any information would be a breach of [the Debtor's] attorney client privilege." Also, at a hearing before this Court on January 29, 2015, the Debtor admitted to intentionally interfering with the Trustee's service of documents on the Debtor's wife.

---

[1]   Due to the Debtor's active interference, it took over four (4) months from the original demand and two (2) separate motions to this Court to get a simple document production from Fleischmann and to date, the Trustee still believes that Fleischmann is withholding key correspondence with the Debtor out of fear of the Debtor's reprisal. The following timeline demonstrates the difficulty:



[2]   It should also be noted that Hoschander has represented Mr. Mandelbaum in the matters Charles Mandelbaum v. Nachman Leifer, Index No. 021015/2011 (N.Y. Sup. Ct., Kings Cty) (2011); and Charles Mandelbaum v. Serena Leifer, Index No. 001081/2009 (N.Y. Sup. Ct., Kings Cty) (2009).

3.      The Trustee cannot afford the delays attendant with the multi-step process required to compel compliance with any Subpoena issued to Hoschander.  The Trustee has only seven (7) months to investigate and initiate avoidance actions pursuant to 11 U.S.C. §546(a), and still has not received a single document from the Debtor.  Hoschander is believed, for good reason, to have knowledge and information related to the Debtor's financial affairs.  Among other things, the Trustee has identified the following links between the Debtor and Hoschander:

a)  In or around January 2012, Hoschander paid $180,250 to Charles Mandelbaum in connection with the secured lending on the real property known as 1171 Eastern Parkway, Brooklyn, New York (Block 1391, Lot 58), which was owned by Debtor's company, Parkway Starlight, LLC, from his attorney escrow account as follows:



b)  Hoschander is the designated party for service of process for Centurion Omega LLC ("Centurion Omega") as seen on the NYS DOS records;[3]

i.  Centurion Omega received $209,131.38 in unauthorized post-petition transfers from the Debtor's wholly-owned company, 432 West 162 Street Acquisition, LLC, as follows:

a.  Jan. 21, 2014 - $100,000.00
b.  Jan. 23, 2014 - $50,000.00
c.  Jan. 24, 2014 - $50,000.00
d.  Jan. 30, 2014 - $9,131.38

c)  According to public record, Hoschander currently represents the Debtor's

---

[3]  Link to DOS records:
http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=4345059&p_corpid=4340477&p_entity_name=%63%65%6E%74%75%72%69%6F%6E%20%6F%6D%65%67%61&p_name_type=%41&p_search_type=%42%45%47%49%4E%53&p_srch_results_page=0

mother, Lily Segal, in the matters captioned <u>Deutsche Bank Nat'l Trust Co. v. Lily Segal</u>, Index No. 003903/2011 (N.Y. Sup. Ct., Kings Cty.) (2011), and <u>Onewest Bank v. Lilly Segal</u>, Case No. 002093/2011 (N.Y. Sup. Ct., Kings Cty.) (2011); and

d)  Upon information and belief, Hoschander represented the Debtor's company, Parkway Starlight LLC, in connection with its January 15, 2013 sale of real property located at 1171 Eastern Parkway, Brooklyn, New York (Block 1391, Lot 58).

4.     Further, despite significant efforts, the Trustee's process servers have been unable to serve Centurion Omega either at its own address or at Hoschander's office.  Hoschander is a practicing attorney with a claimed expertise in bankruptcy and real estate law.[4]  However, Hoschander's office cannot be accessed without being "buzzed in" and thus far, Hoschander has not granted the Trustee's process servers access.

5.     The Trustee requires authorization to serve the Subpoena on Hoschander.  Further and most importantly, if either the Debtor or Hoschander intend to interfere or not comply with the Subpoena, each should have to do so and clearly state such intent and the legal basis for doing so in the manner required by the Bankruptcy Rules and Local Rules of this Court.  At this juncture, the Trustee cannot afford to spend the time that it took to get documents from David Fleischmann on account of the Debtor's conduct.

6.     For all these reasons and for those set forth below, the Trustee respectfully

---

[4]   Hoschander has produced a number of YouTube video advertisements, but all phone numbers and websites provided in those videos are no longer working:



requests that the Court enter an order in substantially the same form as that annexed hereto as Exhibit A (the "Proposed Order").

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

9.      Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory predicate for the relief requested herein is sections 105(a) and 542(e) of the Bankruptcy Code, Bankruptcy Rules 2004(c) and 9016, and Federal Rules 45(d)(2) and (e), made applicable by Bankruptcy Rule 9016.

## INTRODUCTION

11.     On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

12.     On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate.  On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

13.     On September 20, 2013, the Trustee filed an application for authority to retain Yost & O'Connell as his general counsel, which was granted by Order of this Court dated

October 18, 2013 [Docket No. 17].

14.     On October 2, 2013, the Trustee employed Klestadt Winters Jureller Southard & Stevens, LLP (f/k/a Klestadt & Winters, LLP), to serve as his special litigation counsel in the Debtor's case, and such retention was approved by Order of this Court dated January 25, 2014 [Docket No. 51].

15.     By order entered January 31, 2015, the Debtor's discharge was denied by this Court upon the Trustee's request [Docket No. 170].

## BACKGROUND

### I.     Procedural History and Debtor's General Refusal to Cooperate

16.     At 1:55 p.m. on the Petition Date, the Debtor completed the required credit counseling, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of the Debtor's cooperative apartment in Miami Beach (the "Miami Coop").

17.     The Debtor failed to file the following documents or make the following disclosures with his Petition:

> **a)** Statement pursuant to Local Bankruptcy Rule 1073-2(b);
> **b)** Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);
> **c)** Summary of Schedules;
> **d)** Statistical Summary of Certain Liabilities;
> **e)** Schedule A (Real Property);
> **f)** Schedule B (Personal Property);
> **g)** Schedule C (Property Claimed as Exempt);
> **h)** Schedule D (Creditors Holding Secured Claims);
> **i)** Schedule E (Creditors Holding Priority Unsecured Claims);
> **j)** Schedule F (Creditors Holding Unsecured Nonpriority Claims);
> **k)** Schedule G (Executory Contracts and Unexpired Leases);
> **l)** Schedule H (Co-Debtors);
> **m)** Schedule I (Income);
> **n)** Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");
> **o)** Declaration Concerning Schedules;

**p)**  Statement of Financial Affairs (the "<u>SoFA</u>");
**q)**  Copies of Pay Statements;
**r)**  Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and
**s)**  Statement of Intention.

(collectively with any outstanding required disclosures, the "<u>Required Disclosures</u>").

