UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X
In re:

                Chapter 7
HERMAN SEGAL,          Case No. 1-13-45519-NHL
    Debtor.
———————————————————————X

## DECISION DENYING MOTION TO DISMISS

APPEARANCES:

| | |
|---|---|
| Herman Segal | Richard E. O'Connell |
| *Pro Se Debtor* | Yost & O'Connell |
| | 24-44 Francis Lewis Boulevard |
| | Whitestone, NY 11357-1633 |
| | *Chapter 7 Trustee* |
| | |
| | Fred Stevens |
| | Klestadt & Winters, LLP |
| | 570 Seventh Ave. |
| | 17th Floor |
| | New York, NY 10018 |
| | *Attorney for Trustee* |

**HONORABLE NANCY HERSHEY LORD**
**United States Bankruptcy Judge**

1

A voluntary petition for relief, in the name of Herman Segal as debtor (the "Debtor"), filed on September 10, 2013, commenced this chapter 7 bankruptcy case. On January 30, 2014, the Debtor moved to dismiss the case. In his motion to dismiss (the "Motion to Dismiss"), the Debtor claimed that he neither signed the petition nor approved the filing. After considering the entire record, including testimony, arguments, and submissions, the Court finds that the Debtor authorized his former counsel to place him into bankruptcy; the Debtor's conduct subsequent to the filing ratified the chapter 7 petition; and the Debtor is equitably estopped from disavowing the bankruptcy case. Moreover, the Debtor has acted in bad faith, and dismissal would severely prejudice his creditors. Because the Debtor failed to establish cause for dismissal, the Motion to Dismiss is denied.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## BACKGROUND

On September 13, 2013, while out of the country, the Debtor called Maxim Maximov, Esq., the initial attorney in this case.[1] Mr. Segal was facing the imminent foreclosure sale of a co-operative apartment, titled in his name, located at 4720 Pinetree Drive, Unit #15, Miami Beach, FL (the "Co-op"). Mr. Maximov advised the Debtor that he could halt the auction by filing for bankruptcy. That same day, the Debtor completed the credit counseling course required under 11 U.S.C. § 109. Then, Mr. Maximov electronically field an "emergency"

---

[1] On June 20, 2014, the Court granted Mr. Maximov's Motion to Withdraw as Counsel. Order, ECF No. 89.

chapter 7 petition (the "Original Petition"). Ev. Hr'g Tr. 32:20–21, Sept. 4, 2014, ECF No. 116. The Debtor did not physically sign the Original Petition. Trustee P.T. Statement 4 ¶ 1, ECF No. 90; Debtor P.T. Statement 3 ¶ 1, ECF No. 91. No schedules or statements required under 11 U.S.C. § 521(a)(1)(B) accompanied the Original Petition, and the only creditor listed was The Esquire House, the cooperative association, who had obtained the judgment of foreclosure due to unpaid maintenance fees.

After the Original Petition was filed, Richard E. O'Connell, the chapter 7 trustee for the Debtor's estate (the "Trustee"), began investigating the Debtor's finances. On October 10, 2013, the Trustee filed (i) Motion for Authorization to Conduct a 2004 Examination of the Debtor and the Debtor's wife, Yocheved Segal, and (ii) Motion to Compel the Debtor to Perform His Duties Under § 521(a) and Bankruptcy Rule 4002. Neither the Debtor nor Mr. Maximov appeared at the hearing held on November 14, 2013, and the Court granted the Trustee's motions.

The Debtor did not cure the § 521 deficiencies, and the Court issued an Order to Show Cause why the case should not be dismissed for failure to file schedules. There was no appearance by or on behalf of the Debtor at the hearing on the Order to Show Cause, held on November 21, 2013. The Debtor incorrectly assumed that if he ignored the Court's notices and the Trustee's requests for information, the case would be dismissed. However, the Court adjourned the show cause hearing to December 4, 2013, based upon the Trustee's "request[ ] that the Debtor's case not be dismissed and that the Trustee be permitted to continue the discharge of his duties under section 704 of the Bankruptcy Code." Statement of Trustee 2 ¶ 1, ECF No. 27.

