**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

*Special Counsel to Richard E. O'Connell,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | Chapter 7 |
| HERMAN SEGAL, | |
| | Case No. 13-45519 (NHL) |
| Debtor. | |

**TRUSTEE'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE TRUSTEE TO EXAMINE (I) BOROUGH PARK BAKERY ASSOCIATES LLC, AND (II) BOROUGH PARK BAKERY LLC**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") for the estate of Herman Segal (the "Debtor"), by and through his special counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his application (the "Application") for entry of an order in substantially the same form as that annexed hereto as Exhibit A (the "Proposed Order"), authorizing the Trustee to examine Borough Park Bakery Associates LLC and Borough Park Bakery LLC (the "Examinees"), and serve each with a subpoena *duces tecum* (a "Subpoena," collectively, the "Subpoenas") requiring each to appear for an examination through a witness designated under Fed. R. Civ. P. 30(b)(6) and produce and allow the inspection of all documents related to the ownership, operation and financial interests of the Debtor, pursuant to Fed. R. Bankr. P. 2004,

respectfully represents:

## PRELIMINARY STATEMENT

1. The Trustee is conducting an extensive investigation into the Debtor's complex and secretive financial affairs. As this Court is well aware, the Debtor is uncooperative and has refused to produce documents to the Trustee or provide any useful testimony under an improper assertion of his Fifth Amendment Right not to incriminate himself. Accordingly, the Trustee has been forced to conduct his investigation through third parties and professionals with connections to the Debtor.

2. The Trustee has only five (5) months to investigate and initiate avoidance actions pursuant to 11 U.S.C. §546(a), and has received very little in documentation from the Debtor. The Examinees are believed, for good reason, to have knowledge and information related to the Debtor's financial affairs. Among other things, the Trustee has identified the following links between the Debtor and the Examinees:

a) In or around January 2009, the Debtor paid $75,000.00 to Lily's (sic) Homestyle, which is believed to be an alias for the Examinees:

HERMAN SEGAL

1-1357/260
1500681078

1092

DATE JAN 21 2009

PAY TO THE ORDER OF Lily's Home Style $75000.00

Seventy-five thousand DOLLARS

SIGNATURE BANK
Private Client Group 423
26 Court Street
Brooklyn, NY 11242

MEMO Bakery

⑆026013576⑆ 1500681078⑈ 1092

b) In or around June 2009, an entity called Borough Park Bakery DBA Lilly's

Homestyle Bake Shop/ Mezonos Maven Bakery/ Mehadrin Bakery (the "Bakery Entities") issued a check to the Debtor for $23,844.71:

3080

BOROUGH PARK BAKERY
DBA LILLY'S HOMESTYLE BAKE SHOP/
MEZONOS MAVEN BAKERY/MEHADRIN BAKERY

SIGNATURE BANK
PRIVATE CLIENT GROUP 111
NEW YORK, NY 10017
1-1357-260

6/11/2009

PAY TO THE ORDER OF Herman Segal $ **23,844.71

Twenty-Three Thousand Eight Hundred Forty-Four and 71/100****** DOLLARS

Herman Segal

MEMO

AUTHORIZED SIGNATURE

⑈003080⑈ ⑆026013576⑆ 1500956840⑈

c) In or around August 2009, the Bakery Entities issued a second check to the Debtor for $15,000.00:

3440

BOROUGH PARK BAKERY
DBA LILLY'S HOMESTYLE BAKE SHOP/
MEZONOS MAVEN BAKERY/MEHADRIN BAKERY

SIGNATURE BANK
PRIVATE CLIENT GROUP 111
NEW YORK, NY 10017
1-1357-260

8/4/2009

PAY TO THE ORDER OF Herman Siegel $ **15,000.00

Fifteen Thousand and 00/100****** DOLLARS

Herman Siegel

MEMO

AUTHORIZED SIGNATURE

⑈003440⑈ ⑆026013576⑆ 1500956840⑈

d) Lilly's Homestyle Bake Shop may be the namesake of the Debtor's mother, Lilly Segal.

3. Based on the Debtor's lack of cooperation throughout this case, and general refusal to disclose financial information, the Trustee has been forced to investigate the Debtor's potential financial interests through an independent investigation of third parties. Upon information and belief, the Bakery Entities are owned by the Examinees. Based on this, the Trustee needs to determine the nature of the Debtor's financial interest in the Examinees,

whether or not that interest can be liquidated, and the reasons for the flow of funds between them.

4. For these reasons and those set forth below, the Trustee respectfully requests the entry of an order in substantially the same form as the Proposed Order, authorizing him to examine Borough Park Bakery Associates LLC and Borough Park bakery LLC pursuant to Bankruptcy Rule 2004.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicate for the relief requested herein is Bankruptcy Rules 2004 and 9016, and Federal Rule 45, made applicable by Bankruptcy Rule 9016.

