**KLESTADT WINTERS JURELLER**      Hearing Date: May 14, 2015
  **SOUTHARD & STEVENS, LLP**      Hearing Time: 3:00 p.m. (EST)
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

*Special Counsel to Richard E. O'Connell,*
   *Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                  :
                                                       :      Chapter 7
HERMAN SEGAL,                         :
                                                       :      Case No. 13-45519 (NHL)
                           Debtor.         :
-----------------------------------------------------------x

**SUPPLEMENTAL STATEMENT IN SUPPORT OF TRUSTEE'S MOTION FOR ORDERS, PURSUANT TO 11 U.S.C. §§ 105(a), 521(a)(4) AND 542(e), FED. R. BANKR. P. 2004(c) AND 9016, AND FED. R. CIV. P. 45(d)(2) AND (e): (I) COMPELLING THE DEBTOR AND YOCHEVED SEGAL TO PRODUCE DOCUMENTS PURSUANT TO THIS COURT'S DECEMBER 5, 2013 ORDER AND THE TRUSTEE'S SUBPOENAS; (II) HOLDING THE DEBTOR IN CONTEMPT OF THIS COURT'S DECEMBER 5, 2013 ORDER AND THE DEBTOR AND YOCHEVED SEGAL IN CONTEMPT OF THE TRUSTEE'S SUBPOENAS; AND (III) IMPOSING APPROPRIATE SANCTIONS AGAINST THE DEBTOR AND YOCHEVED SEGAL TO DISCOURAGE THEIR CONTEMPTUOUS BEHAVIOR AND OBTAIN COMPLIANCE WITH THIS <u>COURT'S ORDERS</u>**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

      Richard E. O'Connell, the Chapter 7 Trustee (the "<u>Trustee</u>") for the estate of Herman Segal (the "<u>Debtor</u>"), by and through his special counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his supplemental statement (the "<u>Statement</u>") in support of his motion (the "<u>Motion</u>") for entry of orders, pursuant to sections 105(a), 521(a)(4) and 542(e) of Title 11 0f the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2004(c) and 9016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 45(d)(2) and (e) of the Federal Rules of Civil Procedure (the "Federal Rules"), (I) compelling the Debtor and Yocheved Segal to produce documents pursuant to this Court's December 5, 2013 Order and the Trustee's subpoenas issued pursuant to this Court's November 21, 2013 order (the "Subpoenas"), (II) holding the Debtor in contempt of this Court's December 5, 2013 Order, and the Debtor and Yocheved Segal in contempt of the Subpoenas, and (III) imposing appropriate sanctions against the Debtor and Yocheved Segal to discourage their contemptuous behavior and obtain compliance with this Court's Orders; respectfully represents:

**STATEMENT**

1. Over one year ago, on March 6, 2014, the Trustee filed the lengthy Motion seeking an order compelling the Debtor to, among other things, comply with lawful orders of this Court and produce books, records and documents to the Trustee. In the Motion, the Trustee thoroughly debunked the Debtor's unsupported, bald assertion that his Fifth Amendment rights permit his wholesale refusal to provide books, records and documents to the Trustee. Indeed, the Trustee's position is unassailable and supported by significant authority set forth at length in the Motion.

2. The hearing on the Motion was delayed while the Debtor litigated a motion to dismiss this case, which was ultimately denied by this Court. The Debtor's arguments in opposition to the Motion revolve around two irrelevant and unfounded themes: (i) the Trustee and his counsel are wrong-headed; and (ii) this Court lacks jurisdiction and power because the Debtor no longer wants to be in bankruptcy. By way of example, the Debtor has advanced these themes as follows:

- "[Creditors] certainly do not need Mr. Richard O'Connell's heavy handed & thuggish tactics and the astronomical legal fees. . . being generated on what seems to be a daily

basis by his Law Firms that have their hourly billing as their only agenda, . . ." Debtor's Objection to the Motion, Feb. 27, 2015, pp.2-3.

- "I believe that this Bankruptcy is just an attempt by morally corrupt individuals to benefit from my misfortune. . . " Id. at p.3.

- "Mr. O'Connell is on a witch hunt and a fishing expedition to try to get me to violate my constitutional rights by causing me to incriminate myself to violate my religious principles and to violate my rights to freedom of association." Debtor's Motion to Dismiss, Jan. 2014 [Docket No. 54], ¶13.

- "He [Mr. O'Connell] is also interfering with my relationship with my wife by dragging her into this case with a 2004 examination." Id. at ¶13.

