**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

**Hearing Date: May 14, 2015**
**Hearing Time: 3:00 p.m. (EST)**

**Objection Deadline: May 7, 2015**

*Special Counsel to Richard E. O'Connell,*
    *Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re                                                       :
                                                            :          Chapter 7
HERMAN SEGAL,                                               :
                                                            :          Case No. 13-45519 (NHL)
                                Debtor.                     :
----------------------------------------------------------x

### TRUSTEE'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE TRUSTEE TO EXAMINE (I) RONALD REYES AND/OR RODERICK REYES, AND (II) VICKI PRISTINO

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") for the estate of Herman

Segal (the "Debtor"), by and through his special counsel, Klestadt Winters Jureller Southard &

Stevens, LLP, as and for his application (the "Application") for entry of an order in substantially

the same form as that annexed hereto as Exhibit A (the "Proposed Order"), authorizing the

Trustee to examine (i) Ronald and/or Roderick Reyes; and (ii) Vicki Pristino (the "Examinees"),

and serve each with a subpoena *duces tecum* (a "Subpoena," collectively, the "Subpoenas")

requiring each to appear for an examination and/or produce and allow the inspection of all

documents related to Ronald Reyes' and Vicki Pristino's relationship to the Debtor, pursuant to

Fed. R. Bankr. P. 2004, respectfully represents:

## PRELIMINARY STATEMENT

1.    On or around December 3, 2014, the Trustee filed a motion with this Court for approval of a settlement agreement (the "Settlement Agreement") with Eagle Park Holding LLC ("Eagle Park"), an entity previously wholly-owned by the Debtor but now owned and controlled by third parties.   Pursuant to the Settlement Agreement, Eagle Park is required to sell the property located at 2179 East 33rd Street, Brooklyn, New York (the "Property"), and remit the net proceeds of sale to the Trustee on account of the estate's interest in the equity.  The Debtor objected to approval of the Settlement Agreement on the record and made a number of bazaar and unsupported statements regarding the Property.  For example, the Debtor refused to tell the Court who occupied the Property:

> THE COURT:  Mr. Segal, I don't see how th[is] could possibly incriminate you, so let me ask you, are you willing to tell us all who's living there [in the Property] and if they're paying rent?
>
> MR. SEGAL:  I plead the Fifth Amendment, Your Honor.
>
> THE COURT: On that?
>
> MR. SEGAL:  Yes, Your Honor.
>
> THE COURT:  Okay. So you think that answering that could some way or other lead to potential for incriminating you in some criminal way by answering who's living there and whether they're paying you rent?
>
> MR. SEGAL:  Well, apparently Mr. Galperi=n and his counsel seem to think so. Who am I to argue with them?
>
> THE COURT: I lost you.

Transcript December 28, 2014 Hearing, pp.66-67.

2.    Just two months after refusing to tell this Court who occupied the Property, the Debtor filed an affidavit in connection with Eagle Park's action to evict the occupants of the Property in which he disclosed the very information that he refused to provide to this Court as

follows: "Vicki Pristino and Ronald Reyes have been residing in the [Property] for more than four (4) years."  Affidavit of H. Segal, dated Feb. 25, 2015, at para. 6 filed in *Eagle Park Holding, LLC v. Herman Segal*, L&T Index No. 72885/2014, N.Y. Civ. Ct., Kings Cty. (the "<u>L&T Action</u>").  The Debtor has absolutely no right to file pleadings in the L&T Action and is doing so only to frustrate and delay the sale of the Property and consummation of the transactions contemplated under the Settlement Agreement.

