**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens

*Special Counsel to Richard E. O'Connell,*
  *Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re                               :
                                   :         Chapter 7
HERMAN SEGAL,              :
                                   :         Case No. 13-45519 (NHL)
                   Debtor.      :
----------------------------------------------------------x

**TRUSTEE'S MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO MAKE**
**FORENSIC IMAGES OF ALL ELECTRONIC DEVICES OWNED, USED OR**
**CONTROLLED BY DEBTOR HERMAN SEGAL AND ESTABLISHING**
**PROCEDURES FOR THE TRUSTEE'S USE OF THE IMAGES**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

       Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") for the estate of Herman

Segal (the "Debtor"), by and through his special counsel, Klestadt Winters Jureller Southard &

Stevens, LLP, as and for his motion (the "Motion") for entry of an order in substantially the

same form as that annexed hereto as Exhibit A (the "Proposed Order"), (i) authorizing the

Trustee to make forensic images of all electronic devices owned, used or controlled by the

Debtor (collectively, the "Devices"), and (ii) establishing procedures for the Trustee's use of the

images (collectively, the "Images"), respectfully represents:

## PRELIMINARY STATEMENT

1.      The Trustee is conducting an extensive investigation into the Debtor's complex and secretive financial affairs.  As this Court is well aware, the Debtor is uncooperative and has refused wholesale to produce documents to the Trustee under an improper assertion of his Fifth Amendment Right not to incriminate himself.  The Trustee has only four and a half months to discover and commence avoidance actions, which is barely enough time even if he had every document of the Debtors handed to him immediately.  The Trustee needs the Images of all the Debtor's Devices immediately for at least the following reasons:

- The Devices and their contents, to the extent they were purchased or created prior to the Petition Date (as defined below) are property of the estate and belong to the Trustee pursuant to 11 U.S.C. §541.

- The Debtor has a track record of refusing to cooperate with the Trustee and turn over documents and there is a significant risk that the Trustee will not get necessary information.

- The Debtor has a history of delaying these proceedings unnecessarily.  For example, the Trustee's motion to compel the Debtor's production of documents was adjourned for over a year while the Debtor litigated a motion to dismiss.  After that, the Debtor obtained an additional two months from this Court to brief the issue and then never filed a brief.

- The Debtor has committed numerous bad acts including the post-petition sale or property and dissipation of the proceeds unbeknownst to the Trustee and creditors.

- The Debtor refused to testify to anything because he has a claimed fear of prosecution for tax evasion, insider trading, fraud and forgery, among other possible crimes.

- The Trustee has a legitimate fear of spoliation of evidence if he does not get the Images given the Debtor's track record.

2.      The Trustee has duly issued a subpoena to the Debtor, which has been outstanding since December 2013.  The Trustee has on numerous occasions demanded that the Debtor turn over books, records and documents.  This Court has ordered the Debtor to turn over all books and records to the Trustee.  Despite all of this, the Debtor has not turned over anything.  Under

these circumstances, the Trustee has a right to obtain the Images and doing so is absolutely necessary to protect the Debtor's estate and its creditors.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicate for the relief requested herein is Bankruptcy Rules 2004 and 9016, and Federal Rule 45, made applicable by Bankruptcy Rule 9016.

## INTRODUCTION

7.      On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

8.      On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate.  On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BACKGROUND

### I.      Procedural History and Debtor's General Refusal to Cooperate

9.      At 1:55 p.m. on the Petition Date, the Debtor completed the required credit

counseling, and at 7:29 p.m. that day, the Debtor filed an emergency voluntary petition [Docket No. 1] (the "Petition") in order avoid the imminent foreclosure sale of the Debtor's cooperative apartment in Miami Beach (the "Miami Coop").

