**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 7 |
| HERMAN SEGAL, | : | |
| | : | Case No. 13-45519 (NHL) |
| Debtor. | : | |

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

### AFFIDAVIT OF JEFFREY BRENNER OF MARAGELL, LLC, REGARDING DEBTOR'S COMPLIANCE WITH THE COURT'S IMAGING ORDERS

STATE OF NEW JERSEY    )
                       )ss:
COUNTY OF CAMDEN       )

JEFFREY BRENNER, being duly sworn, deposes and says:

1.      I am currently the managing principal of Maragell, LLC ("Maragell"). Maragell is a full service, corporate investigations firm, experienced in the fields of computer forensics, background checks, due diligence research, and employee theft and internal fraud cases.

2.      Maragell was employed by Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S"), special litigation counsel for Richard E. O'Connell, Chapter 7 Trustee (the "Trustee") for the estate of Herman Segal (the "Debtor"). Maragell was tasked with performing the forensic imaging of all electronic devices owned, used or controlled by Herman Segal (the "Debtor") in compliance with the Order entered by the United States Bankruptcy Court for the Eastern District of New York (Lord, J.) on July 31, 2015, in the Debtor's case at Docket No. 260 (the "Imaging Order"), the subsequent related order entered August 14, 2015 at Docket No. 265 (the "Second Imaging Order") and the second subsequent related order entered August 27, 2015 at Docket No. 269 (the "Third Imaging Order") (collectively, the "Imaging Orders").

3.      The deadline for the Debtor's production of his personal computer and iPhone (the "Devices") for imaging was August 7, 2015, seven (7) days after this Court's entry of the

Imaging Order.  On July 31, 2015, I sent an email to the Debtor requesting that the Debtor contact me to arrange a day and time to make images of his Devices.

4.    On August 4, 2015, I sent another e-mail to the Debtor stating that I had not heard from him and requesting to speak with him over the phone.

5.    At 12:27 p.m. on August 7, 2015 (the deadline as stated in the original Imaging Order), the Debtor responded for the first time stating that he "will be in touch later today to make arrangements."

6.    Following a conversation with the Debtor, at 5:10 p.m. on August 7, 2015, he sent an e-mail to me asking to bring the Devices to the offices of KWJS&S at around 3:00 p.m. "or so" on Monday, August 10, 2015.

7.    At 5:12 p.m. on August 7, 2015, I responded to the Debtor's e-mail stating that "3 p.m. is fine with us. See you then."

8.    At 9:14 a.m. on Monday, August 10, 2015, Christopher Reilly of KWJS&S sent an e-mail to me and the Debtor stating, "[a]s confirmation, we will see you all today at 3 pm."

9.    At or about 2:00 p.m. on Monday, August 10, 2015, I and my associate, Steve Hilary, arrived at KWJS&S's offices from our offices in Cherry Hill, New Jersey (approximately 90 miles) to meet with the Debtor and obtain the Images of his Devices.

10.    At 3:22 p.m. on Monday, August 10, 2015, the Debtor sent an e-mail to me and KWJS&S stating he needed to reschedule for the next day because he hurt his back. Mr. Hilary and I left KWJS&S and returned to our offices in Cherry Hill. At the same time, the Debtor agreed to bring the Devices to our offices in Cherry Hill the next day.

11.    At approximately 6:00 p.m. on August 11, 2015, the Debtor came to our offices in Cherry Hill and turned over his Devices for imaging. The Debtor's computer Device was

2

encrypted and he refused to provide me with the password to de-crypt it absent my agreement that I would not view the Image without further Order of the Court. We agreed as advised by KWJS&S and as a result, the Court entered the Second Imaging Order declaring the agreement void and permitting our use of the Images in accordance with the Imaging Order.

12.     During the imaging process, the following discoveries were made:

a.   The Debtor purchased and installed encryption software on his personal computer on August 6, 2015, seven days after the Court entered the Imaging Order and one day before the deadline for producing the Devices for imaging. By installing the encryption software, the Debtor had the opportunity to wipe all deleted material from the computer. We have determined that nearly 90% of the computer's unallocated/deleted spaces contain random characters, which is indicative of an encryption program having been run against it to overwrite/destroy data. As a result, the encryption software installed by the Debtor on August 6, 2015 appears to have successfully made any deleted data in those areas permanently unrecoverable. Within the remaining 10% of the unallocated/deleted spaces, we located fragments of emails and other documents that may relate to matters in this case. Keyword searches of these spaces are currently being conducted.

b.   The Debtor connected three USB devices to his computer since June 4, 2015, the last one on August 10, 2015, one day before he produced the Devices for imaging (the "Storage Devices"). The Debtor has agreed to produce the only Storage Device he could find but as of the date of this Affidavit, I have not received it.

c.   According to the Debtor's internet history, prior to turning over the Devices he visited the following sites where users can store electronic files and email off-site:

3

Dropbox[1], Google Docs[2], Google Drive[3], Gmail[4], Yahoo! Email and AOL Email ("External Sites").

13.    From our preliminary review of the Device images and as set forth above, it appears the Debtor employed at least one (the encryption software), if not more techniques to frustrate the Trustee's discovery of data that was or is on the Devices.

14.    On August 18, 2015 Maragell sent to the Debtor a file listing the documents on his personal computer that hit upon the keywords that were suggested by the Trustee in order for the Debtor to review those files and designate them as privileged (the "Results Chart"). The deadline for the Debtor to review the documents and designated those to be withheld was August 25, 2015.

15.    For the next six (6) days, we had no contact with the Debtor. On August 24, 2015, my associate, Steven Hilary, spoke on the phone with the Debtor in an attempt to "walk him" through the process using the Results Chart. During this conversation, The Debtor noted that it was taking a long time to find the files. Mr. Hilary instructed the Debtor how to use the Results Chart and then offered to send the Debtor the three hundred plus (300+) files if it would help the Debtor identify which documents he needed to withhold. The Debtor never responded to this offer.

16.    On August 31, 2015, five days after expiration of the deadline, the Debtor sent an e-mail identifying sixteen (16) documents to be marked as privileged. As such, those documents were redacted pending further order from the Court.

---

[1]  Dropbox is a service that allows users to store, sync and share electronic files securely.
[2]  Google Docs is a free web-based application in which documents and spreadsheets can be created, edited and stored online.
[3]  Google Drive is a file storage and synchronization service created by Google. It allows users to store files in the cloud, share files, and edit documents, spreadsheets, and presentations with collaborators.
[4]  Gmail is a free web-based e-mail service that provides users with a free gigabyte of storage for messages and provides the ability to search for specific messages.

17.    Also on August 31, 2015, the Debtor sent an e-mail to me stating the following:

In case Fred [Stevens] wants to act like a bigger P--- than usual, point out to him that I never received the actual "identified" files that were (as the Judge's order [sic] required); instead, you sent me the file paths and it took me quite a while to figure out how to locate the individual files, and then to actually find them and print them out for review. Furthermore, it would have certainly saved me substantial time, if I would have had the 400 or so identified files printed out and handed to me; but I didn't think it right to inconvenience you guys to do this "grunge" work.

Jeffrey Brenner

Sworn to before me this
_8th_ day of _September_, 2015

Kelly Crampton

Notary Public, State of
No.:
Qualified in:
Commission Expires:

**KELLY CRAMPTON**
ID # 2440659
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires Nov. 19, 2018