| | |
|---|---|
| **KLESTADT WINTERS JURELLER**<br>  **SOUTHARD & STEVENS, LLP**<br>200 West 41st Street, 17th Floor<br>New York, NY 10036-7203<br>Telephone: (212) 972-3000<br>Facsimile: (212) 972-2245<br>Fred Stevens<br>Christopher J. Reilly | **Hearing Date: March 7, 2018**<br>**Hearing Time: 3:30 p.m. (EST)**<br><br>**Objection Deadline:**<br>**February 28, 2018 @ 4:00 p.m.** |

*Special Counsel to Plaintiff Richard E. O'Connell,*
  *Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                :
                                                   :    Chapter 7
HERMAN SEGAL,                       :
                                                   :    Case No. 13-45519 (NHL)
                      Debtor.     :
---------------------------------------------------------------x
RICHARD E. O'CONNELL, as Chapter 7 Trustee  :
of the Estate of Herman Segal,                   :
                                                   :
                   Plaintiff,      :
                                                   :
    -against-                                   :    Adv. Pro. No. 14-01140
                                                   :
SHLOMO KOLP, et al.,                     :
                                                   :
                   Defendants.  :
---------------------------------------------------------------x

**TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C § 363(B), (F) AND (M) AND RULES 6004 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (I) APPROVING A STIPULATION OF SETTLEMENT BETWEEN THE TRUSTEE, THE DEBTOR, YOCHEVED SEGAL AND THE ISRAELI MORTGAGEES RESOLVING TRUSTEE'S CLAIM TO THE BROOKLYN PROPERTY, (II) APPROVING THE SALE OF THE BROOKLYN PROPERTY TO YOCHEVED SEGAL AS PART OF THE <u>SETTLEMENT, AND (III) DISMISSING THE ADVERSARY PROCEEDING</u>**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

Richard E. O'Connell, as Chapter 7 Trustee (the "Trustee") for the estate of Herman Segal (the "Debtor"), by his attorneys, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion (the "Motion") for an order, pursuant to 11 U.S.C. § 363(b) and (f) and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules"), (A) approving a certain agreement (the "Agreement"), a copy of which is annexed hereto as Exhibit A, by and between (i) the Trustee; (ii) the Debtor, (iii) Yocheved Segal ("Yocheved", together with the Debtor the "Segals"), (iv) Avigdor Landesman, the Estate of Eliezer Silber, Chaim Israel Horvitz, Dov Skibin, Dov Bouzaglou, David Zeev Reich, Gilad Shteingart and Baruch Klein (collectively, the "First Israeli Mortgagees"), (v) Avigdor Landesman, the Estate of Eliezer Silber and Betzalel Shmuley (collectively, the "Second Israeli Mortgagees"); and (vi) Annette Kleinfeld and Alma Kim Green (collectively, the "Third Israeli Mortgagees" and, together with the First Israeli Mortgagees and the Second Israeli Mortgagees, the "Mortgagees", and together with the Trustee and the Segals, the "Parties"), resolving the Trustee's claims to certain property located at 4113-4115 Quentin Road, Brooklyn, New York (the "Brooklyn Property"), (B) approving the sale of the Brooklyn Property to Yocheved, and (C) dismissing the related adversary proceeding, respectfully sets forth as follows:

**PRELIMINARY STATEMENT**

On October 22, 2014, the Trustee filed a complaint (the "Complaint") commencing adversary proceeding no. 14-1140 seeking among other things: (i) the turnover of the Brooklyn Property; (ii) the authority to sell Yocheved's undivided interest in the Brooklyn Property, if any; (iii) the determination of the extent, validity and priority of any liens against the Brooklyn Property; (iv) the avoidance of certain purported liens as fraudulent conveyances; and (v) to the extent necessary, providing a carve out of any secured claim in order to satisfy the reasonable

2

and necessary costs of the Trustee in preserving and liquidating the Brooklyn Property for the benefit of all stakeholders (the "Brooklyn Property Action"). On October 26, 2015, the Trustee filed a motion seeking summary judgment on the second claim in the Complaint seeking authority to sell Yocheved's undivided interest in the Brooklyn Property pursuant to 11 U.S.C. § 363(h) (the "Summary Judgment Motion").