18.    On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property located at 4115 Quentin Road, Brooklyn, New York (the "<u>Brooklyn Property</u>").  In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

19.    On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "<u>Motion to Compel</u>").

20.    On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

21.    On October 15, 2013, the Debtor failed to appear at his scheduled section 341 meeting.  At the time of filing this Motion, the Debtor has not appeared at any 341 Meeting.

22.    On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "<u>Rule 2004 Order</u>").

23.    The Debtor is currently representing himself *pro-se* after discharging his two prior lawyers, Maxim Maximov and Rachel Blumenfeld.

## II.    The Compel Order, Books & Records and Schedules

24.    On December 5, 2013, this Court entered an order granting the Motion to Compel (the "Compel Order") requiring that by no later than December 23, 2013, the Debtor must:

a.  File Schedules [11 U.S.C. § 521(a)(1)(A), (B)(i) and (ii)];

b.  File a SoFA [11 U.S.C. § 521(a)(1)(B)(iii)];

c.  Surrender to the Trustee all property of the estate and any recorded information, including books, documents records, and papers, relating to property of the estate (collectively, "Books and Records") [11 U.S.C. § 521(a)(4)];

d.  Inform the Trustee immediately in writing as to the location of real property in which the Debtor has an interest and the name and address of every person holding money or property subject to the Debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Bankruptcy Rule 1007 [Bankruptcy Rule 4002(a)(3)]; and

e.  Provide certain documents to the Trustee, including evidence of current income, statements for each of the Debtor's depository and investment accounts, including checking savings and money market accounts, mutual funds and brokerage accountants, documentation of monthly expenses claimed by the Debtor, and a current income tax returns [Bankruptcy Rule 4002(b)(2) and (3)].

25.    The Compel Order further directed the Debtor to do the following through the pendency of the case:

a.  Cooperate with the Trustee as necessary to enable the Trustee to perform the Trustee's duties under the Bankruptcy Code [11 U.S.C. § 521(a)(3)] and cooperate with the Trustee in the administration of the estate [Bankruptcy Rule 4002(a)(4)]; and

b.  Attend and submit to an examination at the next scheduled meeting of creditors [Bankruptcy Rule 4002(a)(1)].

26.    On December 16, 2013, the Trustee commenced a formal adversary proceeding against the Debtor seeking the denial of the Debtor's discharge on numerous grounds.  See O'Connell v. Segal (In re Herman Segal), Adv. Pro. No. 13-1545 (NHL) (Bankr. E.D.N.Y. Dec. 16, 2013), and by order dated January 31, 2015, the Debtor's discharge was denied.

27.    On the December 23, 2013 deadline established by the Compel Order, the Debtor filed Schedules and a SoFA with this Court.  The following is a summary of the disclosures

made by the Debtor in those documents:

a. <u>Schedule A (Real Property)</u> – The Debtor admitted to owning the Miami Coop wherein a pen was used to strike through a typewritten $95,000 value ascribed to the asset and amend that value upwards to $135,000. A handwritten note was added to Schedule A stating that the Debtor refused to provide any additional property information pursuant to his Fifth Amendment rights.

b. <u>Schedule B (Personal Property)</u> – The Debtor admitted <u>only</u> to owning "3 kittens" (Category No. 31) and to having no property described in Categories 32 to 34. The Debtor invoked his Fifth Amendment rights and refused to answer whether he had any property included in Categories 1 through 9, 13 through 16, 18 through 30, and 35.

c. <u>Schedule C (Exemptions)</u> – The Debtor claimed no exemptions.

d. <u>Schedule D (Secured Creditors)</u> – The Debtor admits to owing the obligation to Esquire in connection with the Miami Coop, but refused to provide any additional creditor information pursuant to his Fifth Amendment rights.

e. <u>Schedule E (Priority Creditors)</u>- The Debtor claims to have no creditors entitled to priority. (Note that the Debtor's counsel represented at the December 4 Hearing that approximately $150,000 was owed to taxing authorities[5]).

f. <u>Schedule F (Unsecured, Non-priority creditors)</u> – The Debtor admits to having two liabilities: $349.00 to Capital One, and $300.00 to Independent Recovery. The Debtor refused to provide any additional debt information pursuant to his Fifth Amendment rights.

g. <u>Schedule G (Unexpired Leases and Executory Contracts)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no unexpired leases or executory contracts.

h. <u>Schedule H (Co-Debtors)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no co-debtors.

i. <u>Schedule I (Income)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he was married and has no dependents or income.

j. <u>Schedule J (Expenses)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he has no expenses.

k. <u>SoFA</u> – The Debtor claimed that he had no information relevant to Questions 4 through 6, 9, 15 through 17, or 20 through 25 on the SoFA. The Debtor invoked his Fifth

---

[5]         MR. [WARREN] GRAHAM: Number two, the debtor advises that there are substantial claims in favor of the taxing authorities, which would render the ability of the trustee to pay unsecured creditors a meaningful distribution or in fact any distribution, and those - - those total about $150,000. Again, that's what I'm informed by the debtor.

December 4 Hearing, Transcript, p.39, LL.13-18.

Amendment rights and refused to answer Questions 1 through 3, 7 and 8, 10 through 14, or 18 and 19, on the SoFA.

28.     The Debtor gave no indication in any prior filings or otherwise that he had concerns over a criminal prosecution or would refuse to answer the very basic questions posed on the Schedules and SoFA.  In fact, his counsel indicated the opposite at the December 4, 2013 Hearing, representing as follows:

> Your Honor, Warren Graham.
>
> I'm actually sorry that we've spent a lot of this hearing on a motion to sell talking about the debtor's deficiencies and conducting himself in this case, and they're real.  The debtor should have filed schedules.
>
> As I said, I've been in the case 24 hours.  Now that the Court has made its determination that the case is to be administered **the debtor will file schedules and they'll be accurate.**
>
> I don't know why the trustee has spent so much of his motion to sell the property on trying to talk about the debtor as being a bad guy.

December 4 Hearing, Transcript, p.29, LL.12-24 (emphasis added).

### III.     The Debtor's Failure to Comply With the Subpoenas

29.     Pursuant to the Rule 2004 Order, at or around 3:15 p.m. on December 24, 2013, the Debtor and his wife were served at their home with subpoenas, by affixing a copy of the subpoenas to the door and by mail.

30.     The subpoenas required the Debtor and his spouse to produce documents by January 10, 2014 and January 17, 2014, respectively, and to appear at the undersigned's offices for examinations at 10:00 a.m. on January 16, 2014, and January 23, 2014, respectively.

31.     The Debtor and Yocheved Segal have not produced a single document in response to the subpoenas or the Compel Order.  Nor have they provided any written response to the subpoenas identifying responsive documents and setting forth their basis for withholding those documents.  Rather, the Debtor and his wife simply state that producing any document or

admitting to the existence of any document would violate their Constitutional rights. Neither the Debtor nor his wife offers any authority for his or her asserted privileges and protections.