The Trustee's motion for authorization to sell the Co-op, pursuant to 11 U.S.C. § 363 (the "Sale Motion"), finally elicited a response from the Debtor. Mr. Maximov filed written

opposition; and the Debtor, Mr. Maximov, and Warren Graham, Esq., also representing the Debtor, appeared before this Court on December 4, 2013, for the hearing on the Sale Motion. On the record, Mr. Segal, personally and through his attorneys, addressed the Sale Motion, but did not advise the Court that he believed the entire case should be dismissed. The Court overruled the Debtor's objection and authorized the Trustee to sell the Co-op. Hr'g Tr. 41:8–9, Dec. 4, 2013, ECF No. 72. Additionally, the Court determined it would not proceed on its Order to Show Cause regarding dismissal. Hr'g Tr. 13:16–19. The Court admonished that a debtor who files a "barebones" petition to obtain the automatic stay should not assume the case will be automatically dismissed if he ignores his duties as a debtor.[2] Hr'g Tr. 9:20–13:4.

On December 5, 2013, the Court issued an Order (the "Order to Compel") directing Mr. Segal to perform his duties as a debtor, including filing a list of creditors, schedules of assets and liabilities, schedule of current income and current expenditures, and a statement of financial affairs. Order, ECF No. 37. The Order to Compel also directed the Debtor to provide information and documents to, cooperate with, and submit to an examination by the Trustee.

The Debtor filed the required items on December 23, 2013. However, the Debtor repeatedly invoked the Fifth Amendment on the documents and refused to fully disclose his real and personal property, the nature and amount of claims against him, and the names of his creditors. Schedules, ECF No. 41; Means Test, ECF No. 42. Concurrently, the Debtor filed an amended petition on Official Form 1, which bears his original signature (the "Amended Petition"). Am. Pet., ECF No. 43.

---

[2] Also on the December 4, 2013 calendar was the Court's Order directing that Mr. Maximov appear and show cause why he failed to prosecute to the case. The Court marked off this Order to Show Cause, but warned Mr. Maximov that counsel must perform due diligence before filing a petition. Hr'g Tr. 10:16–22, Dec. 4, 2013, ECF No. 72.

On January 30, 2014, the Debtor, acting *pro se*, filed the instant Motion to Dismiss. The Motion to Dismiss raised, for the first time, that the Debtor never signed the Original Petition. Subsequently, Rachel Blumenfeld, Esq., replacement counsel for the Debtor, filed a memorandum of law in support of dismissal.[3] The Debtor argues that the absence of his signature on the Original Petition is a "fatal defect to the filing." Debtor Mem. 2 ¶ 2, ECF No. 80. Furthermore, Mr. Segal states that the only reason for the filing was to stop the foreclosure, which was, in retrospect, a "huge mistake." Mot. ¶ 10, ECF No. 54. The Debtor claims that he never authorized Mr. Maximov to commence a case under chapter 7 and submits that he and his creditors do not need or want bankruptcy protection. Mot. ¶ 15, ECF No. 54.

The Trustee opposes the Motion to Dismiss. He contends that the Debtor's signature on the Amended Petition remedied any defects that inured from the unsigned Original Petition. Also, the Trustee argues that dismissal would reward the Debtor for his delay and refusal to cooperate and prejudice the Debtor's undisclosed creditors.

## DISCUSSION

11 U.S.C § 707(a) applies to a chapter 7 debtor's motion to voluntarily dismiss his own case. *Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007). Section 707(a) provides that a court may dismiss a chapter 7 bankruptcy case

> only after a notice and a hearing and only for cause, including—(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure . . . to file . . . the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The statutory examples of cause "are illustrative, not exclusive." *Smith*, 507 F.3d at 72. The right to voluntarily dismiss a chapter 7 case is not absolute; the debtor must

---

[3] On August 8, 2014, the Court granted Ms. Blumenfeld's Motion to Withdraw as Counsel. Order, ECF No. 101. Since then, the Debtor has appeared *pro se*.

establish cause for dismissal under § 707(a). *Id.* On a debtor's motion to dismiss, courts "determine[ ] whether cause exists by looking at 'whether dismissal would be in the best interest of all parties in interest.'" *Id.* (quoting *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (2d Cir. BAP 1997)). Equitable considerations guide the court in weighing factors in favor of and against dismissal. *Smith*, 507 F.3d at 73. The determination on dismissal falls within "the sound discretion of the bankruptcy court." *In re Hull*, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006).