**INTRODUCTION**

9. On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the Bankruptcy Code.

10. On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate. On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation

of section 702(d) of the Bankruptcy Code.

## BACKGROUND

### I. Procedural History and Debtor's General Refusal to Cooperate

11. At 1:55 p.m. on the Petition Date, the Debtor completed the required credit counseling, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of the Debtor's cooperative apartment in Miami Beach (the "Miami Coop").

12. The Debtor failed to file the following documents or make the following disclosures with his Petition:

a) Statement pursuant to Local Bankruptcy Rule 1073-2(b);
b) Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);
c) Summary of Schedules;
d) Statistical Summary of Certain Liabilities;
e) Schedule A (Real Property);
f) Schedule B (Personal Property);
g) Schedule C (Property Claimed as Exempt);
h) Schedule D (Creditors Holding Secured Claims);
i) Schedule E (Creditors Holding Priority Unsecured Claims);
j) Schedule F (Creditors Holding Unsecured Nonpriority Claims);
k) Schedule G (Executory Contracts and Unexpired Leases);
l) Schedule H (Co-Debtors);
m) Schedule I (Income);
n) Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");
o) Declaration Concerning Schedules;
p) Statement of Financial Affairs (the "SoFA");
q) Copies of Pay Statements;
r) Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and
s) Statement of Intention.

(collectively with any outstanding required disclosures, the "Required Disclosures").

13. On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property

located at 4115 Quentin Road, Brooklyn, New York (the "Brooklyn Property"). In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

14. On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "Motion to Compel").

15. On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

16. On October 15, 2013, the Debtor failed to appear at his scheduled section 341 meeting. At the time of filing this Motion, the Debtor has not appeared at any 341 Meeting.

17. On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Order").

18. The Debtor is currently representing himself *pro-se* after discharging his two prior lawyers, Maxim Maximov and Rachel Blumenfeld.

## II. Trustee's Discovery of Hidden Assets and Financial Dealings

19. With the Debtor not cooperating, the Trustee has had to learn everything about the Debtor through costly and time-consuming searching of public records and third party discovery. In total, the Trustee has at this point filed seven (7) separate applications under Bankruptcy Rule 2004 and has issued over twenty-five (25) subpoenas and other discovery devices.

20. The Trustee has discovered numerous concealed assets and financial dealings of the Debtor thus far and is continuing to discovery more all the time. Below are just some of the

concealed assets and issues discovered by the Trustee to date:

a) **Alleged Forgeries**: The Debtor has been accused by numerous parties of forging their names on various legal documents including: (i) Arnold Young has accused the Debtor of fraud and forging his signature on certain loan guaranty documents; (ii) Larry Grunfeld and Athena Witt have accused the Debtor of forging their signatures on certain documents related to the alleged transfer of the Miami Coop; (iii) Abraham Hoschander, a practicing attorney, has accused the Debtor of forging his signature on the endorsement field of a $10,000 check issued to Mr. Hoschander for deposit in his attorney escrow account; and (iv) Yocheved Segal, the Debtor's wife, has accused the Debtor of forging her signature on numerous mortgage and other documents, and using her notary stamp to falsify notary acknowledgements of other persons' signatures;

b) **Alleged Investment Scheme**: Annette Kleinfeld, a resident of the State of Israel, commenced an action against the Debtor (see Kleinfeld v. Segal, Index No. 500930/2014 (N.Y. Sup. Ct.)), and in connection with that action, Ms. Kleinfeld submitted an affidavit, dated January 14, 2014, wherein she testified, among other things, that:

> I was advised that [Debtor] was an expert in trading in the stock markets. [Debtor] promised me a ten-percent return on my investment and assured me that I would receive one-percent of my investment as a dividend every month to pay for my bills and medications.
>
> *****
>
> [Debtor] provided no detailed information with respect to the type of loan I was making or where my money would be invested, nor did I receive anything in writing. However, I trusted [Debtor] completely because he was so highly regarded by his then-business partner, who assured me that Defendant handled his and his family's money for years, resulting in great profits.
>
> ******
>
> For a few months, [Debtor] paid me some dividends on the Loan [of $400,000]. However, in the Spring of 2010, his then-business partner succumbed to bone marrow cancer and died, and subsequently, [Debtor] ceased making payments to me altogether.

c) **Interest in 2179 East 33rd Street, Brooklyn, New York**: The Trustee has also recently discovered that the Debtor has an undisclosed interest in real property at 2179 East 33rd Street, Brooklyn, New York. The Trustee only discovered this when the landlord under the lease appeared in this Court and filed a motion for relief from the automatic stay to evict the Debtor or present occupant of the premises.

    d) **Unauthorized Post-Petition Sale of Real Property and Dissipation of Proceeds**: The Trustee discovered that the Debtor owned 432 West 162 Street Acquisition, LLC, which owned real property at 432 West 162nd Street, New York, New York, and that the Debtor directed the sale of that property in January 2014, four months after the Petition Date. Before the Trustee discovered this, the Debtor dissipated the proceeds of sale in part as follows: (i) $50,000 to his assistant, Darylann Demino; (ii) over $21,000 to American Express; and (iii) over $110,000 in cash and ATM withdrawals.