- "All of [Mr. O'Connell's] allegations concerning [the Debtor] are not based upon facts but, rather, upon [Mr. O'Connell's] dreams of discovering millions of dollars worth of property and liquidating it so he can earn huge fees." Id. at ¶14.

- "Mr. Stevens should brush up on his Constitutional Law if he fails to understand that the 5th Amendment privilege applies to documents and any other material that I reasonably believe may incriminate me." Dec. 26, 2013 email from Debtor to Maxim Maximov.

- "I don't find myself under the Court's jurisdiction and under this bankruptcy." Transcript of Jan. 29, 2015 hearing, p.34, LL.20-21.

3. When this Court decided not to dismiss the Debtor's case, the Motion was scheduled to be heard on March 12, 2015. At the hearing on March 12th, this Court informed the Debtor that his responses to date were completely inadequate but that the Court would give him additional time to file an objection to the Motion with actual legal authority. This Court granted the Debtor an extension to April 14, 2015 to file an objection to the Motion and adjourned the hearing on the Motion to May 14, 2015. The Trustee was given until April 28, 2015 to file a response to the Debtor's objection due April 14, 2015.

4. Not surprisingly, the Debtor did not file anything by the new deadline and has consequently been given an additional two month reprieve from his obligation to produce documents to the Trustee. The Trustee is entitled to and must receive documents from the

Debtor in order to complete his investigation. The Debtor has successfully avoided producing any documents to the Trustee for twenty (20) months while under the protection of this Court. The Trustee only has until September 10, 2015 to discover and pursue avoidance actions. The Debtor's recalcitrance has placed an unfair burden on the Trustee, especially in light of the Debtor's seemingly complicated financial affairs.

5. Further, everything the Trustee has discovered to date indicates that he has to review the Debtor's books and records immediately. The Trustee has conducted and continues to conduct a significant investigation of third parties. While the results of the Trustee's investigation to date could easily fill fifty or more pages, the Trustee summarizes some key findings relevant to his need for the Debtor's documents as follows:

- Allegations of Forgery: The Debtor has been accused of fraud and forgery by numerous individuals in connection with numerous transactions. Among others, the Debtor has been accused of forgery by the following:

| **Person(s) Accusing the Debtor** | **Context of Allegation** |
|---|---|
| Larry Grunfeld<br>Athena Witt | They accuse the Debtor of forging their names on documents in connection with the transfer of the shares in a Miami Beach condominium. |
| Yocheved Segal (the Debtor's wife) | According to her counsel, "[s]he is more of a victim in this than anyone else," and "[s]he continues to be victimized by Mr. Segal on a continuing basis, not just by taking her mail, but many other things that I wouldn't bother to want to itemize." She accuses the Debtor of forging her signature on two mortgages on their home at 4115 Quentin Road, Brooklyn, New York, and on other documents. |
| Arnold Young | The elderly Mr. Young has accused the Debtor of forging his signature on certain loan agreements causing him unliquidated damages that already mount to over $350,000. |
| Abraham Hoschander | This prior attorney for the Debtor has accused the Debtor of forging his signature on the endorsement side of a check intended for Mr. Hoschander's escrow account and stealing the client's $10,000. |

- Ponzi/Investment Scheme Allegations – The Debtor has been accused of engaging in "some kind of Ponzi scheme" by Annette Kleinfeld, a woman living in Israel who

4

claims the Debtor borrowed over $400,000 to invest in the stock market and then never paid it back.

- Post-Petition Property Sale and Dissipation of Proceeds – Four months after filing for bankruptcy, the Debtor sold the real property located at 432 West 162nd Street, New York, New York through his wholly-owned limited liability company, 432 West 162 Street Acquisition, LLC, for $1,075,000. Following the sale, the Debtor dissipated the proceeds of the sale, which were estate property, through another limited liability company, Centurion Omega. The Debtor withdrew and spent over $100,000 of the proceeds through ATM and other withdrawals, transferred $50,000 to his assistant, Darylann Demino, paid over $30,000 to American Express, and transferred $9,000 to Avigdor Landesman, another claimed aggrieved investor.

- Frustrating the Trustee's Sale of the Miami Beach Coop – The only stated reason for filing for bankruptcy protection was staying the foreclosure sale of the Debtor's Miami Beach cooperative apartment. After the Court authorized the Trustee's sale of the apartment, the Debtor issued a lease to his assistant, Darylann Demino, and her boyfriend, Luis Leon, pursuant to which they continue to occupy the apartment to this day.