3.      The Debtor's mysterious relationship with Mr. Reyes, the occupant of the Property raises even more questions.  Mr. Reyes has apparently occupied the Premises for years without paying rent.  Further, an inspection of certain of the Debtor's bank statements shows that the Debtor has made transfers to Mr. Reyes or on behalf of Mr. Reyes since 2009 as follows:

- Transfers from H. Segal Bank of America Account No. *****4512 to Roderick or Ron Reyes:

| | | | | | |
|---|---|---|---|---|---|
| Reyes, Ron | BofA *4512 | 178 | 11/10/2011 | $ | 7,500.00 |
| Reyes, Ron | BofA *4512 | 179 | 11/15/2011 | $ | 5,437.38 |
| Reyes, Ron | BofA *4512 | 156 | 6/22/2012 | $ | 1,500.00 |
| Reyes, Roderick | BofA *4512 | | 9/27/2012 | $ | 9,912.46 |
| Reyes, Roderick | BofA *4512 | 319 | 11/15/2012 | $ | 3,100.00 |
| Reyes, Roderick | BofA *4512 | | 12/17/2012 | $ | 13,500.00 |

- Transfers from H. Segal Signature Bank Account No. *****1078 to Roderick or Ron Reyes:

| | | | | | |
|---|---|---|---|---|---|
| Reyes, Ron | Sig *1078 | 1275 | 9/13/2009 | $ | 7,100.00 |
| Reyes, Ron | Sig *1078 | 1284 | 10/22/2009 | $ | 8,002.00 |
| Reyes, Roderick | Sig *1078 | 1925 | 10/04/2012 | $ | 5,000.00 |

- Transfers from H. Segal Signature Bank Account No. *****1078 to Third Parties attributed to Reyes:

| | | | | | | |
|---|---|---|---|---|---|---|
| Valley National Bank | Sig *1078 | 793 | 06/02/2008 | $ | 4,200.00 | |
| Valley National Bank | Sig *1078 | 883 | 8/10/2008 | $ | 5,000.00 | R. Reyes ****1414 |

4.      Even stranger, a review of Yocheved Segal's (the Debtor's spouse) bank

statements reveals that just two months ago, Ms. Segal transferred $7,144 to American Express on account of Mr. Reyes.

5.     The Trustee needs to understand the relationship between the Segals and Mr. Reyes.  From the limited information available to the Trustee, it is quite likely that the Trustee has claims against Mr. Reyes and/or Ms. Pristino who occupy the Property rent-free at the expense of the Debtor's estate, and who appear to have received several transfers from the Debtor or his wife over the last few years.

6.     The Trustee has only four and one-half (4 ½) months to investigate and initiate avoidance actions pursuant to 11 U.S.C. §546(a), and has received very little in documentation from the Debtor.  The Examinees are believed, for good reason, to have knowledge and information related to the Debtor's financial affairs.

7.     For these reasons and those set forth below, the Trustee respectfully requests the entry of an order in substantially the same form as the Proposed Order, authorizing him to examine the Examinees.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

9.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

10.     Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The statutory predicate for the relief requested herein is Bankruptcy Rules 2004 and 9016, and Federal Rule 45, made applicable by Bankruptcy Rule 9016.

## INTRODUCTION

12.     On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

13.     On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate.  On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BACKGROUND

### I.     Procedural History and Debtor's General Refusal to Cooperate

14.     At 1:55 p.m. on the Petition Date, the Debtor completed the required credit counseling, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of the Debtor's cooperative apartment in Miami Beach (the "Miami Coop").

15.     The Debtor failed to file the following documents or make the following disclosures with his Petition:

a)   Statement pursuant to Local Bankruptcy Rule 1073-2(b);
b)   Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);
c)   Summary of Schedules;
d)   Statistical Summary of Certain Liabilities;
e)   Schedule A (Real Property);
f)   Schedule B (Personal Property);
g)   Schedule C (Property Claimed as Exempt);
h)   Schedule D (Creditors Holding Secured Claims);
i)   Schedule E (Creditors Holding Priority Unsecured Claims);
j)   Schedule F (Creditors Holding Unsecured Nonpriority Claims);
k)   Schedule G (Executory Contracts and Unexpired Leases);
l)   Schedule H (Co-Debtors);

m) Schedule I (Income);
n) Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");
o) Declaration Concerning Schedules;
p) Statement of Financial Affairs (the "SoFA");
q) Copies of Pay Statements;
r) Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and
s) Statement of Intention.

(collectively with any outstanding required disclosures, the "Required Disclosures").

16.     On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property located at 4115 Quentin Road, Brooklyn, New York (the "Brooklyn Property").  In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

17.     On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "Motion to Compel").

18.     On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

19.     On October 15, 2013, the Debtor failed to appear at his scheduled section 341 meeting.  At the time of filing this Motion, the Debtor has not appeared at any 341 Meeting.