10.     The Debtor failed to file the following documents or make the following disclosures with his Petition:

        a)  Statement pursuant to Local Bankruptcy Rule 1073-2(b);
        b)  Disclosure of Compensation pursuant to Fed. R. Bankr. P. 2016(b);
        c)  Summary of Schedules;
        d)  Statistical Summary of Certain Liabilities;
        e)  Schedule A (Real Property);
        f)  Schedule B (Personal Property);
        g)  Schedule C (Property Claimed as Exempt);
        h)  Schedule D (Creditors Holding Secured Claims);
        i)  Schedule E (Creditors Holding Priority Unsecured Claims);
        j)  Schedule F (Creditors Holding Unsecured Nonpriority Claims);
        k)  Schedule G (Executory Contracts and Unexpired Leases);
        l)  Schedule H (Co-Debtors);
        m) Schedule I (Income);
        n)  Schedule J (Expenses) (all documents referred to in "c" through "n" collectively referred to as the "Schedules");
        o)  Declaration Concerning Schedules;
        p)  Statement of Financial Affairs (the "SoFA");
        q)  Copies of Pay Statements;
        r)  Pre-petition Statement pursuant to Local Bankruptcy rule 2017-1; and
        s)  Statement of Intention.

(collectively with any outstanding required disclosures, the "Required Disclosures").

11.     On September 17, 2013, the Trustee made a written demand upon the Debtor's counsel for: (i) turnover of the Debtor's shares in the Miami Coop; (ii) filing of the Schedules and SoFA; and (iii) turnover of copies of the deeds and mortgages to the Debtor's real property located at 4115 Quentin Road, Brooklyn, New York (the "Brooklyn Property"). In that letter, the Trustee also gave notice to the Debtor's counsel that the Trustee received an offer for the Miami Coop and that the Trustee intended to sell it.

12.     On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking

an order compelling the Debtor to comply with his duties under the Bankruptcy Code and, among other things, file the Required Disclosures [Docket No. 15] (the "Motion to Compel").

13.     On October 10, 2013, the Trustee's counsel filed a motion with this Court seeking an order authorizing the Trustee to examine the Debtor and his wife, Yocheved Segal, a/k/a Yocheved Simon.

14.     On October 15, 2013, the Debtor failed to appear at his scheduled section 341 meeting.  At the time of filing this Motion, the Debtor has not appeared at any 341 Meeting.

15.     On November 21, 2013, the Court entered an order authorizing the Trustee to conduct an examination of the Debtor and Yocheved Segal pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Order").

16.     On December 5, 2013, this Court entered an order granting the Motion to Compel (the "Compel Order") requiring that by no later than December 23, 2013, the Debtor must:

a.  File Schedules [11 U.S.C. § 521(a)(1)(A), (B)(i) and (ii)];

b.  File a SoFA [11 U.S.C. § 521(a)(1)(B)(iii)];

c.  Surrender to the Trustee all property of the estate and any recorded information, including books, documents records, and papers, relating to property of the estate (collectively, "Books and Records") [11 U.S.C. § 521(a)(4)];

d.  Inform the Trustee immediately in writing as to the location of real property in which the Debtor has an interest and the name and address of every person holding money or property subject to the Debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Bankruptcy Rule 1007 [Bankruptcy Rule 4002(a)(3)]; and

e.  Provide certain documents to the Trustee, including evidence of current income, statements for each of the Debtor's depository and investment accounts, including checking savings and money market accounts, mutual funds and brokerage accountants, documentation of monthly expenses claimed by the Debtor, and a current income tax returns [Bankruptcy Rule 4002(b)(2) and (3)].

17.     The Compel Order further directed the Debtor to do the following through the pendency of the case:

a.  Cooperate with the Trustee as necessary to enable the Trustee to perform the Trustee's duties under the Bankruptcy Code [11 U.S.C. § 521(a)(3)] and cooperate with the Trustee in the administration of the estate [Bankruptcy Rule 4002(a)(4)]; and

b.  Attend and submit to an examination at the next scheduled meeting of creditors [Bankruptcy Rule 4002(a)(1)].