The Segals and the Trustee have had a resolution in principle of the Brooklyn Property Action for nearly a year (the "First Agreement"). However, due to objections by the Mortgagees, the Frist Agreement was modified by the Agreement to include all Parties and a global resolution of the Parties' issues with respect to the Brooklyn Property. The Agreement requires, among other things, a $100,000.00 payment (the "Trustee Settlement Payment") to be by Yocheved to the Trustee, and a $575,000.00 payment (the "Mortgagees Settlement Payment," and with the Trustee Settlement Payment, the "Settlement Payments") by the Segals to the Mortgagees, in exchange for the transfer of the Trustee's right, title an interest to the Brooklyn Property to Yocheved, subject to any encumbrances except the Mortgagees' mortgages, and the Brooklyn Property Action will be dismissed. If the Settlement Payments are not made by April 17, 2018, the Segals consent to the Trustee's sale of the Brooklyn Property.

For the reasons set forth in detail below, the Trustee believes that the compromise embodied in the Agreement is fair, reasonable and in the best interests of the Debtor's estate and its creditors. Accordingly, the Trustee respectfully requests this Court's approval of the Agreement.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the

Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012.

2. Venue of the case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## INTRODUCTION

4. On September 10, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

5. On or around the Petition Date, Richard E. O'Connell was appointed interim chapter 7 trustee of the Debtor's estate. On October 15, 2013, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BACKGROUND

6. In or around 2001, Shlomo Kolp ("Kolp") acquired title to the Brooklyn Property.

7. The Brooklyn Property is currently encumbered by two conventional mortgages and loans as follows: (i) the first serviced by Ocwen Loan Servicing, LLC under Account No. ******8940 with an approximate principal balance of $250,000 (the "Ocwen Mortgage"), and (ii) the second held by Bank of America under Account No. ******6999 with an approximate principal balance of $103,000 (the "BofA Mortgage," and collectively with the Ocwen Mortgage, the "Institutional Mortgages"). Both Institutional Mortgages and the related loans are held in Kolp's name as the borrower.

8. On or around November 10, 2003, the Debtor executed a mortgage document

granting a mortgage in the Brooklyn Property to Avigdor Landesman ("Landesman") and Eliezer Silber ("Silber") "as trustees" in the principal amount of $500,000 (the "First Israeli Mortgage").

9. On August 9, 2005, Kolp transferred title to the Brooklyn Property to the Defendants as tenants by the entirety.

10. On May 1, 2006, Landesman and Silber executed an assignment of the First Israeli Mortgage to the following parties and in the following portions:

| Transferee | Amount Transferred |
|---|---|
| Chaim Israel Horvitz | $60,000.00 |
| Dov Skibin | $100,000.00 |
| Gilad Shteingart | $125,000.00 |
| Dov Buzaglo | $45,000.00 |
| Baruch Klein | $50,000.00 |
| David Zeev Reich | $65,000.00 |
| Moshe Meshulvin | $27,000.00 |
| Yitzchok Ovadia | $20,000.00 |
| **Total** | **$492,000.00** |

11. On March 11, 2008, a mortgage was filed against the Brooklyn Property by Landesman and Silber in the principal amount of $300,000 (the "Second Israeli Mortgage").

12. On August 25, 2009, Annette Kleinfeld and Alma Kin Green filed a mortgage against the Brooklyn Property in the principal amount of $400,000 (the "Third Israeli Mortgage"). The First Israeli Mortgage, Second Israeli Mortgage and Third Israeli Mortgage are collectively referred to herein as the "Israeli Mortgages." Based upon the public records, the Israeli Mortgages are filed against the portion of the Brooklyn Property identified as 4115 Quentin Road (Block 07865, Lot 0003), but not against that portions identified as 4113 Quentin Road (Block 07865, Lot 0005) or Lots 0001 or 0006.

13. On October 22, 2014 the Trustee Commenced the Brooklyn Property Action.

14. On July 31, 2015, the Court entered a judgment against Kolp finding that he has

no claim in law or equity to title to the Brooklyn Property, or to or against the proceeds of sale of such property, and extinguishing any claim Kolp ever had against the Brooklyn Property [Docket No. 29].

15. On August 7, 2015, the Court entered a judgment against the Debtor decreeing that any interest the Debtor had to the Brooklyn Property or the proceeds of any sale thereof is property of his bankruptcy estate under the control of the Trustee, and directing the Debtor to turn over such Brooklyn Property to the Trustee and vacate and surrender possession of same [Docket No. 60].

16. On October 26, 2015 the Trustee filed the Summary Judgment Motion against Yocheved with respect to the second claim in the Complaint. The motion has been fully submitted but the Court has delayed rendering a decision at the request of the parties while they have discussed the possibility of settlement.

17. On or around December 16, 2016, the Trustee and the Segals entered into the First Agreement and sought approval of the same through a motion approving the same (the "First Settlement Motion").