32.    On January 23, 2014, the Debtor and Yocheved Segal appeared in the offices of the undersigned counsel to have their depositions taken in accordance with the subpoenas. Ms. Segal refused to answer nearly every question, even ones as innocuous as "do you have any children?" The Debtor refused to answer most questions, but would freely decide without any justification which questions he would answer and which were subject to his asserted privileges. There was no consistent pattern of questions the Debtor believed to be off-limits and which he did not. He simply appeared to answer whatever he felt like and refused to answer whatever he did not. By way of example, the Debtor refused to admit whether he owned the Brooklyn Property in his Schedules, but then admitted that he owned it at his deposition.

33.    On March 6, 2014, the Trustee filed a motion for orders, pursuant to sections 105(a), 521(a)(4) and 542(e), Bankruptcy Rules 2004(c) and 9016, and Federal Rule 45(d)(2) and (e), (i) compelling the Debtor and Yocheved Segal to produce documents pursuant to the Compel Order and Rule 2004 Order, (ii) holding the Debtor in contempt of the Court's Compel Order, and the Debtor and Yocheved Segal in contempt of the Rule 2004 Order and subpoenas issued thereunder, and (iii) imposing appropriate sanctions against the Debtor and Yocheved Segal to discourage their contemptuous behavior and obtain compliance with the Court's Orders (the "Contempt Motion") [Docket No. 66]. The Contempt Motion was adjourned pending determination of the Dismissal Motion (as defined below) and is now scheduled to be heard on March 12, 2015, at 3:00 p.m.

IV.    **The Debtor's Litigation of the Dismissal Motion and Delays**

34.    On January 30, 2014, the Debtor filed a motion to dismiss his chapter 7 case (the

"Dismissal Motion"). The Trustee filed a timely opposition to the Dismissal Motion on February 19, 2014, and the hearing on the Dismissal Motion was originally scheduled for February 25, 2014. It was then adjourned by the Court to April 1, 2014.

35.    At the hearing on April 1, 2014, the Debtor appeared through new counsel, the Law Offices of Rachel Blumenfeld, who requested an extension of time to brief new issues related to the Dismissal Motion. The Court granted the request and gave the Debtor until April 28, 2014 to submit additional briefing related to the Dismissal Motion.

36.    On April 30, 2014, the Debtor submitted an additional memorandum of law in support of the Dismissal Motion [Docket No. 81], and on May 5, 2014, the Trustee filed his response, which he later amended to include a table of authorities on May 6, 2014 [Docket Nos. 82 and 83].

37.    During the course of preparing his May 5, 2014 memorandum of law, the Trustee discovered the existence of two lawsuits which directly undermined the Debtor's routine representation that he had no creditors. See Principal Life Insurance Co. v. Herman Segal, et al., Case No. 14-cv-00198-SRC-CLW (D.N.J. Jan. 10, 2014) (dismissed without prejudice on March 24, 2014) (the "Principal Life Action"); Arnold Young v. Herman Segal, Case No. 14-cv-01997-SRC-CLW (D.N.J. March 31, 2014) (the "Young Action").

38.    On March 31, 2014, Arnold Young commenced the Young Action against the Debtor alleging, among other things, that:

> Defendant H. Segal induced an innocent party, Mr. Young, to participate in the transactions in which H. Segal and parties he was working with would procure and finance several policies of life insurance on Mr. Young's life for the purpose of later selling those policies in one or more life settlement transactions. In addition, H. Segal sought to ensure Mr. Young's continued participation in such transaction by knowingly withholding from Mr. Young to cease his participation in the transaction.

13

> Contrary to H. Segal's prior representations, Mr. Young has incurred liability as a result of such [Stranger-Originated Life Insurance] STOLI transactions. In particular, Mr. Young was forced to incur extensive costs and expenses to defend, and eventually bring about settlement of, a lawsuit that was brought against Mr. Young solely as a result of the STOLI transactions originated by H. Segal and a letter of guaranty that was forged in the name of Mr. Young. Additionally, Mr. Young was forced to incur further legal costs and expenses in connection with a second lawsuit that was, again, brought against him solely as a result of the STOLI transactions originated by H. Segal and the letter guaranty that was forged in the name of Mr. Young.

See Young Action Complaint, ¶¶ 2-3.  The existence of this litigation was not learned of by the Trustee until May 5, 2014.

39.    On May 22, 2014, the Court held a hearing on the Dismissal Motion.  The Trustee submitted that he would stipulate to all facts asserted by the Debtor in connection with the Dismissal Motion solely for purposes of resolving the Dismissal Motion.  The Debtor refused and demanded an evidentiary hearing.

40.    On September 4, 2014, an evidentiary hearing was held on the Dismissal Motion at which the Debtor called three witnesses including himself and his prior counsel.

41.    On January 29, 2015, the Court read a decision into the record denying the Dismissal Motion for myriad reasons.  The Court indicated an intent to file a full opinion and order with respect to the Dismissal Motion, and the Debtor indicated his intention to appeal such order.

42.    While the Dismissal Motion was pending, the case was virtually suspended for one year while the Debtor changed counsel, litigated his Dismissal Motion and routinely denied that this Court had jurisdiction over him or this case.

## V.    Trustee's Discovery of Hidden Assets and Financial Dealings

43.    With the Debtor not cooperating, the Trustee has had to learn everything about the Debtor through costly and time-consuming searching of public records and third party discovery.

In total, the Trustee has at this point filed seven (7) separate applications under Bankruptcy Rule 2004 and has issued over eighteen (18) subpoenas and other discovery devices.

44.      The Trustee has discovered numerous concealed assets and financial dealings of the Debtor thus far and is continuing to discovery more all the time.  Below are just some of the concealed assets and issues discovered by the Trustee to date.

### a)  Alleged Life Insurance Frauds and Forgery

45.      As set forth above with respect to the Young Action and Principal Life Action, the Debtor is accused of having induced Arnold Young, an elderly man, into a life insurance scheme and forging Mr. Young's name on certain loan guarantees, ultimately costing Mr. Young over $300,000 to date.

### b)  Alleged Investment Scheme and Fraud

46.      In addition to the discovery of the Young Action and Principal Life Action, the Trustee discovered a case commenced by Annette Kleinfeld against the Debtor (see Kleinfeld v. Segal, Index No. 500930/2014 (N.Y. Sup. Ct.)).  In connection with that action, Ms. Kleinfeld submitted an affidavit, dated January 14, 2014, wherein she testified, among other things, that:

> I was advised that [Debtor] was an expert in trading in the stock markets.  [Debtor] promised me a ten-percent return on my investment and assured me that I would receive one-percent of my investment as a dividend every month to pay for my bills and medications.
>
> *****
>
> [Debtor] provided no detailed information with respect to the type of loan I was making or where my money would be invested, nor did I receive anything in writing.  However, I trusted [Debtor] completely because he was so highly regarded by his then-business partner, who assured me that Defendant handled his and his family's money for years, resulting in great profits.
>
> ******
>
> For a few months, [Debtor] paid me some dividends on the Loan [of $400,000].  However, in the Spring of 2010, his then-business partner succumbed to bone marrow cancer and died, and subsequently, [Debtor] ceased making payments to me altogether.