    A. The Petition

Bankruptcy Rules 1008 and 9011(a) require that a petition for relief be signed. Generally, if "the debtor did not sign the petition" and does not "promptly correct the deficiency" by executing it, then the case should be dismissed. *Willis v. Rice (In re Willis)*, 345 B.R. 647, 651 (8th Cir. BAP 2006). However, certain facts mandate a different result.

In *Willis*, the debtor alleged that she did not sign or review the petition filed by her attorney. Although the debtor learned shortly thereafter that a case had been commenced without her authorization, six weeks passed before she first stated on the record that she did not sign the petition. Despite numerous opportunities to disclose the defect, the debtor remained silent and benefited from the automatic stay. The debtor participated in the bankruptcy, but "only in ways she deemed beneficial to her," such as moving to reconvert her case and opposing motions for stay relief. *Willis*, 345 at 653–54. She did not fulfill any responsibilities of a debtor, such as "filing accurate schedules and cooperating with the trustee," and "repeatedly failed to turn over documents." *Id.* at 654, 651.

Similarly, in *In re Scotto*, No. 8-09-75956-REG, 2010 WL 1688743, at *4 (Bankr. E.D.N.Y. Apr. 26, 2010), the debtor argued that the case should be declared a "legal nullity" because his signature on the petition was forged, and he did not consent to the filing. The debtor

6

testified that he "was made aware of the bankruptcy filing just two days after it was filed." *Id.* at *13. However, he "remain[ed] silent for four months while th[e] case was pending." *Id.* at *12. Meanwhile, "creditors were held in abeyance and the Chapter 7 Trustee was actively engaged in the performance of his duties." *Id.* Moreover, "the [d]ebtor purposefully disregarded all directions of th[e] [c]ourt" and exhibited a "cavalier attitude towards . . . the bankruptcy process." *Id.*

The *Willis* and *Scotto* courts denied the debtors' motions to dismiss on the grounds that the debtors' post-petition conduct ratified the filings. "Ratification, under the law of New York, is 'the affirmance by a party of a prior act that did not bind it at the time but that was done or purportedly done on its account.'" *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 466 (E.D.N.Y. 2007) (quoting *Chemical Bank v. Affiliated FM Ins. Co.,* 169 F.3d 121, 128 (2d Cir. 1999)) (citing *J. M. Heinike Assocs., Inc. v. Chili Lumber Co.*, 83 A.D.2d 751, 752 (N.Y. App. Div. 4th Dep't 1981)). It "can be established by presenting evidence that benefits were derived through the debtor's actions or through participation in the act itself." *Scotto*, 2010 WL 1688743, at *12. A debtor "ratifie[s] [a] defective filing by actively participating in the bankruptcy case." *Willis*, 345 B.R. at 653–54.

Alternatively, Ms. Willis and Mr. Scotto, debtors who "enjoy[ed] the benefits, and none of the detriments," of bankruptcy, were equitably estopped from later asserting the case must be dismissed because they did not sign the petition or authorize the filing. *Willis*, 345 B.R. at 651; *Scotto*, 2010 WL 1688743, at *12. Equitable estoppel is the principle that:

> [w]here a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself . . . he acquiesces in and assents to it and is equitably estopped from impeaching it.

7

*Rothschild v. Title Guarantee & Trust Co.*, 204 N.Y. 458, 461, 97 N.E. 879, 880 (1912).  Under New York Law, equitable estoppel requires:

> (1) An act constituting a concealment of facts or a false misrepresentation; (2) An intention or expectation that such acts will be relied upon; (3) Actual or constructive knowledge of the true facts by the wrongdoers;  (4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

*Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (citing *Broadworth Realty Assocs. v. Chock 336 B'way Operating, Inc.*, 168 A.D.2d 299, 301 (1990)).  If a debtor damages another party by remaining silent when he has a duty to speak, then the debtor's inaction may qualify as an act for the purposes of equitable estoppel. *Scotto*, 2010 WL 1688874, *11.