21. The above indicates a concerted effort by the Debtor to conceal his financial interests from the Trustee. As such all large scale withdrawals and deposits of money into and out of the Debtor's bank accounts could indicate a financial interest in certain entities and properties. Based on the financial exchanges between the Debtor and the Examinees further investigation is warranted.

## RELIEF REQUESTED

22. Pursuant to section 704(a) of the Bankruptcy Code, the Trustee is obligated to, among other things: "(4) investigate the financial affairs of the debtor; . . ." 11 U.S.C. § 704(a)(4).

23. Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the Debtor's estate, as well as the conduct, liabilities or property of the Debtor.

24. Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have

acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

25. The Rule 2004 examination of the Debtor's relationship with the Examinees is necessary in order to investigate the Debtor's financial affairs and, among other things, determine whether the Debtor has some sort of financial interest in the Examinees. The Trustee seeks to identify and understand that interest and, if plausible, liquidate that interest to the benefit of the creditors in this matter.

26. The Rule 2004 examinations of the Examinees sought herein are necessary for the Trustee to fulfill his duties under the Bankruptcy Code. For all the foregoing reasons, the Trustee respectfully submits that he has demonstrated ample cause and a right to conduct the examinations contemplated herein.

**DOCUMENTS TO BE SOUGHT BY SUBPOENAS**

27. The Trustee intends to demand production of the following documents by the Subpoenas:

a) All documents related to any interest of the Debtor or his mother, Lilly Segal, or any other individual or entity affiliated with or related to the Debtor (a "Debtor Party," collectively, "Debtor Parties") in the Examinees, or any affiliate, subsidiary or parent of the Examinees, including any share certificates, membership certificates, or membership agreements.

b) All correspondence with the Debtor or any Debtor Parties;

c) All financial statements produced by the Examinees from January 1, 2009 to present;

d) All documents related to any loans by and between the Examinees and any Debtor Parties; and

e) All documents related to any transfers of money or property to or from the Debtor or any Debtor Parties.

28. The Trustee reserves the right to add additional categories of documents to be requested that may reasonably relate to the Examinee's relationship with the Debtor or Debtor Parties.

**FEDERAL RULE 30(b)(6) CATEGORIES**

29. The Trustee intends to seek each Examinee's designation of an individual or individuals that can testify on its behalf with respect to the following designated categories:

a) The Examinee's relationship with the Debtor, Lilly Segal and any other Debtor Parties;

b) All transfers of money or property between the Examinee and the Debtor, Lilly Segal or any other Debtor Parties; and

c) All obligations between the Examinee and any Debtor Parties.

30. The Trustee reserves the right to designate additional categories pursuant to Federal Rule 30(b)(6) that may reasonably relate to the Examinee's relationship with the Debtor or Debtor Parties.

**PROPOSED PROCEDURE**

31. The Trustee proposes that any examination be held at either (i) the offices of Trustee's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 570 Seventh Avenue, 17th Floor, New York, New York, 10018; (ii) any other location as agreed to by the Trustee and his counsel; or (iii) if this Court does not have subpoena power to compel the personal testimony of any Examinees, at such other location as may be appropriate and permissible under Bankruptcy Rules 2004, 2005, 9001(5) and 9016.

32. The Trustee proposes to serve all subpoenas *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files, or the date of an intended deposition.

**NOTICE**

33. The Trustee will provide notice of this Application and the hearing thereon to the Debtor, Debtor's counsel, the Examinees and the Bakery Entities, the United States Trustee and all parties having filed a notice of appearance in the Debtor's case.

34. Applications for relief under Rule 2004(a) are usually granted *ex-parte*. 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; In re Sutera, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Silverman, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984). Some bankruptcy courts even adopt local rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file any application at all. See e.g., D.N.J. L.B.R. 2004-1(b).

35. Although bankruptcy courts routinely authorize discovery under Bankruptcy Rule 2004(a) *ex-parte*, here the Trustee has afforded the Examinees an opportunity to object and be heard on the Application. Further, Examinees will have an opportunity to seek relief from any Subpoena duly issued and served by the Trustee should they so choose.

36. Based upon the foregoing, the Trustee submits that notice of the instant Application and relief sought herein is sufficient, and that no additional or further notice should be required.

**NO PRIOR RELIEF**

37. No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, and for such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
April 9, 2015

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*

Fred Stevens
570 Seventh Ave., 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com

*Special Counsel to Richard E. O'Connell, the Chapter 7 Trustee of the Estate of Herman Segal*