- Complicated Financial Affairs – The Trustee has only scratched the surface with respect to the Debtor's banking records, but has discovered a number of noteworthy things. For example –

    o Over $100,000 went in and out of the Debtor's bank account during the month that he filed for bankruptcy;

    o Over $750,000 was transferred to Rite Capital GP LLC presumably on account of an entity owned by the Debtor's son, William Segal;

    o Nearly $700,000 was transferred to now bankrupt Penson Financial Services;

    o The Debtor has used numerous financial accounts to move money around including accounts in his own name and in the names of entities he controls;

    o The Debtor has made large payments to life insurance companies over the last few years for insurance on the lives of unrelated third parties, including over $570,000 to Lincoln Life & Annuity Co., over $475,000 to John Hancock Insurance Co., over $215,000 to Companion Life Insurance Co., over $100,000 to U.S. Life Insurance Company, over $55,000 to NY Life Insurance Co., and $37,000 to ING Reliastar Life Insurance Co.;

    o $315,000 was transferred to National City Bank on account of a mortgage held by a third party; and

    o The Debtor has received large transfers ($25,000 or more) from numerous

> unexplained sources including Abraham Greenbaum ($127,000 on Nov. 17, 2009), Moshe Schreiber ($225,000 on Dec. 8, 2009), Carl N. Caller Attorney Escrow ($40,000 on June 15, 2010), Cornega Rockaway Holding LLC ($50,000 on June 17, 2010), Baruch Feder ($25,000 on Nov. 30, 2010), Shimon Biberfeld ($25,000 on Dec. 6, 2010), Sanjay J. Nlumbergs ($75,000 on Dec. 22, 2011) and Kingdom Fire and Destiny Inc. ($75,000 on Jan. 2, 2012).

- Potential Tax Evasion – The Debtor has not filed tax returns in several years, at least not since 2010. The Internal Revenue Service has filed a claim for over $500,000 and the Debtor's stated reason for refusing to answer certain questions was a fear of potential prosecution for tax evasion and underreporting income.

- Insider Trading – The Debtor asserted a basis for refusing to answer certain questions as a fear of prosecution for "insider trading."

- Possible Orchestration of Bad Faith Bankruptcy Filings – Utica Brooklyn Acquisition Corp., an entity that is believed to be owned and/or controlled by the Debtor, filed a bankruptcy proceeding on June 12, 2014 before this Court to stay a foreclosure proceeding (Case No. 14-41127 (ESS)). The case was dismissed when Utica Brooklyn did not prosecute it. A second involuntary case was filed by alleged creditor "Mayer Orgel" on July 17, 2014 (Case No. 14-43647 (ESS)). That case was dismissed when Mr. Orgel failed to appear and prosecute it. A third involuntary case was filed by alleged creditor "Rene Demino," a/k/a Darylann Demino, the Debtor's assistant, on Jan. 29, 2015 (Case No. 15-40376 (ESS)), which case was again dismissed for failure to prosecute. An involuntary bankruptcy proceeding was filed against the Debtor's mom, Lilly Segal, by alleged creditor "Paul Rohe" on October 1, 2014 (Case No. 14-45032 (ESS)), to stay a foreclosure action. That case was dismissed for Mr. Rohe's failure to prosecute it. On March 5, 2015, another involuntary petition was filed against Lilly Segal by Darylann Demino, the Debtor's assistant, in the U.S. Bankruptcy Court for the Southern District of Florida (Case No. 15-14101 (RAM)), again to stay a foreclosure.

6. These are just a few of the things the Trustee has discovered without even having access to the Debtor's books, records and documents. There is no question that the Trustee needs access to the Debtor's records and is absolutely entitled to it. The Debtor has no right or legal basis for refusing wholesale to provide anything to the Trustee on the basis of his claimed Fifth Amendment protections.

7. Accordingly, the Trustee respectfully requests that the Motion be granted and that the Court enter an order in substantially the same form as that annexed hereto as Exhibit A

immediately.  Any further delay will greatly prejudice the estate and its creditors and could possibly lead to the Trustee's inability to discover avoidable transfers prior to the rapidly approaching expiration of the statute of limitations.

Dated:  New York, New York
April 30, 2015

          **KLESTADT WINTERS JURELLER**
           **SOUTHARD & STEVENS, LLP**

       By:  */s/ Fred Stevens*
         Fred Stevens
         570 Seventh Ave., 17th Floor
         New York, New York 10018
         Tel: (212) 972-3000
         Fax: (212) 972-2245
         Email: fstevens@klestadt.com

         *Special Counsel to Richard E. O'Connell, the Chapter 7 Trustee of the Estate of Herman Segal*