20.     On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Order").

21.     The Debtor is currently representing himself *pro-se* after discharging his two prior

lawyers, Maxim Maximov and Rachel Blumenfeld.

## II.  Trustee's Discovery of Hidden Assets and Financial Dealings

22.    With the Debtor not cooperating, the Trustee has had to learn everything about the Debtor through costly and time-consuming searching of public records and third party discovery. In total, the Trustee has at this point filed seven (7) separate applications under Bankruptcy Rule 2004 and has issued over twenty-five (25) subpoenas and other discovery devices.

23.    The Trustee has discovered numerous concealed assets and financial dealings of the Debtor thus far and is continuing to discovery more all the time.  Below are just some of the concealed assets and issues discovered by the Trustee to date:

a) **Alleged Forgeries**: The Debtor has been accused by numerous parties of forging their names on various legal documents including: (i) Arnold Young has accused the Debtor of fraud and forging his signature on certain loan guaranty documents; (ii) Larry Grunfeld and Athena Witt have accused the Debtor of forging their signatures on certain documents related to the alleged transfer of the Miami Coop; (iii) Abraham Hoschander, a practicing attorney, has accused the Debtor of forging his signature on the endorsement field of a $10,000 check issued to Mr. Hoschander for deposit in his attorney escrow account; and (iv) Yocheved Segal, the Debtor's wife, has accused the Debtor of forging her signature on numerous mortgage and other documents, and using her notary stamp to falsify notary acknowledgements of other persons' signatures;

b) **Alleged Investment Scheme**:  Annette Kleinfeld, a resident of the State of Israel, commenced an action against the Debtor (see Kleinfeld v. Segal, Index No. 500930/2014 (N.Y. Sup. Ct.)), and in connection with that action, Ms. Kleinfeld submitted an affidavit, dated January 14, 2014, wherein she testified, among other things, that:

> I was advised that [Debtor] was an expert in trading in the stock markets. [Debtor] promised me a ten-percent return on my investment and assured me that I would receive one-percent of my investment as a dividend every month to pay for my bills and medications.
>
> *****
>
> [Debtor] provided no detailed information with respect to the type of loan I was making or where my money would be invested, nor did I receive anything in writing.  However, I trusted [Debtor] completely because he was so highly regarded by his then-business partner, who assured me that Defendant handled his and his family's money for years, resulting in great profits.

\*\*\*\*\*\*

> For a few months, [Debtor] paid me some dividends on the Loan [of $400,000]. However, in the Spring of 2010, his then-business partner succumbed to bone marrow cancer and died, and subsequently, [Debtor] ceased making payments to me altogether.

c) **Interest in 2179 East 33rd Street, Brooklyn, New York**:  The Trustee has also recently discovered that the Debtor has an undisclosed interest in real property at 2179 East 33rd Street, Brooklyn, New York.  The Trustee only discovered this when the landlord under the lease appeared in this Court and filed a motion for relief from the automatic stay to evict the Debtor or present occupant of the premises.

d) **Unauthorized Post-Petition Sale of Real Property and Dissipation of Proceeds**:  The Trustee discovered that the Debtor owned 432 West 162 Street Acquisition, LLC, which owned real property at 432 West 162nd Street, New York, New York, and that the Debtor directed the sale of that property in January 2014, four months after the Petition Date.  Before the Trustee discovered this, the Debtor dissipated the proceeds of sale in part as follows: (i) $50,000 to his assistant, Darylann Demino; (ii) over $21,000 to American Express; and (iii) over $110,000 in cash and ATM withdrawals.

24.    The above indicates a concerted effort by the Debtor to conceal his financial interests from the Trustee.  As such all large scale withdrawals and deposits of money into and out of the Debtor's bank accounts could indicate a financial interest in certain entities and properties. Based on the financial exchanges between the Debtor and the Examinees further investigation is warranted.

## RELIEF REQUESTED

25.    Pursuant to section 704(a) of the Bankruptcy Code, the Trustee is obligated to, among other things: "(4) investigate the financial affairs of the debtor; . . ."  11 U.S.C. § 704(a)(4).