18.    On the December 23, 2013 deadline established by the Compel Order, the Debtor filed Schedules and a SoFA with this Court.  The following is a summary of the disclosures made by the Debtor in those documents:

a.  Schedule A (Real Property) – The Debtor admitted to owning the Miami Coop wherein a pen was used to strike through a typewritten $95,000 value ascribed to the asset and amend that value upwards to $135,000.  A handwritten note was added to Schedule A stating that the Debtor refused to provide any additional property information pursuant to his Fifth Amendment rights.

b.  Schedule B (Personal Property) – The Debtor admitted only to owning "3 kittens" (Category No. 31) and to having no property described in Categories 32 to 34.  The Debtor invoked his Fifth Amendment rights and refused to answer whether he had any property included in Categories 1 through 9, 13 through 16, 18 through 30, and 35.

c.  Schedule C (Exemptions) – The Debtor claimed no exemptions.

d.  Schedule D (Secured Creditors) – The Debtor admits to owing the obligation to Esquire in connection with the Miami Coop, but refused to provide any additional creditor information pursuant to his Fifth Amendment rights.

e.  Schedule E (Priority Creditors)-  The Debtor claims to have no creditors entitled to priority.  (Note that the Debtor's counsel represented at the December 4 Hearing that approximately $150,000 was owed to taxing authorities[1]).

f.  Schedule F (Unsecured, Non-priority creditors) – The Debtor admits to having two liabilities: $349.00 to Capital One, and $300.00 to Independent Recovery.  The Debtor refused to provide any additional debt information pursuant to his Fifth Amendment rights.

g.  Schedule G (Unexpired Leases and Executory Contracts) – The Debtor did not invoke his Fifth Amendment rights and claimed to have no unexpired leases or executory contracts.

---

[1]                    MR. [WARREN] GRAHAM: Number two, the debtor advises that there are substantial claims in favor of the taxing authorities, which would render the ability of the trustee to pay unsecured creditors a meaningful distribution or in fact any distribution, and those - - those total about $150,000.  Again, that's what I'm informed by the debtor.

December 4 Hearing, Transcript, p.39, LL.13-18.

h. <u>Schedule H (Co-Debtors)</u> – The Debtor did not invoke his Fifth Amendment rights and claimed to have no co-debtors.

i. <u>Schedule I (Income)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he was married and has no dependents or income.

j. <u>Schedule J (Expenses)</u> – The Debtor did not invoke his Fifth Amendment rights and testified that he has no expenses.

k. <u>SoFA</u> – The Debtor claimed that he had no information relevant to Questions 4 through 6, 9, 15 through 17, or 20 through 25 on the SoFA. The Debtor invoked his Fifth Amendment rights and refused to answer Questions 1 through 3, 7 and 8, 10 through 14, or 18 and 19, on the SoFA.

19. Pursuant to the Rule 2004 Order, at or around 3:15 p.m. on December 24, 2013, the Debtor and his wife were served at their home with subpoenas (the "<u>Subpoenas</u>").

20. The Subpoenas required the Debtor and his spouse to produce documents by January 10, 2014 and January 17, 2014, respectively, and to appear at the undersigned's offices for examinations at 10:00 a.m. on January 16, 2014, and January 23, 2014, respectively.

21. The Debtor has not produced a single document in response to the Subpoenas or the Compel Order. Nor has he provided any written response to the Subpoenas identifying responsive documents and setting forth the basis for withholding those documents. Rather, the Debtor simply states that producing any document or admitting to the existence of any document would violate his Constitutional rights. The Debtor has not provided any authority for his asserted privilege and protection.

22. On January 23, 2014, the Debtor and Yocheved Segal appeared in the offices of the undersigned counsel to have their depositions taken in accordance with the Subpoenas. Ms. Segal refused to answer nearly every question, even ones as innocuous as "do you have any children?" The Debtor refused to answer most questions, but would freely decide without any justification which questions he would answer and which were subject to his asserted privileges. There was no consistent pattern of questions the Debtor believed to be off-limits and which he

did not. He simply appeared to be answering whatever he felt like and refused to answer whatever he did not. By way of example, the Debtor refused to admit whether he owned the Brooklyn Property in his Schedules, but then admitted that he owned it at his deposition.

23.     On January 30, 2014, the Debtor filed a motion to dismiss his case (the "Dismissal Motion"). The Dismissal Motion was litigated through a formal decision issued by this Court on March 6, 2015 denying the Dismissal Motion [Docket No. 188]. The Debtor appealed the decision but has since failed to meet every deadline with respect to the hearing.