18. On or around January of 2017, the Mortgagees filed objections to the First Settlement Motion, arguing the First Agreement negatively affected their rights and that they should have an opportunity to resolve their issues (the "Mortgagee Objections").

19. In response to the Mortgagee Objections, the Parties entered into extensive negotiations in an attempt to resolve all issues surrounding the Brooklyn Property, after which, the Parties entered into the Agreement and are seeking approval of same.

## THE AGREEMENT

20. The Agreement is a result of good faith and arms' length negotiations between the Parties seeking to resolve any and all issues related to the Brooklyn Property. By way of summary, the Agreement between the Parties provides for the following[1]:

➢ <u>Agreed Value of the Brooklyn Property</u>. Solely for purposes of this Agreement, the Parties hereby agree that the value of the property is $1.4 million pursuant to the November 17, 2015 appraisal of the Brooklyn Property performed by East Coast Appraisal Service, and the value of the Debtor's interest in the Brooklyn Property is $700,000, one-half of the total value.

➢ <u>Non-Party Claims</u>. With the exception of the liens, claims and mortgages of the Mortgagees, all liens, claims and encumbrances on or against the Brooklyn Property (collectively, the "<u>Encumbrances</u>") shall remain in full force and effect and are in no way changed or otherwise affected by the terms of this Agreement. This Agreement is without prejudice to any rights of non-Parties to this Agreement, or of the Parties to this Agreement with respect to non-Parties to this Agreement, all of which are strictly preserved.

➢ <u>Approval of Agreement</u>. This Agreement between the Parties is subject in all respects to (i) the approval of the Bankruptcy Court evidenced by the entry of a written order or the "So Ordering" of this Stipulation (an "<u>Approval Order</u>"). The Trustee shall file a motion seeking an Approval Order by no later than ten (10) days after the execution and delivery of this Agreement by all Parties.

➢ <u>Waiver of Defenses and Opposition by the Segals and Entry of Sale Order</u>. The Segals hereby waive any and all defenses and opposition to the claims asserted by the Trustee and the Mortgagees in the Action and to the Summary Judgment Motion, and hereby consent to the Court's inclusion in the Approval Order of provisions authorizing the Trustee to sell the Brooklyn Property at auction, free and clear of Yocheved's interest and free and clear of all liens, claims and encumbrances, including the Mortgages and the Encumbrances, with all valid liens, claims and encumbrances to attach to the proceeds of sale in order of priority (the "<u>Sale Authorization</u>"); provided, however, that the Sale Authorization shall be stayed until April 18, 2018, and if the Segals timely make all payments required under this Agreement, the Trustee shall not sell the Brooklyn Property pursuant to the Sale Authorization.

➢ <u>Trustee Settlement and Sale</u>. In full settlement of the Trustee's claims in the Brooklyn Property Action and in consideration for the Trustee's transfer to Yocheved (or her designee) of all of the Debtor's right, title and interest in and to the Brooklyn Property, Yocheved shall pay (or arrange for payment) to the Trustee of the sum of $100,000.00 (the "<u>Trustee Settlement Payment</u>") by delivering to the Trustee a certified check or wire transfer payable to "Richard E. O'Connell, Chapter 7 Trustee" on or before April 17, 2018 (the "<u>Payment</u>

---

[1] For ease of reference, the Trustee has included a summary of the terms of the Agreement here. Parties are encouraged to review the entire Agreement in its entirety and not rely on the summary set forth herein. To the extent there is any express or implied conflict between the terms of the Agreement and the description contained herein, the terms of the Agreement shall control.

Date").

- Mortgagees Settlement. In full settlement of the Mortgagees' claims in the Brooklyn Property Action and in satisfaction of the Mortgages, the Segals shall pay (or arrange for payment) to the Mortgagees of the sum of $575,000.00 (the "Mortgagees Settlement Payment") by delivering certified checks or wire transfers, on or before the Payment Date, as follows: (i) to Zeichner Ellman & Krause LLP for the amount of $503,125 payable to "Zeichner Ellman & Krause LLP, as Attorneys" and (ii) to Shipman & Goodwin LLP for the amount of $71,875 payable to "Shipman & Goodwin LLP , as Attorneys."

- Sale of Brooklyn Property to Yocheved Segal. Upon the Trustee's receipt of the Trustee Settlement Payment on or before the Payment Date, the Trustee's right, title and interest to the Brooklyn Property will be deemed sold to Yocheved subject to any and all existing Encumbrances (other than the Mortgagees' encumbrances) pursuant to section 363 of the Bankruptcy Code. The Trustee Settlement Payment shall be deemed to constitute reasonably equivalent value and fair consideration for the Trustee's right, title and interest in the Brooklyn Property under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the laws of the State of New York and under the laws of the United States, and any state, territory or possession thereof. The Trustee shall execute any deed or other documents reasonably required by Yocheved to evidence such transfer. Yocheved shall be responsible for any and all transfer or other taxes incurred as a result of such transfer.