Kleinfeld Affidavit.

### c) Interest in 2179 East 33rd Street, Brooklyn, New York

47.     The Trustee has also recently discovered that three (3) weeks prior to the Petition Date, the Debtor signed a lease for a house at 2179 East 33rd Street, Brooklyn, New York, and has since stopped paying rent.  The Trustee only discovered this when the landlord under the lease appeared in this Court and filed a motion for relief from the automatic stay to evict the Debtor or present occupant of the premises.

48.     When the Trustee investigated further, he discovered a purchase option in the relevant lease document and that the lease was really a loan in disguise in which the Debtor held a valuable, undisclosed residual interest in the real property.  The Trustee has since resolved the matter with the "landlord" and is looking to realize significant value from the premises for the benefit of the estate and creditors when it is sold.

49.     As with all other topics, the Debtor has provided no information regarding this property, why he leased it or who is currently occupying it without paying rent.  This Court asked the Debtor at a hearing on December 18, 2014, "are you willing to tell us all who's living there and if they're paying you rent?"  The Debtor simply responded "I plead the Fifth Amendment, Your Honor."

### d) Post-Petition Sale and Dissipation of Proceeds

50.     On July 10, 2014, in the course of preparing for the evidentiary hearing on the Dismissal Motion, the Trustee discovered that the Debtor is the sole-member, and appears to be the sole-owner, of 432 West 162 Street Acquisition, LLC (the "NYC LLC").  See NYS DOS record for Debtor LLC listing "Herman Segal, Esq." as the agent for service of process.

51.     On January 21, 2014, four (4) months after filing for bankruptcy, the NYC LLC transferred the property located at 432 West 162nd Street, New York, New York (the "NYC

Property") to Canberra Raiders LLC for stated consideration of $1,075,000.  See January 21, 2014 deed with the Debtor's signature as "sole member" of the LLC.

52.    The NYC Property was purportedly encumbered by a certain mortgage of 1410 Equities LLC in the principal amount of $650,000.  See May 29, 2013 mortgage filed publicly.

53.    The only reason that the Trustee found out about this transaction was because the Debtor signed the brokerage agreement with Corcoran in his individual name and then failed to pay at least half the agreed upon commission.  On January 30, 2014, Corcoran sued the Debtor in New York State Supreme Court (Index No. 650322/2014) for $32,250, the remaining commissions due it in connection with the sale of the Property.  When doing a litigation search in the Debtor's name, Trustee's counsel discovered the Corcoran litigation and facts related to the property sale including the foregoing.

54.    In an effort to obtain information regarding the sale of the NYC Property, Trustee's counsel sent a demand upon David Fleischmann ("Fleischmann"), NYC LLC's counsel of record, demanding a turnover of any sale proceeds and all documents related to the sale and the dissipation of the proceeds.  Fleischmann indicated an intention to cooperate with the Trustee but claimed that the Debtor was refusing to consent to the turnover of documents and information related to the Property under a claim of privilege.

55.    The Trustee served a subpoena *duces tecum* upon Fleischmann as authorized by the Court.  Fleischmann refused to turn over any documents without further Court order. Accordingly, the Trustee filed a motion for an order compelling Fleischmann to turn over responsive documents which was granted by the Court and Fleischmann has since made certain productions.

56.    From the documents already received by the Trustee, it appears that the Debtor

directed a number of transfers of the net proceeds of sale as follows:

a) $209,131.38 to Centurion Omega;

b) $70,000.00 to MJSYRL Holdings Inc.; and

c) $50,000.00 to Darylann Demino.

57.     As set forth above and below, Hoschander is the designated party to receive service of process for Centurion Omega.

## VI.     The Miami Coop Sale and Title Dispute

58.     Basically the only asset the Debtor admitted to having on his Schedules was the Miami Coop.  On February 5, 2014, the Court entered the Sale Order.  Since that time, the Trustee has been working with the prospective purchaser to obtain confirmation of the sale in Florida, which the purchaser has been doing at his sole cost and expense.  The process was unnecessarily elongated by the Debtor's refusal to cooperate with the sale and turnover the shares in the Miami Coop or the related lease document, both of which require the approval of a Florida court to have duplicates issued.

59.     On October 23, 2014, a hearing was held before this Court on the Trustee's motion for authority to amend his complaint objecting to the Debtor's discharge.  The Debtor appeared at the hearing and raised numerous issues with the previously decided Sale Order and the Trustee's settlement of the cooperative association's claim.  The Debtor engaged in extensive dialogue with the Court regarding his desire to appeal the Sale Order and settlement of the claim.  While leaving the Court, the Debtor informed Trustee's counsel that although it appears that there is no legal recourse to obstruct the sale or the settlement of the claim, he "would find another way."  When asked what he meant by Trustee's counsel, the Debtor stated that he intended to file grievances with the ethics committee over the Trustee's conduct and handling of

the matter.

60.      Four (4) days after the October 23, 2014 hearing, Larry Grunfeld ("Grunfeld") initiated a challenge to the Debtor's ownership of the Miami Coop alleging that the Debtor forged his and his wife's signatures with respect to the transfer of the Miami Coop to the Debtor. Mr. Grunfeld has since commenced an adversary proceeding against the Trustee and Debtor, among others, to determine the ownership of the Miami Coop.

61.      The adversary proceeding filed by Grunfeld raises very serious implications. According to Grunfeld, the Debtor forged Grunfeld's signature and had it falsely notarized on at least three different occasions with two different notaries.  One notary, Robert Steinherz, vehemently denies any wrongdoing.  The other notary, the Debtor's wife, Yocheved Segal, has yet to respond to the allegations.

## VII.      Hoschander and his Connections to the Debtor

62.      Hoschander is an attorney duly licensed to practice law in the State of New York since 1993.  According to the New York Unified Court System, Hoschander maintains an address at 4910 17th Avenue, Brooklyn, New York 11204-1157.  Hoschander does not appear to maintain a website for his legal practice, but he has a few YouTube video advertisements.  The summary statement for his videos is:

> Are you in Currently in Foreclosure? is the Sheriff Knocking at your Door? Don't Let Them take your Home... Call Attorney At Law, Abraham Hoschander. He has Over 19 years experience in Bankruptcy, Stopping Foreclosure, and all your Real Estate matters. Call Abraham for a Consultation, Today at: 347 621-3192

Despite the claimed expertise in bankruptcy, public records indicate that Hoschander has only been a filer in one bankruptcy case: In re P & W Plus Services Inc., Case No. 13-73167 (Bankr. E.D.N.Y. Jun. 13, 2013) (Grossman, J.).  That case was dismissed for failure by the debtor and its counsel, Hoschander, to prosecute it.