Mr. Segal submits that he "did not willingly or knowingly participate in the preparing or filing of his Chapter 7 bankruptcy petition." Debtor Mem. 4 ¶ 8, ECF No. 80.  But, at the evidentiary hearing, Mr. Segal testified:

> I definitely authorized [Mr. Maximov] to file some petition . . . I had authorized him to file something on my behalf . . . I did authorize him to file the bankruptcy on my behalf . . . I authorized broadly a petition to stop the sale, not a Chapter 7.

Ev. Hr'g Tr. 71:2–18.  The Debtor carefully chooses his words to acknowledge that, while he used the Original Petition as a means to halt the foreclosure sale, he "never authorized the filing of a **Chapter 7**." Ev. Hr'g Tr. 43:21–22 (emphasis added).  Thus, Mr. Segal argues that this case must be dismissed because he did not execute the Original Petition, which Mr. Maximov filed under chapter 7.

The Court finds that the Debtor authorized Mr. Maximov to place him into bankruptcy. Moreover, under the doctrines of ratification and equitable estoppel, the absence of Mr. Segal's written signature on the Original Petition does not mandate dismissal.

First, the Debtor ratified the filing under chapter 7 by voluntarily signing the Amended Petition. The Order to Compel did not require the Debtor to refile Official Form 1. Nevertheless, Mr. Segal averred a belief that the Amended Petition was both directed by the Court and necessary to correct errors in the Original Petition. Ev. Hr'g Tr. 11:1–5. On the Amended Petition, under "Estimated Assets" and "Estimated Liabilities," Mr. Segal crossed out the boxes that had been checked on the Original Petition and wrote "I refuse to answer & assert my 5th Amendment Rights." Am. Pet. 1, ECF No. 43. However, the Debtor made no new markings on the Amended Petition under "Chapter of Bankruptcy Code Under Which the Petition is Filed." Am. Pet. 1, ECF No. 43. Instead of apprising the Court that Mr. Maximov allegedly filed under chapter 7 without his consent, the Debtor acquiesced to the chosen chapter when he signed the Amended Petition.

Second, the Debtor's selective participation in the chapter 7 proceedings ratified the filing. For example, the Debtor appeared in opposition to the Trustee's Sale Motion. Mr. Segal's testimony that he was "not aware" that he could challenge his status as a debtor under chapter 7 as part of his objection is not credible. Ev. Hr'g Tr. 44:12–17.

Alternatively, Mr. Segal is equitably estopped from asserting the Original Petition is void because he did not execute it. The Debtor knew that the Original Petition did not bear his signature, but intended that the automatic stay would go into effect by operation of its filing. Soon after, the Debtor became aware that the Original Petition had been filed under chapter 7. *See* Notice, ECF Nos. 4, 4-1 ("Notice of Deficient Filing – Chapter 7" mailed to Debtor on September 12, 2013). Once the Original Petition was filed, the appointed Trustee began expending substantial resources in exercising his fiduciary duties. During the first four months of the case, the Debtor refused to cooperate with the Trustee, but he did not identify the allegedly

9

unauthorized filing as the reason for his reticence. Mr. Segal assumed he could circumvent the unwanted consequences of chapter 7 if he "just ignored the various requirements that were necessary for a filing." Ev. Hr'g Tr. 34:23–25. Mr. Segal only raised his failure to sign the Original Petition after it became apparent to him that the case would not be dismissed as a matter of course. Ev. Hr'g Tr. 116:15–18. Through his silence, the Debtor continued to enjoy the benefits of the automatic stay, to the detriment of creditors and the estate.

    B.  The Debtor's Best Interest

A debtor does not have unbridled "discretion to withdraw his case once it has been commenced." *In re Klein*, 39 B.R. 530, 532 (Bankr. E.D.N.Y. 1984). The Court must find that dismissal is in the debtor's best interest, "the most important factor in the analysis" being "whether the debtor is able to secure 'an effective fresh start.'" *Smith*, 507 F.3d at 75 (quoting *Dinova*, 212 B.R. at 441). Voluntary dismissal may be inappropriate where a debtor "has no ability to pay his creditors upon dismissal." *In re Bruckman*, 413 B.R. 46, 53 (Bankr. E.D.N.Y. 2009). Conversely, a debtor's arrangement to pay creditors outside of bankruptcy may constitute cause for dismissal, because "[t]he debtor's best interest also lies in 'the reduction of administrative expenses'" associated with bankruptcy. *Smith*, 507 F.3d at 75 (quoting *Dinova*, 212 B.R. at 441). Furthermore, a debtor does not establish cause for dismissal simply by alleging that he received insufficient legal advice regarding the effects of bankruptcy. *Klein*, 39 B.R. at 533; *In re Martin*, 30 B.R. 24, 27 (Bankr. E.D.N.C. 1983).