26.    Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity."  It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration

of the Debtor's estate, as well as the conduct, liabilities or property of the Debtor.

27.     Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure.  In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

28.     The Rule 2004 examination of the Debtor's relationship with the Examinees is necessary in order to investigate the Debtor's financial affairs and, among other things, determine what the Debtor's financial relationship is with the Examinees, why the Examinees appear to live rent-free in the Property, why the Debtor refused to answer a question of this Court that he readily told the L&T Court, why the Debtor is filing pleadings in the L&T Action on behalf of the Examinees, why the Debtor is frustrating the Trustee's consummation of the Settlement Agreement, why the Debtor transferred money and property to the Examinees, and why the Debtor's wife paid Mr. Reyes' American Express bill just two months ago.

29.     The Rule 2004 examinations of the Examinees sought herein are necessary for the Trustee to fulfill his duties under the Bankruptcy Code.  For all the foregoing reasons, the Trustee respectfully submits that he has demonstrated ample cause and a right to conduct the examinations contemplated herein.

### **DOCUMENTS TO BE SOUGHT BY SUBPOENAS**

30.    The Trustee intends to demand production of the following documents by the Subpoenas:

  a)  All documents related to any interest of the Debtor or any other individual or entity affiliated with or related to the Debtor (a "<u>Debtor Party</u>," collectively, "<u>Debtor Parties</u>") in money or property;

  b)  All correspondence with the Debtor or any Debtor Parties;

  c)  All documents related to any transfers of money or property to or from the Debtor or Debtor Parties;

  d)  All documents related to the L&T Action;

  e)  All documents related to any Debtor Parties paying any debtor of the Examinees; and

  f)  All documents related to any loans by and between the Examinees and any Debtor Parties.

31.    The Trustee reserves the right to add additional categories of documents to be requested that may reasonably relate to the Examinees' relationship with the Debtor or Debtor Parties.

### **PROPOSED PROCEDURE**

32.    The Trustee proposes that any examination be held at either (i) the offices of Trustee's counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 570 Seventh Avenue, 17th Floor, New York, New York, 10018; (ii) any other location as agreed to by the Trustee and his counsel; or (iii) if this Court does not have subpoena power to compel the personal testimony of any Examinees, at such other location as may be appropriate and permissible under Bankruptcy Rules 2004, 2005, 9001(5) and 9016.

33.    The Trustee proposes to serve all subpoenas *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files, or

the date of an intended deposition.

## NOTICE

34.     The Trustee will provide notice of this Application and the hearing thereon to the

Debtor, Debtor's counsel, the Examinees, the United States Trustee and all parties having filed a

notice of appearance in the Debtor's case.

35.     Applications for relief under Rule 2004(a) are usually granted *ex-parte*.  9 *Collier*

*on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R.

Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; In re Sutera, 141 B.R. 539, 540 (Bankr. D.

Conn. 1992); In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Silverman, 10

C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984).  Some bankruptcy courts even adopt local

rules allowing the service of subpoenas under Bankruptcy Rule 2004(a) without having to file

any application at all.  See e.g., D.N.J. L.B.R. 2004-1(b).

36.     Although bankruptcy courts routinely authorize discovery under Bankruptcy Rule

2004(a) *ex-parte*, here the Trustee has afforded the Examinees an opportunity to object and be

heard on the Application.  Further, Examinees will have an opportunity to seek relief from any

Subpoena duly issued and served by the Trustee should they so choose.

37.     Based upon the foregoing, the Trustee submits that notice of the instant

Application and relief sought herein is sufficient, and that no additional or further notice should

be required.

## NO PRIOR RELIEF

38.     No previous application for the relief sought herein has been made to this or any

other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, and for such other and further relief as the Court determines to be just and proper.

Dated:   New York, New York
      April 30, 2015

                  **KLESTADT WINTERS JURELLER**
                  **SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
       Fred Stevens
       570 Seventh Ave., 17th Floor
       New York, New York 10018
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email: fstevens@klestadt.com

       *Special Counsel to Richard E. O'Connell, the*
        *Chapter 7 Trustee of the Estate of Herman*
        *Segal*