24.     On the motion of the Trustee, this Court entered an order and judgment on February 2, 2015, denying the Debtor's discharge [Docket No. 170].

## II.     Trustee's Discovery of Hidden Assets and Financial Dealings

25.     With the Debtor not cooperating, the Trustee has had to learn everything about the Debtor through costly and time-consuming searching of public records and third party discovery. In total, the Trustee has at this point filed seven (7) separate applications under Bankruptcy Rule 2004 and has issued over twenty-five (25) subpoenas and other discovery devices.

26.     The Trustee has discovered numerous concealed assets and financial dealings of the Debtor thus far and is continuing to discovery more all the time. Below are just some of the concealed assets and issues discovered by the Trustee to date:

   a)  **Alleged Forgeries**: The Debtor has been accused by numerous parties of forging their names on various legal documents including: (i) Arnold Young has accused the Debtor of fraud and forging his signature on certain loan guaranty documents; (ii) Larry Grunfeld and Athena Witt have accused the Debtor of forging their signatures on certain documents related to the alleged transfer of the Miami Coop; (iii) Abraham Hoschander, a practicing attorney, has accused the Debtor of forging his signature on the endorsement field of a $10,000 check issued to Mr. Hoschander for deposit in his attorney escrow account; and (iv) Yocheved Segal, the Debtor's wife, has accused the Debtor of forging her signature on numerous mortgage and other documents, and using her notary stamp to falsify notary acknowledgements of other persons' signatures;

   b)  **Alleged Investment Scheme**: Annette Kleinfeld, a resident of the State of Israel,

commenced an action against the Debtor (see Kleinfeld v. Segal, Index No. 500930/2014 (N.Y. Sup. Ct.)), and in connection with that action, Ms. Kleinfeld submitted an affidavit, dated January 14, 2014, wherein she testified, among other things, that:

> I was advised that [Debtor] was an expert in trading in the stock markets. [Debtor] promised me a ten-percent return on my investment and assured me that I would receive one-percent of my investment as a dividend every month to pay for my bills and medications.
>
> *****
>
> [Debtor] provided no detailed information with respect to the type of loan I was making or where my money would be invested, nor did I receive anything in writing.  However, I trusted [Debtor] completely because he was so highly regarded by his then-business partner, who assured me that Defendant handled his and his family's money for years, resulting in great profits.
>
> ******
>
> For a few months, [Debtor] paid me some dividends on the Loan [of $400,000]. However, in the Spring of 2010, his then-business partner succumbed to bone marrow cancer and died, and subsequently, [Debtor] ceased making payments to me altogether.

c)  **Interest in 2179 East 33rd Street, Brooklyn, New York**:  The Trustee has also recently discovered that the Debtor has an undisclosed interest in real property at 2179 East 33rd Street, Brooklyn, New York.  The Trustee only discovered this when the landlord under the lease appeared in this Court and filed a motion for relief from the automatic stay to evict the Debtor or present occupant of the premises.

d)  **Unauthorized Post-Petition Sale of Real Property and Dissipation of Proceeds**:  The Trustee discovered that the Debtor owned 432 West 162 Street Acquisition, LLC, which owned real property at 432 West 162nd Street, New York, New York, and that the Debtor directed the sale of that property in January 2014, four months after the Petition Date.  Before the Trustee discovered this, the Debtor dissipated the proceeds of sale in part as follows: (i) $50,000 to his assistant, Darylann Demino; (ii) over $21,000 to American Express; and (iii) over $110,000 in cash and ATM withdrawals.