- Trustee Release of Claims Against the Brooklyn Property. Upon the Trustee's receipt of the Trustee Settlement Payment on or before the Payment Date, the Trustee on behalf of himself and the Debtor's estate hereby fully, unconditionally and forever waives and releases any right, title and interest in the Debtor's interest in the Brooklyn Property, and hereby withdraws with prejudice the Complaint and Summary Judgment Motion.

- Debtor and Yocheved Release of Claims Against the Trustee Related to the Resolved Matters. The Debtor and Yocheved each hereby fully, unconditionally and forever waive and release the Trustee and Debtor's Estate with respect to any claims asserted in the Brooklyn Property Action and in connection with the Brooklyn Property and the Trustee Settlement Payment.

- Release by the Mortgagees to Yocheved. Upon the Mortgagees' receipt of the Mortgagees Settlement Payment on or before the Payment Date, each of the Mortgagees shall, and hereby do, without further action or documentation, fully, finally and forever release, relinquish, and discharge Yocheved of and from any and all manner of action and actions, cause and causes of action, suits, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which each ever had, now has or which it can, shall or may have against Yocheved in connection with the Brooklyn Property Action.

- Release of Mortgages. Upon the Mortgagees' receipt of the Mortgagees Settlement Payment on or before the Payment Date, the Mortgages held by each of the Mortgagees against the Brooklyn Property shall be deemed discharged. Nothing in this Agreement is intended to, nor shall it, release any portion of the Mortgagee's claims against the

Debtor and his bankruptcy estate, except to the extent of payments received by the Mortgagees pursuant to this Agreement.

➢ <u>Dismissal of Complaint and Brooklyn Property Action</u>.  Upon receiving notice that the Approval Order is final, the Court will enter an order dismissing the Brooklyn Property Action.  Dismissal of the Brooklyn Property Action will be with prejudice with respect to any claims asserted between and among the Parties to this Agreement in the Brooklyn Property Action.

➢ <u>Events of Default and Remedies</u>.  It shall be an event of default ("<u>Event of Default</u>") under this Agreement if the Trustee Settlement Payment and/or the Mortgagees Settlement Payment are not fully paid on or before the Payment Date. The Segals hereby agree that, upon occurrence of an Event of Default, the Trustee may sell the Brooklyn Property in accordance with the Sale Authorization provision in the Approval Order.

➢ <u>Trustee Sale of Brooklyn Property at Auction</u>.  In the event of a Default, the Trustee is authorized to sell the Brooklyn Property at auction, pursuant to 11 U.S.C. Section 363(f) and (h), free and clear of all mortgages, liens, claims and encumbrances (including the Encumbrances) and free and clear of Yocheved's interest (the "<u>Auction Sale</u>").  The Segals agree that they will not make any attempt to oppose or stop the sale, including any argument regarding family members who may be residing at the Brooklyn Property, and that they will deliver possession of the Brooklyn Property to the Trustee or his designee no later than 3 weeks prior to the date scheduled for the Auction Sale. At the closing on the Auction Sale, the Trustee (i) shall pay, out of the proceeds of the Auction Sale, all unpaid property taxes and water and sewer charges, transfer taxes, closing costs, expenses of the Auction Sale and the amounts owed to the holders of the two institutional mortgages against the Brooklyn Property, and shall reserve and pay as soon after the Auction Sale as is practicable any capital gains tax liability incurred by the Debtor's estate as a result of the Auction Sale, (ii) shall distribute the next $800,000 of sale proceeds in the following order: (a) $150,000 to the Trustee and (b) $650,000 to the Mortgagees, and (iii) shall retain any remaining sale proceeds for the Debtor's estate, subject to valid liens. If there are not enough remaining sale proceeds to pay a total of $800,000 to the Trustee and the Mortgagees, the Trustee shall receive the first $100,000, the Mortgagees shall receive the next $575,000 and any remaining sale proceeds shall be equally divided between the Trustee and the Mortgagees.

➢ <u>Effective Date</u>.  This Agreement shall be effective upon entry of the Approval Order and such Approval Order becoming a Final Order (the "<u>Effective Date</u>").