63.     As outlined in the preliminary statement above, Hoschander has a number of connections to the Debtor, the Debtor's family, and the Debtor's financial affairs that warrant an investigation.  To begin, Hoschander is the designated service of process party for Centurion Omega, which received at least $209,138.38 post-petition from the proceeds of the NYC LLC's sale of the NYC Property.  Centurion Omega appears to be an entity owned in part or controlled by Mayer Orgel.

64.     Centurion Omega may very likely be an insider of the Debtor.  The Debtor has served as the designated service of process party for the similarly named "Omega Venture Capital Ltd."  Also, Mayer Orgel, the party that has executed documents on Centurion Omega's behalf, has a close relationship with the Debtor.  On July 17, 2014, Mayer Orgel filed an involuntary petition against Utica Brooklyn Acquisition Corp. (see In re Utica Brooklyn Acquisition Corp., Case No. 14-43647 (Bankr. E.D.N.Y. Jul. 17, 2014) (Stong, J.)), a company owned by the Debtor's son, William Segal, with an address at the Debtor's address.  Mr. Orgel never prosecuted the involuntary petition or appeared again in the case, and William Segal never responded to his obligations to file schedules and statements.  The case appears to have been orchestrated by William Segal and Mr. Orgel to avoid a foreclosure by a secured lender.

65.     Hoschander was also connected to a prior deal with the Debtor's indirectly owned real property known as 1171 Eastern Parkway, Brooklyn, New York (Block 1391, Lot 58).  In or around January 2012, Hoschander paid $180,250 to Charles Mandelbaum in connection with the secured lending on that property.  It is unclear what capacity Hoschander was serving.

66.     Also, according to public record, Hoschander currently represents the Debtor's mother, Lily Segal, in the matters captioned Deutsche Bank Nat'l Trust Co. v. Lily Segal, Index No. 003903/2011 (N.Y. Sup. Ct., Kings Cty.) (2011), and Onewest Bank v. Lilly Segal, Case No.

002093/2011 (N.Y. Sup. Ct., Kings Cty.) (2011).

67.     The Trustee has every reason to believe that a further investigation of Hoschander will reveal additional ties and information regarding the Debtor's financial affairs.

### RELIEF REQUESTED

**a.  Bankruptcy Rule 2004 Relief and Turnover Under 11 U.S.C. § 542(e)**

68.     Pursuant to section 704(a) of the Bankruptcy Code, the Trustee is obligated to, among other things: "(4) investigate the financial affairs of the debtor; . . ."  11 U.S.C. § 704(a)(4).

69.     Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity."  It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the Debtor's estate, as well as the conduct, liabilities or property of the Debtor.

70.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure.  In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'"  In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions."  Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

71.     The Trustee must learn the details of the Debtor's financial past and his complicated relationship with myriad individuals and entities.  Hoschander is an attorney who

appears to be in the center of a number of the Debtor's deals.  For all the reasons outlined above, the Trustee must obtain documents and information from Hoschander related to the Debtor's financial affairs.

72.    Among others, the Trustee intends to seek production of the following documents from Hoschander:

(i)    All non-privileged correspondence between the Debtor and Hoschander;

(ii)    All correspondence between Hoschander and any other party regarding the Debtor or any interest of the Debtor in property;

(iii)    All documents identifying the source of the January 2012 payment by check no. 1305 from Hoschander's attorney escrow account in the amount of $180,250, to Charles Mandelbaum, or that relate to or explain the reason the payment was made, the basis for inserting in the memo line of the check "Herman Segal – Acct.," any interest the Debtor had in the transaction, and any agreement underlying the transaction;

(iv)    All documents relating to the sale, financing, and collection and distribution of proceeds, of the real property known as 1171 Eastern Parkway, Brooklyn, New York (Block 1391, Lot 58);

(v)    All documents related to the formation, ownership and governance of Centurion Omega, and that explain why Hoschander is the party designated to receive service of process for that entity;

(vi)    All documents related to the formation, ownership and governance of any entity owned, in whole or in part, controlled, or otherwise related to or affiliated with the Debtor (each a "Debtor Entity");

(vii)    All documents concerning the following payments made to Centurion Omega by 432 West 162 Street Acquisition, LLC, and what Centurion Omega used the funds for:

- Jan. 21, 2014 - $100,000.00
- Jan. 23, 2014 - $50,000.00
- Jan. 24, 2014 - $50,000.00
- Jan. 30, 2014 - $9,131.38

(viii)    All documents related to the formation, ownership and governance of Parkway Starlight LLC;

(ix)    All documents concerning any payments or transfers of property to the Debtor or any Debtor Entity, or any payments or transfers of property from the Debtor or any Debtor Entity;

(x)    All documents that constitute financial books and records of the Debtor or any Debtor Entity; and

(xi)    Any other documents that concern or relate to the Debtor or his property, or any Debtor Entity and its property.

(each a "Document," collectively, the "Documents").

73.    The Documents and discovery sought by the Trustee are important and necessary. Since the Debtor refuses to turn over documents, including those the Trustee seeks to obtain from Hoschander, the Trustee has no choice but to obtain them from third parties.  It is an unfortunate, time consuming and costly exercise necessitated by the Debtor's bad acts.

74.    In addition to production under Bankruptcy Rule 2004, section 542(e) of the Bankruptcy Code provides an independent basis for requiring Hoschander to turn over many of the Documents.  Section 542(e) states that:

> [s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. §542(e).

75.    Accordingly, the Trustee requests an additional decree in any Order directing Hoschander to turn over the Documents to the extent they constitute "recorded information, including books, documents, records, and papers, relating to the [D]ebtor's property or financial affairs."

**b.    The Documents Sought by the Trustee are Either not Protected or can be Adequately Protected by the Proper and Timely Creation of a Privilege Log**

76.    The only conceivable objection Hoschander or another party could have to the

production of Documents is if they are subject to the attorney-client privilege.   However, the

attorney-client privilege is only going to cover communications between Hoschander and

Hoschander's client.   To qualify as subject to this privilege, the following basic elements must be

met:

- it must be a communication;

- made between privileged persons;

- in confidence; and

- for the purpose of obtaining or providing legal assistance for the client.