The Debtor argues that he should not be held accountable for the chapter 7 filing because Mr. Maximov allegedly failed to explain the differences between the chapters of the Bankruptcy Code. Ev. Hr'g Tr. 35:9–10. Mr. Segal denies authorizing a chapter 7 petition, but insists that if Mr. Maximov had advised him that a trustee would be appointed to liquidate his

10

assets, the Debtor never would have selected chapter 7. Debtor Mem. 3–4, 6 ¶¶ 8, 16, ECF No. 80.  According to the Debtor, "at no time was [he] interested in going to bankruptcy or availing [him]self of the Bankruptcy Court and its protections other than that [sic] prevention of that foreclosure sale . . . [but] that exercise seemed pointless" once the Court authorized the sale of the Co-op. Ev. Hr'g Tr. 11:8–11.  While *pro se* litigants are generally held to a more lenient standard, the Debtor is a law school graduate and a former attorney. Ev. Hr'g Tr. 38:1–3.  The Debtor's submissions that he did not anticipate the consequences of bankruptcy and that Mr. Maximov gave him poor legal advice do not constitute cause for dismissal.

The Debtor argues that dismissal is necessary to protect his constitutional rights. *See* Mot. ¶ 13, ECF No. 54 ("[The Trustee] is on a witch hunt and a fishing expedition to try to get me to violate my constitutional rights by causing me to incriminate myself and to violate my religious principals and violate my rights to freedom of association.").  The Debtor refuses to testify or produce documents about his creditors, because he fears the disclosure might subject him to criminal prosecution on charges that could include tax evasion. *E.g.* Ev. Hr'g Tr. 61:9–67:20.  At the evidentiary hearing, the Debtor invoked his Fifth Amendment right in response to questions by the Trustee, such as: "Does anybody owe you money right now?" and "Did anybody owe you money on September 10th of 2013." Ev. Hr'g Tr. 74:20–23.  Furthermore, the Debtor declined to provide the Trustee with details about his dealings with 432 West 162 Street Acquisition, LLC. Ev. Hr'g Tr. 76:1–82:5.  The Court notes that Mr. Segal's invocation of the Fifth Amendment has been inconsistent. *See, e.g.*, Ev. Hr'g Tr. 69:17–72:3.  However, for the purposes of deciding the Motion to Dismiss, the Court need not, and does not, decide whether some or all of the information that debtors must produce in bankruptcy is protected, in Mr. Segal's case, by the Fifth Amendment.

The Debtor testified: "I thought I made it obvious by everything that I did that I didn't want to be in bankruptcy." Ev. Hr'g Tr. 51:6–7. However, a debtor is not at liberty to selectively disengage from the chapter 7 bankruptcy processes. Other than Mr. Segal's conclusory pronouncements, the record is devoid of any indication, let alone evidence, that the Debtor has the ability to repay his creditors in full outside of bankruptcy. A debtor's "fresh start" begins with an honest accounting of his financial affairs.[4] *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (Bankruptcy affords a "new beginning to the 'honest but unfortunate debtor.'") (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Without a complete understanding of Mr. Segal's assets and liabilities, this Court cannot find that dismissal is in the Debtor's best interest. Mr. Segal's refusal to coorporate with the Trustee and reticence to make full disclosures to the Court, which already have burdened the estate with significant administrative costs, do not constitute cause for dismissal. Granting the Motion to Dismiss would condone, and even reward, the Debtor's behavior.