27.    The Trustee's investigation of the Debtor's financial affairs through third parties

to date has revealed highly questionable activity.  Among other things:

a)  Over $100,000 went in and out of the Debtor's bank account during the month that he filed for bankruptcy;

b) Over $750,000 was transferred by the Debtor to Rite Capital GP LLC presumably on account of an entity owned by the Debtor's son, William Segal;

c) Nearly $700,000 was transferred by the Debtor to now bankrupt Penson Financial Services;

d) The Debtor has used numerous financial accounts to move money around including accounts in his own name and in the names of entities he controls;

e) The Debtor has made large payments to life insurance companies over the last few years for insurance on the lives of unrelated third parties, including over $570,000 to Lincoln Life & Annuity Co., over $475,000 to John Hancock Insurance Co., over $215,000 to Companion Life Insurance Co., over $100,000 to U.S. Life Insurance Company, over $55,000 to NY Life Insurance Co., and $37,000 to ING Reliastar Life Insurance Co.;

f) The Debtor transferred $315,000 was transferred to National City Bank on account of a mortgage held by a third party; and

g) The Debtor has received large transfers ($25,000 or more) from numerous unexplained sources including Abraham Greenbaum ($127,000 on Nov. 17, 2009), Moshe Schreiber ($225,000 on Dec. 8, 2009), Carl N. Caller Attorney Escrow ($40,000 on June 15, 2010), Cornega Rockaway Holding LLC ($50,000 on June 17, 2010), Baruch Feder ($25,000 on Nov. 30, 2010), Shimon Biberfeld ($25,000 on Dec. 6, 2010), Sanjay J. Nlumbergs ($75,000 on Dec. 22, 2011) and Kingdom Fire and Destiny Inc. ($75,000 on Jan. 2, 2012).

## THE TRUSTEE IS ENTITLED TO THE IMAGES

28.    First, much of the Images belong to the estate and to the extent the Devices were owned by the Debtor on the Petition Date, they are property of the estate.

29.    Second, with the Debtor refusing to answer questions, the Trustee's investigation is almost entirely dependent upon the receipt and review of documents, or obtaining testimony from third parties.

30.    Third, the Trustee has less than five months to investigate and discover avoidance actions. Through no fault of the Trustee, the Debtor has successfully delayed this case by terminating lawyers, requesting extensions, and prosecuting a frivolous Motion to Dismiss. The Trustee has no more time to play the Debtor's games and must get the Images and conclude

investigation.

31.    Fourth, the Debtor's financial affairs are unbelievable complicated.  Millions of

dollars have gone in and out of his bank accounts in the past six years.  Further, the Debtor has

used multiple financial accounts in his name and the name of numerous entities under his

control.

32.    Fifth, the Trustee has a reasonable fear of spoliation of evidence.  The Debtor has

committed abhorrent acts, including the post-petition sale of estate property.  The Debtor is a

convicted felon that has been accused by numerous parties of committing fraud and forgery,

including his own wife who claims he has forged her name on numerous legal documents and

routinely steals her mail.  The Trustee fear of spoliation is real and appreciable.

## PROPOSED MECHANISM FOR MINING DATA

33.    The Trustee proposes the following mechanism for mining the data on the Images

that is consistent with what courts have fashioned in the past.  The following is the proposed

mechanism for use of the data:

- **Imaging of Electronic Devices.**  Within seven (7) days of the entry of the order, the Debtor shall permit Maragell[2], with offices at 2 Coleman Ave., Suite 201, Cherry Hill, New Jersey, 08034 ("Maragell"), to create bit-by-bit forensic images and/or such other true and correct copies as needed of all Devices, at the sole cost and expenses of the Debtor's estate.  Maragell shall make a duplicate copy of each Image and provide one copy to the Debtor and retain the other in its offices.

- **Trustee's Use of Images**.  It is acknowledged that the Images may contain documents and information that are subject to the attorney-client privilege or some other legal

---

[2]   Maragell is an independent, third party vendor specializing in, among other things, computer forensics that has no known actual or positional conflicts in the within case.  Maragell was selected by the Trustee based upon its experience and reputation in matters such as this (see www.maragell.com).  The Trustee has never worked with or against Maragell in any other matters.  Trustee's counsel, Fred Stevens, worked with Maragell in one matter while at his prior firm, Fox Rothschild LLP, where Mr. Stevens represented the chapter 7 trustee and Maragell was retained as an expert and consultant to the United States District Court for the Division of the U.S. Virgin Islands, Bankruptcy Division, in In re Jeffrey J. Prosser, Case No. 06-30009 (JKF) (D. Virg. Isl. Bankr. Div. 2006), and has worked with Maragell in the identical way proposed in this case in the case of In re FKF 3, LLC, Case No. 10-37170 (Bankr. S.D.N.Y 2010) (Morris, C.J.) where Trustee's counsel represents Gregory Messer in his capacity as post-confirmation trustee in that case.