➢ <u>No Admission</u>.  Neither this Agreement nor any discussions or proceedings relating to the settlement of the Brooklyn Property Action are to be considered, interpreted, or construed as an admission or acknowledgement by any Party of the liability or fault on the part of any of them.  This Agreement, its terms, and the Parties' negotiations shall not be offered as or received into evidence in any pending or future civil, criminal, or administrative proceeding or action by or against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, except as is necessary to seek entry of the Approval Order or to enforce or effectuate or interpret the terms of this Agreement

**RELIEF REQUESTED**

21. By this Motion, the Trustee seeks entry of an order, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Agreement and the terms, conditions, and compromises contained therein are fair and reasonable under the circumstances, and that approval of the Agreement is in the best interest of the estate and its creditors.

**BASIS FOR RELIEF**

22. Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell , or lease other than in the ordinary course of business, property of the estate." Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have found that a trustee's sale or use of assets outside the ordinary course of business should be approved if the trustee can demonstrate sound business justification for the proposed transaction. See, e.g., In re Nicole Energy Service, Inc., 385 B.R. 201, 210 (Bankr. S.D.Ohio 2008); In re Martin 91, F. 3d 389, 395 (3rd Cir. 1996); In re Lionel Corp., 722 F. 2d 1063, 1071 (2nd Cir. 1983). As explained in greater detail below, the Trustee respectfully submits that the sale of the Brooklyn Property constitutes a reasonable exercise of his business judgment. Further, the Trustee has satisfied the requirements of sections 363(f) as all parties holding interests in the Brooklyn Property have consented to the sale of the same pursuant to the terms of the Agreement or in the case of the Institutional Mortgages, are completely unaffected by the sale.

23. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed

settlement is fair and equitable and is in the best interests of the estate. Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103 (Bankr. S.D.N.Y. 1993).

24. In order to reach such a decision, the Court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

25. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co)., 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); In re Int'l Distribution Centers, Inc., 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

26. The Court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

27. The Court is not required conclusively to determine the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to

ensure that the settlement reaches the threshold of reasonableness. Instead, the Court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

28.   Here, numerous factors were considered by the Trustee in determining that entry into the Agreement was in the best interests of the estate.

29.   First, the Trustee recognizes the various defenses Yocheved has raised in her opposition to the Summary Judgment Motion. Though the Trustee feels strongly that he would prevail in that action, the Trustee's positions are difficult and subject to significant risk. Additionally, the Trustee Settlement Payment ensures a recovery for the estate that will be free and clear of any potential exposures related to the Israeli Mortgages. A significant area of concern for the Trustee relating to the Brooklyn Property, related to potential litigation regarding the validity of the Israeli Mortgages. The Agreement avoids what would end up being a fairly costly and contentious area of litigation for the estate and resolves this Adversary Proceeding without the incurring of further legal fees.

30.   Finally, the Trustee considered the expenses associated with litigation. The Trustee is cognizant that every dollar incurred by the Trustee in prosecuting the sale of the Brooklyn Property will reduce the pool of money available to the Debtor's creditors. The Trustee needs to resolve these matters immediately without further delay or cost. It is in the best interests of creditors and the estate to resolve all the issues related to the Brooklyn Property as quickly and expeditiously as possible. The Agreement accomplishes that. Alternatively, the Trustee will have to commence discovery related to the determination of the extent, validity and priority of the Israeli Mortgages, which will likely require obtaining deposition testimony from

parties in Israel at significant cost to the estate.

31. The Agreement also ensures that if the Segals fail to timely make the Settlement Payments, they waive all defenses to the Trustee'sسale of the Brooklyn Property. This ensures that one way or the other, the Agreement will resolve the Brooklyn Property Action. This guaranty of finality is very valuable to the estate.

32. Ultimately, the Trustee thinks that it is unlikely that the estate could do better than what it is receiving under the Agreement if it proceeds with the litigation.

33. For all the foregoing reasons, the Trustee believes that the Agreement is fair, reasonable and in the best interests of the estate and creditors. Accordingly, the Trustee respectfully requests that this Court approve the Agreement and the sale of the Brooklyn Property pursuant to Section 363.

## **NOTICE**

34. Notice of this Motion will be given in accordance with Bankruptcy Rule 2002. The Trustee submits that such notice constitutes good and sufficient notice and that no other or further notice need be given.

## **NO PRIOR REQUEST**

35. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the proposed order annexed hereto as Exhibit B, and for such other and further relief as the Court determines to be just and proper.

Dated:  New York, New York
        February 9, 2018

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By:  */s/ Fred Stevens*
Fred Stevens
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
      creilly@klestadt.com

*Special Litigation Counsel to Richard E. O'Connell, Chapter 7 Trustee*