Restatement (Third) of the Law Governing Lawyers § 68 (2000).   It is assumed that an over-

whelming majority of the Documents do not even facially qualify for protection under the

privilege.

77.     To the extent that any Documents qualify under the privilege, Hoschander will be

able to protect them provided he timely produced a log compliant with local rules (a "Privilege

Log").   As a general matter, it is inappropriate to expect a party to make a decision regarding the

assertion of privilege without sufficient information for the party, and ultimately this Court, to

make a determination regarding the propriety of the assertion.    Federal Rule 45(d)(2)(A)

expressly requires that:

> A person withholding subpoenaed information under a claim that it is privileged or
> subject to protection as trial-preparation material must:
>
> (i)     expressly make the claim; and
>
> 1. describe the nature of the withheld documents, communications, or tangible
>    things in a manner that, without revealing information itself privileged or
>    protected, will enable parties to assess the claim.

Fed. R. Civ. P. 45(d)(2)(A).

78.     Local Rule 26.2 of the United States District Court for the Eastern District of New

York, adopted by this Court by Local Bankruptcy Rule 2004-1, goes much further and imposes

the following requirements upon a person asserting a privilege in response to a properly issued

subpoena:

(a) Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,

1. The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

2. The following information shall be provided in the objection, or (in the case of a deposition) in response to questions by the questioner, unless divulgence of such information would cause disclosure of the allegedly privileged information:

1. For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

2. For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date of communication; and (iii) the general subject matter of the communication.

(b) Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court.

(c) Efficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this end. For example, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the

substantive information required by this rule has not been provided in a comprehensible form.

USDC EDNY Local Rule 26.2.

79.     Hoschander will have plenty of opportunity to protect any Documents that are properly protected by timely producing a Privilege Log.  Upon review of the Privilege Log, the Trustee will then have an opportunity to challenge any claim of privilege that he believes to be inappropriate.

### c.  **The Trustee Requires Additional Relief to Ensure Compliance**

80.     The Trustee has been significantly challenged in this case.  The Debtor has refused to turn over a single document and is openly interfering with others' compliance with lawful subpoenas issued by the Trustee.  Further, the Trustee has been unable to serve Hoschander with a subpoena issued to Centurion Omega because his office has refused the Debtor's process servers access.  Accordingly, the Trustee has proposed a few reasonable requirements to help limit the Trustee's trips to this Court and lost time that was needed to obtain Fleischmann's compliance.  To that end, the Trustee proposed the incorporation of the following into the Proposed Order:

> a) <u>Service by Mail and Overnight Delivery if Necessary</u> – Parties to this case routinely frustrate the Trustee's service.  To date, the Trustee has been unable to serve Hoschander with the Centurion Omega subpoena.  Accordingly, the Trustee proposes incorporation of the following provision in the Order:
>
>> The Subpoena and a copy of the Order must be served upon Hoschander at his offices at 777 Kent Avenue – Suite 202, Brooklyn, New York 11211 (the "<u>Hoschander Office</u>") or other manner consistent with the requirements of Fed. R. Civ. P. 45, within three (3) business days of the date of entry of the Order, but if Hoschander fails or refuses to grant the Trustee's process servers access to his office, the Subpoena and the Order may be served by affixing a copy of same to the outside of the Hoschander Office and sending a copy of the Subpoena and the Order to Hoschander at the Hoschander Office by overnight courier.

b) <u>Hoschander to Provide Notice to all Interested Parties</u> – The Trustee certainly intends to serve this Motion on all parties that he believes may be interested in the Subpoena. However, the Trustee may not know the identity of all such parties. Accordingly, the Trustee proposes that Hoschander be directed to provide a copy of the Order and the Subpoena to any individual or entity, that did not otherwise receive notice of the Motion and hearing thereon (each a "<u>Possible Protected Party</u>"), that may assert a claim that any responsive Documents are protected by a legal or other privilege, within three (3) days of the Trustee's service of the Subpoena and this Order.

c) <u>Establishment of a Deadline to Produce a Privilege Log or Make Protective Motion or Lose Rights</u> – It is too far into this case to go through the multi-step process that it has taken to get Fleischmann's compliance with his subpoena. Accordingly, the Trustee needs to establish limits that will ensure compliance and requests the incorporation of the following term into the Order:

> Unless Hoschander produces a Privilege Log by the date documents are due under the Subpoena (the "<u>Document Due Date</u>"), or any Possible Protected Party files an appropriate motion with this Court seeking to quash any Subpoena or for a protective order with respect to any Subpoena (a "<u>Quash Motion</u>"), then effective the day following the Document Due Date, each Document shall be deemed non-privileged and Hoschander shall have no right or ability to withhold such Document(s) from the Trustee.

d) <u>Scheduling a Hearing for any Quash Motion or any Trustee Challenge</u> – The Trustee asks that a hearing be scheduled in advance for any Quash Motion or any challenge to a Privilege Log in order to ensure that such matter is timely heard. Accordingly, the Trustee requests that the following be set forth in the Order:

> A hearing is scheduled to take place on May __, 2015, at _____, before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800, for any (i) Quash Motion, (ii) motion by the Trustee challenging any privilege claimed by Hoschander in a timely produced Privilege Log, and/or (iii) motion by the Trustee to compel Hoschander's compliance with the Subpoena and to impose sanctions against Hoschander for non-compliance, or against the Debtor or any other party for interfering with the Subpoena and the Order.

e) <u>A Direction of Compliance to Debtor</u> – The Debtor has a repeated and documented history of non-compliance and interfering with the Trustee's subpoenas and service of other documents. Thus far, the Debtor has done this without any recourse whatsoever. To help deter the Debtor from this behavior with respect to the Subpoena, the Trustee requests the following in the Order:

> The Debtor is directed not to interfere with the Subpoena or Order in any way.

If the Debtor (or any other party) wishes to prevent Hoschander from producing any Document(s) or otherwise timely complying with the Subpoena and Order, he must timely file a Quash Motion. Any action or communication by the Debtor intended to prevent or limit Hoschander's production of Documents or compliance with the Subpoena and the Order other than timely filing a Quash Motion shall be deemed in contempt of this Order, and this Court shall consider what, if any, sanctions are appropriate to remedy such contempt.

81.    The additional relief, which is being sought on significant notice to the Debtor, Hoschander, and other parties to this case, is warranted and advisable under the circumstances. This Court is empowered to grant the relief sought by the Trustee which is specifically designed to ensure compliance with this Court's Order and lawfully issued Subpoena. Moreover, all of the proposed relief provides Hoschander, the Debtor and all other parties with more than a sufficient opportunity to raise a legal challenge to the production of Documents or other examination.