C.  Creditors' Best Interest

The question of creditors' best interest "is typically one of prejudice." *Smith*, 507 F.3d at 72. "The debtor bears the burden of proving that dismissal will not prejudice his creditors." *Bruckmam*, 413 B.R. at 50. Generally, creditors are not prejudiced by dismissal because they may exercise their rights outside of bankruptcy. *Id.* Creditors may be prejudiced, however, where the debtor moves to dismiss after a "considerable amount of time" has passed. *In re Schwartz*, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986). Thus, a bankruptcy case should not be

---

[4] This written opinion memorializes the Court's oral summary, on the record of the hearing held on January 29, 2015, of its intended decision on the Motion. That day, the Court heard various matters, including the Trustee's Motion for Default Judgment in his adversary proceeding objecting to the Debtor's discharge. After the Court announced its conclusion that the case would not be dismissed, Mr. Segal stated that he did not oppose the entry of a default judgment denying his discharge. Hr'g Tr. 34:17–38:12, Jan. 29, 2015, ECF No. 179. Therefore, on January 31, 2015, the Court issued an Order Granting Motion for Default Judgment and Judgment denying the Debtor's discharge. Order, ECF No. 13-01545 Doc. 32; J., ECF No. 13-01545 Doc. 33.


dismissed if the purpose of the petition was to forestall creditors, and the debtor moves to dismiss after attaining such delay. *Bruckman*, 413 B.R. at 50.

The Debtor filed the Original Petition for the express purpose of staying the foreclosure sale; he did not intend to prosecute the bankruptcy case. The Debtor waited 142 days to move for dismissal. During that interval, he continued to benefit from the automatic stay. Despite opportunities to do so, the Debtor did not apprise the Trustee or the Court that he allegedly did not sign, authorize, or review the Original Petition. The Debtor argues that he was unaware that he could move to dismiss or that his failure to execute the Original Petition was grounds for dismissal. Ev. Hr'g Tr. 50:3–24. However, Mr. Segal's various explanations for the delay are unpersuasive. *E.g.* Ev. Hr'g Tr. 55:23–56:1 ("I didn't believe that I would be prejudiced by waiting six or seven weeks."); 56:18–19 ("[I]t took time for me to get my act together."). Likewise, Mr. Segal's unsubstantiated assurances that he will arrange to pay creditors outside of bankruptcy are not credible. Thus, the Court finds that the Debtor's delay intentionally frustrated creditors and prejudiced the estate.

Furthermore, creditors are prejudiced when a debtor acts in bad faith. *Bruckman*, 413 B.R. at 50. Accordingly, a court may deny voluntary dismissal if it finds that the debtor has acted in bad faith. *Id.* at 53. "Bankruptcy courts are duty bound to take all reasonable steps to preclude debtors from abusing or manipulating the bankruptcy process in order to undermine the essential purposes of the Bankruptcy Code." *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d 474, 480 (1st Cir. 2005) *aff'd* 549 U.S. 365 (2007). Prior to *Marrama*, some courts interpreted 11 U.S.C. § 706(a) as creating "an unqualified right of conversion." [5]

---

[5] "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a).

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 371 (2007). The Supreme Court held that notwithstanding "[t]he Committee Report's reference to an 'absolute right,'" a bankruptcy court can deny a debtor's motion to convert his case from chapter 7 to chapter 13 if it finds the debtor has acted in bad faith. *Id*. at 372. The precept that bad faith conduct deprives a debtor of the right to control the outcome of his chapter 7 case is even stronger in the context of § 707(a), which explicitly requires the movant to establish cause for dismissal.

Courts should not sanction "dismissal of a case after it has appeared that the debtor failed to account honestly for his assets . . . for such a failure indicates the likelihood of further questionable practices to the detriment of creditors." *Schwartz*, 58 B.R. at 925. If a debtor fails to fully disclose his financial affairs during the bankruptcy, "[t]he court has no assurance that the debtor's assets will be distributed to the creditor body if it relinquishes its jurisdiction in ordering dismissal." *Klein*, 38 B.R. at 533; *Scotto*, 2014 WL 1688743, at *14 ("Without a reliable record of the Debtor's assets and liabilities this Court cannot find that creditors will not be prejudiced by the dismissal of this case."). Creditors' interests lie in "equitable and full distribution of newly discovered assets and voidable transfers to all creditors." *Schwartz*, 58 B.R. at 926. Thus, a debtor prejudices creditors by seeking to dismiss his case in order to prevent a trustee from fully investigating the debtor's financial affairs and administrating the estate. *Willis*, 345 B.R. at 651 (dismissal inappropriate where debtor had transferred assets to insiders and trustee could recover those fraudulent transfers for the benefit of the estate).