privilege.    Accordingly, the Trustee's use of Images shall be strictly limited in accordance with the order, and Maragell may not grant the Trustee or his counsel access to the Images or content thereof except as specifically provided for in the order.  The Trustee may request Maragell to:

a) Perform appropriate tests to determine whether any documents or other information regarding the business of the Debtor or his financial affairs have been deleted, manipulated, damaged, or there has been any spoliation of electronic evidence.  If Maragell determines that any such spoliation has occurred, the Trustee may request that Maragell produce a report regarding such spoliation, and testify as an expert at any appropriate hearing or trial with respect to such report and opinion;

b) Search the Images for documents, communications, or other electronic files that contain specific relevant search terms, or are contained in files designated for the storage of data or documents related to any business or financial affairs of the Debtor.  Once Maragell completes the search or searches, it shall produce a copy of all responsive documents and files in electronic form to the Debtor or his counsel.  The Debtor shall then have seven (7) days to review and inspect those documents and files and determine if any should be appropriately withheld from the Trustee, and shall provide Maragell with a list of those documents that must be withheld.  Any documents and files not timely designated by the Debtor shall be turned over to Trustee by Maragell.  The Debtor shall produce a log with respect to any documents designated to be withheld within seven (7) days of the designation, which shall contain:  (a) the size of the document withheld; (b) identifies the author and his/her position; (c) identifies the recipient and his/or position; (d) the nature of the communication or document; and (e) the privilege claimed or other basis for withholding.  If the Debtor fails to timely provide a log containing the required disclosures, then Maragell shall turn over the designated documents for which no proper log was timely produced to the Trustee; And

c) Provide such other reports regarding the Devices as may be appropriate to provide the Trustee with information relevant to the Debtor's case concerning how the Devices were used and whether any other electronic devices or electronically stored pieces of information have not been produced by the Debtor that may also contain relevant data, provided however, the reports/information provided to the Trustee shall not contain any confidential or privileged information of the type contemplated in the preamble to this paragraph or otherwise designated in subparagraph (b) above.

- **<u>Trustee Right to Seek Ruling on Withheld Documents and Non-Waiver of Privilege</u>**.  Trustee may seek a ruling from the Bankruptcy Court with respect to the propriety of the Debtor's designation of any documents to be withheld.  The Debtor has a right to claim a privilege and clawback any document subject to a privilege which was inadvertently turned over to Trustee.

34.    As set forth below, the Trustee believes that the proposed procedures and

mechanism for obtaining the Images and mining and using the data are reasonable and consistent with the Federal Rules of Civil Procedures and other relevant authority.

## LEGAL AUTHORITY

35.    Pursuant to section 704(a) of the Bankruptcy Code, the Trustee is obligated to, among other things: "(4) investigate the financial affairs of the debtor; . . ."  11 U.S.C. § 704(a)(4).

36.    Bankruptcy Rule 2004(a) provides that "upon the motion of any party in interest, the court may order the examination of any entity."  It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the Debtor's estate, as well as the conduct, liabilities or property of the Debtor.

37.    Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure.  In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).  "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

38.    Here, the Trustee submits that obtaining and using the Images is permissible under the broad scope of Bankruptcy Rule 2004.  Further, the Trustee notes that significant portions of the contents of the Images should contain books and records of the Debtor to which the Trustee's rights are superior to the Debtor himself.

39.    Given the lack of court decisions regarding the entitlement and use of electronic discovery under Bankruptcy Rule 2004, the Trustee has reviewed authorities allowing it under the Federal Rules of Civil Procedures, which are generally far more limited than Rule 2004.  For the reasons detailed below, the Trustee's request is supported by the Federal Rules.