82.    Section 105(a) of the Bankruptcy Code states that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). However, section 105 is not limitless, and thus "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 95–96 (2nd Cir. 2010) (internal quotations and citations omitted). Bankruptcy courts are empowered to utilize their equitable powers under section 105 where appropriate "to facilitate the implementation of other Bankruptcy Code provisions." Id. (quoting Bessette v. Avco Fin. Servs. Inc., 230 F.3d 439, 444 (1st Cir. 2000)).

83.    Federal Rule 45(e), the language of which was properly included in the Subpoenas, states that "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey a subpoena." Further, courts have inherent power to enforce compliance with their lawful orders through civil contempt. See Spallone v. United

States, 493 U.S. 265 (1990); Shillitani v. United States, 384 U.S. 364, 369 (1966).  As the

Supreme Court stated in Ex parte Robinson, 86 U.S. 505, 510 (1874), "the power to punish for

contempt is inherent in all courts; its existence is essential to the preservation of order in judicial

proceedings, and to the enforcement of the judgments, orders and writs of the courts and,

consequently, to the due administration of justice." See also 11A CHARLES A. WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §2960 (3d ed. 2006) ("A court's

ability to punish contempt is thought to be an inherent and integral element of its power and has

deep historical roots.").

84.    Courts have embraced the inherent contempt authority as a power "necessary to

the exercise of all others." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821,

831 (1994) ("Courts independently must be vested with power to impose silence, respect, and

decorum, in their presence, and submission to their lawful mandates, and to preserve themselves

and their officers from the approach and insults of pollution."); see also Roadway Express, Inc.

v. Piper, 447 U.S. 752, 764 (1980) (stating that contempt powers are "the most prominent" of

court's inherent powers "which a judge must have and exercise in protecting the due and orderly

administration of justice and in maintaining the authority and dignity of the court"); Sigety v.

Abrams, 632 F.2d 969, 976 (2d Cir. 1980) ("The power to fine and imprison for contempt, from

the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a

court, without which it could no more exist than without a judge.").

85.    The power to impose civil contempt sanctions applies in this Court as well.

Indeed, it is well established that bankruptcy courts have power to enter civil contempt orders. In

re MarketXT Holdings Corp., Case No. 04-12078, 2006 WL 408317, at *1 (Bankr. S.D.N.Y.

Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to Rule 9020, that

bankruptcy courts have power to enter civil contempt orders."); see also In re World Parts, LLC, 291 B.R. 248, 253 (Bankr. W.D.N.Y. 2003) ("Bankruptcy courts possess the power to impose sanctions for acts of civil contempt.") (citing In re Chateaugay Corp., 920 F.2d 183, 187 (2d Cir. 1990)).

86.     The Trustee is not seeking a contempt finding at this juncture.  He is merely seeking the creation of clearly defined parameters for contesting the Order or Subpoena, and making it easier for the Trustee to enforce the Order and Subpoena.  The Trustee is also including the foregoing recitations of authority as a fair warning to Hoschander and the Debtor, should they consider non-compliance to be a viable option.  The Trustee is well-justified in asking for these extra requirements.  The Debtor has routinely interfered with the Trustee's duties and the Trustee is compelled to request these reasonable protections to deter such activity in the future and provide the Trustee with a clear avenue for seeking this Court's involvement with such future activity.

## NOTICE

87.     Notice of this Motion and hearing thereon has been provided to Hoschander, to the Debtor and to the United States Trustee.  The Trustee submits that such notice of the instant Motion and relief sought herein is appropriate under the circumstances and that no further or additional notice need be given.

## NO PRIOR RELIEF

88.     Except as otherwise stated herein, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order annexed hereto as <u>Exhibit A</u>, and for such other and further relief as the Court determines to be just and proper.

Dated:   New York, New York
          February 5, 2015

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
       Fred Stevens
       570 Seventh Ave., 17th Floor
       New York, New York 10018
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: fstevens@klestadt.com

       *Special Counsel to Richard E. O'Connell, the
       Chapter 7 Trustee of the Estate of Herman
       Segal*

## Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                    :

                                                         :          Chapter 7

HERMAN SEGAL,                                            :

                                                         :          Case No. 13-45519 (NHL)

                        Debtor.                          :
------------------------------------------------------------x

**ORDER, PURSUANT TO 11 U.S.C. §§ 105(a), AND 542(e), FED. R. BANKR. P. 2004(c) AND 9016, AND FED. R. CIV. P. 45(d)(2) AND (e): (I) AUTHORIZING THE TRUSTEE TO EXAMINE AND OBTAIN DOCUMENTS FROM ABRAHAM HOSCHANDER, (II) DIRECTING MR. HOSCHANDER TO COMPLY WITH THE TRUSTEE'S SUBPOENA AND TO TURN OVER ALL RECORDED INFORMATION AND DOCUMENTS RELATED TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS; (III) DETERMINING THAT ANY DOCUMENTS HELD BY MR. HOSCHANDER RESPONSIVE TO THE PROPOSED SUBPOENA CANNOT BE WITHHELD FROM THE TRUSTEE FOR ANY VALID LEGAL REASON AND PROVIDING MR. HOSCHANDER, THE DEBTOR AND/OR OTHER PARTIES WITH A LIMITED OPPORTUNITY TO DEMONSTRATE OTHERWISE; (IV) DIRECTING THE DEBTOR NOT TO INTERFERE WITH MR. HOSCHANDER'S COMPLIANCE WITH THE SUBPOENA; AND (V) SCHEDULING A HEARING TO CONSIDER ANY TIMELY FILED MOTION TO QUASH ANY SUBPOENA ISSUED HEREUNDER, OR FOR A PROTECTIVE ORDER, OR THE TRUSTEE'S MOTION TO ENFORCE THE TERMS OF THIS ORDER**

Upon the motion (the "Motion") of Richard E. O'Connell, Chapter 7 trustee (the "Trustee") of the estate of Herman Segal (the "Debtor"), for entry of an order, pursuant to sections 105(a) and 542(e) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2004(c) and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 45(d)(2) and (e) of the Federal Rules of Civil Procedure (the "Federal Rules"), (I) authorizing the Trustee to examine and obtain documents from Abraham Hoschander ("Hoschander"), by the service of a subpoena *duces tecum* (the "Subpoena"), (II) directing