Mr. Segal's inconsistency undermines his credibility. For example, in the Debtor's opening statement, he said, "I don't have any assets," Ev. Hr'g Tr. 11:15, but later contradicted himself. Ev. Hr'g Tr. 14:15–18 ("I had no . . . knowledge . . . that [a chapter 7 bankruptcy] would take away my assets."); 34:4–5 (Debtor owns a house in Brooklyn). The Debtor claims that his

"creditors, if any" do not want or need bankruptcy protection. Mot. ¶ 15, ECF No. 54. However, considering the Debtor's evasiveness, he falls short of his burden to show that dismissal will not prejudice his creditors. The Court agrees that the Trustee is in the best position to challenge claims, such as the non-traditional mortgages encumbering the Debtor's Brooklyn property, and orderly distribute assets to holders of allowed claims. Opp'n 19 ¶ 62, ECF No. 61.

The Debtor insists that the cooperative association was the only creditor "pressuring" him at the time of the filing. Mot. ¶ 9, ECF No. 54; Ev. Hr'g Tr. 43:11–14. Subsequent developments in the case, however, belie that characterization. For example, the Internal Revenue Service filed Proof of Claim No. 2 in the amount of $508,926.87, and the Debtor testified that he has not filed tax returns for several years. Ev. Hr'g Tr. 39:3–16. Also, at the evidentiary hearing, the Debtor admitted that he owes approximately $400,000 to Annette Kleinfeld. Ev. Hr'g Tr. 41:24–42:10. Moreover, in January 2014, Arnold Young sued Mr. Segal, because the Debtor allegedly forged his signature on a loan guarantee. Ev. Hr'g Tr. 39:17–41:18.

Mr. Segal stated that "the delays and the various misdeeds attributed to [him] were simply that [he] did not want to be in bankruptcy." Ev. Hr'g Tr. 14:2–3. The Debtor disingenuously surmises that the Trustee "cannot have the protection of the creditors in mind because he has no idea how may creditors I might have." Mot. ¶ 14, ECF No. 54. However, Mr. Segal's refusal to cooperate does not obviate the Trustee's fiduciary duty to thoroughly investigate into the Debtor's financial affairs. The Trustee has filed multiple applications under Bankruptcy Rule 2004 to examine certain third parties and compel document production regarding the Debtor's accounts, insurance policies, and property transfers. The Trustee's investigation has revealed a likelihood that the estate has assets and a creditor body for whose benefit they should be administered. Furthermore, the Trustee believes that the Debtor may have

transferred undisclosed assets post-petition without Court authorization. *E.g.* Ev. Hr'g 72:4–74:4 ($37,000 check to ING dated October 7, 2013 bears Debtor's signature); 2004 Mot. 2 ¶ 2–3, ECF No. 93 (Debtor sued in connection with sale of property located at 423 West 162nd Street, New York, NY). The Trustee suggests that, if the case is dismissed, Mr. Segal would continue his pattern of suspect transactions harmful to creditors. Opp'n 20 ¶ 64–65, ECF No. 61.

Mr. Segal accepted the benefits of bankruptcy, but eschews his obligations as a debtor. The Debtor testified:

> I have never felt, rightly or wrongly, that I am under the bankruptcy even though it has been advantageous at certain points. So if I transacted or did anything, I don't believe I was in violation of any laws regarding what a person in bankruptcy should or should not be doing.

Ev. Hr'g Tr. 82:22–83:1. After considering the entire record, the Court concludes that Mr. Segal has operated in bad faith, and allowing him to voluntarily dismiss the case at this time would be improper.

## CONCLUSION

For all of the foregoing reasons, the Debtor failed to establish cause for dismissal. The Motion to Dismiss is denied. A separate order will issue.



**Dated: March 6, 2015**
      **Brooklyn, New York**

          **Nancy Hershey Lord**
          **United States Bankruptcy Judge**