40.    Generally, under the Federal Rules, a party is entitled to discover any unprivileged matter that is relevant to a party's claim or defense, where the discovery "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  With regard to electronically stored information, the Federal Rules require a party to "produce and permit the party making the request . . . to inspect, copy, test, or sample any . . . electronically stored information."    Fed. R. Civ. P. 34(a).    The right to information is counterbalanced by a responding party's confidentiality or privacy interests.  Notes of Advisory Committee on 2006 Amendments.  A party is therefore not entitled to "a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances."  Id.

41.    In determining the extent of discovery to allow a party, a court should:

> consider the relationship between the plaintiff's claims and the defendants' computers and, in some cases, whether the defendant has fully complied with discovery requests, in determining how the requested electronic discovery should proceed.  Even in cases where courts have nonetheless adopted procedures to protect privilege and privacy concerns.

Calyon v. Mizuho Securities USA Inc., No. 07-civ-0224, 2007 U.S. Dist. LEXIS 36961 WL 1468889, at *3 (S.D.N.Y. May 18, 2007).

42.    Courts are generally disinclined to permit unfettered use of forensic images of an adversary's electronic devices due to a party's right of privacy with respect to certain data, and concern over disclosing privileged material.  John B. v. Goetz, 531 F.2d 448, 461 (6th Cir. 2008).  Most courts have addressed this concern either by preventing unrestricted forensic imaging or by

instituting a protocol to limit the imaging.  Genworth Fin. Wealth. Mgmt., Inc. v. McMullan et al., 267 F.R.D. 443, 449, 2010 U.S. Dist. LEXIS 53145, at *16 (D. Conn. June 1, 2010) (permitted imaging by third party vendor and release of documents after opposing counsel had an opportunity to review); Ameriwood Industries, Inc. v. Liberman, No. 4:06 CV 524 (DJS), 2006 U.S. Dist. LEXIS 93380, 2006 WL 3825291, at *4 (permitted imaging of defendant's electronic devices, but having a third party perform the imaging and searches and gave defendant's counsel an opportunity to review documents before they are released to opposing counsel);  Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 649-54 (D. Minn. 2002) (court allowed imaging but outlined a protocol to protect these concerns by implementing appropriate limitations such as allowing the defendant's counsel to review the image and submitting only responsive documents).

43.    Here, the Trustee respectfully submits that allowing him to obtain the Images subject to the restrictions proposed herein is entirely appropriate and necessary.  Much of the material contained on the Images constitutes books and records of the Debtor, and thus, is property of the Debtor's estate.  The Trustee has legitimate concerns over spoliation and maintaining the integrity of documentary evidence.  Also, after twenty month in bankruptcy, the Debtor has failed to produce any documents and has refused to provide testimony on most topics. The Debtor is invoking his Fifth Amendment right against self-incrimination, forcing the Trustee to rely heavily on written communication and documentary evidence to finish what will be an incomplete investigation.  The Trustee respectfully submits that under these circumstances, it is appropriate and necessary to allow him to obtain the Images.

44.    In addition, the Trustee has gone out of his way to craft appropriate restrictions on his use of the Images in order to protect privacy rights, as well as the Debtor's privacy and

privileges.  The Trustee respectfully submits that the restrictions on use of the Images proposed by him herein are appropriate.

## NOTICE

45.    The Trustee will provide notice of this Motion and the hearing thereon to the Debtor, the United States Trustee and all parties having filed a notice of appearance in the Debtor's case.

46.    Based upon the foregoing, the Trustee submits that notice of the instant Motion and relief sought herein is sufficient, and that no additional or further notice should be required.

## NO PRIOR RELIEF

47.    No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, and for such other and further relief as the Court determines to be just and proper.

Dated:   New York, New York
       April 30, 2015

                    **KLESTADT WINTERS JURELLER
                    SOUTHARD & STEVENS, LLP**

          By:   */s/ Fred Stevens*
                Fred Stevens
                570 Seventh Ave., 17th Floor
                New York, New York 10018
                Tel: (212) 972-3000
                Fax: (212) 972-2245
                Email: fstevens@klestadt.com

                *Special Counsel to Richard E. O'Connell, the
                  Chapter 7 Trustee of the Estate of Herman
                  Segal*