Hoschander to comply with the Subpoena and to turn over all recorded information and documents related to the Debtor's property or financial affairs, (III) determining that any documents held by Hoschander that are responsive to the Subpoena (collectively, the "Documents") cannot be withheld from the Trustee for any valid legal reason absent an adequate showing of proper protection and scheduling a hearing and briefing deadlines with respect to same, (IV) directing the Debtor not to interfere with Hoschander's compliance with the Subpoena and production of the Documents and providing testimony at an examination (the "Examination"), and (V) establishing expedited procedures for obtaining the Court's intervention in enforcing its Order and Subpoena in the event that Hoschander fails to comply and/or the Debtor actively interferes; and a hearing on the Motion having been held before this Court on March 11, 2015 (the "Hearing"); and sufficient notice of the Motion and Hearing thereon having been given to Hoschander, the Debtor any party having filed a notice of appearance in this case pursuant to the affidavit of service on file with the Court; and any and all objections to the Motion having been overruled at the Hearing; and it appearing that no other or further notice is required; and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that pursuant to Bankruptcy Rules 2004 and 9016, the Trustee shall be, and hereby is, authorized to serve a Subpoena upon Hoschander, compelling the production of documents by not less than twenty-one (21) days from the date of issuance (the "Document Due Date") and Hoschander's appearance at an examination not less than twenty-eight (28) days from the date of issuance (the "Examination"); and it is further

**ORDERED**, that the Subpoena and a copy of this Order must be served upon Hoschander at his offices at 777 Kent Avenue – Suite 202, Brooklyn, New York 11211 (the

"Hoschander Office") or other manner consistent with the requirements of Fed. R. Civ. P. 45,

within three (3) business days of the date of entry of this Order; and it is further

**ORDERED**, that if Hoschander fails or refuses to grant the Trustee's process servers

access to his office, the Subpoena and this Order may be served by affixing a copy of same to the

outside of the Hoschander Office and sending a copy of the Subpoena and this Order to

Hoschander at the Hoschander Office by overnight courier; and it is further

**ORDERED**, that the Subpoena may seek the production of documents reasonably

calculated by the Trustee to lead to the discovery of information related to the financial affairs or

property of the Debtor including, but not limited to, the following:

(i)     All correspondence between the Debtor and Hoschander (a Privilege Log (as defined below) can be provided with respect to any such correspondence that is believed to be subject to an applicable privilege);

(ii)    All correspondence between Hoschander and any other party regarding the Debtor or any interest of the Debtor in property;

(iii)   All documents identifying the source of the January 2012 payment by check no. 1305 from Hoschander's attorney escrow account in the amount of $180,250, to Charles Mandelbaum, or that relate to or explain the reason the payment was made, the basis for inserting in the memo line of the check "Herman Segal – Acct.," any interest the Debtor had in the transaction, and any agreement underlying the transaction;

(iv)    All documents relating to the sale, financing, and collection and distribution of proceeds, of the real property known as 1171 Eastern Parkway, Brooklyn, New York (Block 1391, Lot 58);

(v)     All documents related to the formation, ownership and governance of Centurion Omega LLC ("Centurion Omega"), and that explain why Hoschander is the party designated to receive service of process for that entity;

(vi)    All documents related to the formation, ownership and governance of any entity owned, in whole or in part, controlled, or otherwise related to or affiliated with the Debtor (each a "Debtor Entity");

(vii)    All documents concerning the following payments made to Centurion Omega by 432 West 162 Street Acquisition, LLC, and what Centurion Omega used the funds for:

   i.   Jan. 21, 2014 - $100,000.00
   ii.  Jan. 23, 2014 - $50,000.00
   iii. Jan. 24, 2014 - $50,000.00
   iv.  Jan. 30, 2014 - $9,131.38

(viii)   All documents related to the formation, ownership and governance of Parkway Starlight LLC;

(ix)     All documents concerning any payments or transfers of property to the Debtor or any Debtor Entity, or any payments or transfers of property from the Debtor or any Debtor Entity;

(x)      All documents that constitute financial books and records of the Debtor or any Debtor Entity; and

(xi)     Any other documents that concern or relate to the Debtor or his property, or any Debtor Entity and its property.

(each a "Document," collectively, the "Documents").

**ORDERED**, that Hoschander is directed to comply with the terms of the Subpoena and produce all Documents responsive to the Subpoena to the Trustee as directed and by the Document Due Date.  In the event that Hoschander believes that any Document under his custody or control can or should be withheld pursuant to a permissible legal privilege, or otherwise, then he must, by no later than the Document Due Date, produce a log (a "Privilege Log") consistent with the requirements of Local Bankruptcy Rule 2004-1, incorporating the rules of the United States District Court for the Eastern District of New York 26.2, 26.3 and 30.1, containing the following:

(1) the type of document, *e.g.*, letter or memorandum;

(2) the general subject matter of the document;

(3) the date of the document;

(4) the author of the document, the addresses of the document, and any other recipients, and, where not apparent, the relationship of the author, addresses, and recipients to each other; and

(5) the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, the state's privilege rule being invoked.

**ORDERED**, that pursuant to 11 U.S.C. §542(e), Hoschander is directed to turn over to the Trustee any and all recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs by no later than the Document Due Date; and it is further

**ORDERED**, that Hoschander is directed to provide a copy of this Order and the Subpoena to any individual or entity, that did not otherwise receive notice of the Motion and hearing thereon (each a "<u>Possible Protected Party</u>"), that may assert a claim that any responsive Documents are protected by a legal or other privilege within three (3) days of the Trustee's service of the Subpoena and this Order in the manner provided herein; and it is further

**ORDERED**, that unless Hoschander produces a Privilege Log by the Document Due Date, or any Possible Protected Party files an appropriate motion with this Court seeking to quash any Subpoena or for a protective order with respect to any Subpoena (a "<u>Quash Motion</u>") by the Document Due Date, then effective the day following the Document Due Date, each Document shall be deemed non-privileged and Hoschander shall have no right or ability to withhold such Document(s) from the Trustee; and it is further

**ORDERED**, that a hearing is scheduled to take place on May __, 2015, at _____, before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein U.S. Courthouse,

271-C Cadman Plaza East, Brooklyn, New York 11201-1800, for any (i) Quash Motion, (ii) motion by the Trustee challenging any privilege claimed by Hoschander in a timely produced Privilege Log, and/or (iii) motion by the Trustee to compel Hoschander's compliance with the Subpoena and to impose sanctions against Hoschander for non-compliance, or against the Debtor or any other party for interfering with the Subpoena and this Order; and it is further

**ORDERED**, that the Debtor is directed not to interfere with the Subpoena or Order in any way.  If the Debtor (or any other party) wishes to prevent Hoschander from producing any Document(s) or otherwise timely complying with the Subpoena and Order, he must timely file a Quash Motion.  Any action or communication by the Debtor intended to prevent or limit Hoschander's production of Documents or compliance with the Subpoena and this Order other than timely filing a Quash Motion shall be deemed in contempt of this Order, and this Court shall consider what, if any, sanctions are appropriate to remedy such contempt; and it is further

**ORDERED**, that this Court shall retain jurisdiction with respect to any disputes that arise with respect to this Order, or any Subpoena issued hereunder.